A1

Exhibit No: A1

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## ATLANTA REGIONAL OFFICE

| | |
|---|---|
| MELVIN SMITH,<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF VETERANS AFFAIRS,<br>Agency. | DOCKET NUMBER<br>AT-0752-99-0477-B-1<br><br><br>DATE: May 3, 2000 |

Louise Smith, Hurtsboro, Alabama, for the appellant.

William G. Stevens, Esquire, Montgomery, Alabama, for the agency.

BEFORE

Richard P. Klein
Administrative Judge

### INITIAL DECISION

### INTRODUCTION

On January 4, 2000, the Board remanded the above-captioned matter to the Atlanta Regional Office for further adjudication regarding the issue of timeliness.[1] Specifically, the case was remanded for further consideration of the appellant's claims of mental and physical incapacity especially in connection with his wife's condition and recent motherhood.

---

[1] On July 28, 1999, I issued an initial decision dismissing the appellant's April 9, 1999 appeal of his removal from the position of Dental Assistant, GS-5, at the agency's Veterans Affairs Medical Center (now Central Alabama Veterans Health Care System - East Campus), Tuskegee, Alabama, effective October 18, 1996, as untimely filed.

A1

Thus, by Order dated January 10, 2000, the appellant was advised that he must (1) identify the time period during which he or his spouse suffered from a physical or mental condition; (2) submit any medical evidence he has establishing that he or his spouse suffered from such a condition during this time period; and (3) explain how the physical or mental condition prevented him and/or his spouse from filing a timely appeal or requesting an extension of time. Remand File, Tab 2. The appellant filed such a response and it was received on February 4, 2000. *Id.* at 3.

A hearing was held in Montgomery, Alabama, on March 31, 2000. And, for the reasons set forth herein, I again find that the appellant has not established good cause for his more than two-year delay in filing an appeal with the Board. Accordingly, the appeal is again DISMISSED as untimely filed.

## BACKGROUND

The appellant attempted to file an appeal with the Board on November 18, 1996. However, this appeal was never received by the Board because the address which he used contained an incorrect street number and, as a result, was returned to the appellant as undeliverable by the U.S. Postal Service. And, the appellant did not attempt to file the appeal again until more than two years later on April 9, 1999, after he received a March 9, 1999 decision from the Office of Personnel Management denying his application for disability retirement.

With respect to the envelope containing the appeal which was returned as undeliverable, the entire address on the envelope was not legible because it was covered in part by a label placed thereon by the United States Postal Service. Nevertheless, the words "3RD Floor" and "North" were legible. These words indicated that the appellant was attempting to mail the appeal to the Board's Atlanta Regional Office at Third Floor, North Wing, 1776 Peachtree Street, N.E., Atlanta, Georgia, 30309--a former address. However, the Board's Atlanta Regional Office moved from this address to Suite 500, 1365 Peachtree Street, Atlanta, Georgia, 30309 in the mid-1980's. However, when the agency identified the 1365 Peachtree Street address in its October 13, 1996 decision letter as the place to file his appeal, this was also an incorrect address. *Id.* For, the Board moved to its current address, 401 West Peachtree Street, in April 1990.

## TIMELINESS

Louise Smith, the appellant's wife, testified that she had a baby on September 27, 1996, and that her mother died on September 30, 1996. And, these events in her life caused her to be "stressed out." Hearing Tape 1, Side A. She further testified that the stress due to these two events was the reason why the appeal was untimely filed. The appellant's wife also testified that the appellant "is mentally ill," but she did not attribute the untimely filing to his mental illness. *Id.*

The appellant testified that when the appeal was returned as undeliverable, he set it aside because there "was so much going on." *Id.* He was experiencing stress due to the loss of his job and he had three small children including a new baby. In addition, his wife was experiencing post-partem depression and was taking medication prescribed by Dr. Rubio, a psychologist.

The testimony of the appellant and his wife is simply not credible. For, not only is their testimony inherently improbable, but it also lacks consistency. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 459, 461 (1987).

There certainly was reason for the appellant and his wife to have experienced stress in the fall of 1996. For during an eight-day period beginning on September 27, 1996, the appellant's wife gave birth to a son, his mother-in-law died, and he received notice from his employer that he would be terminated on October 17, 1996.[2] Nevertheless, it was during this period, when the stress was at its highest level, that the appellant and/or his wife, with little or no help, completed and mailed the appeal form to the Board, albeit to an incorrect address, in a timely manner.[3] Yet, when the appeal was returned as undeliverable by the U.S. Postal Service, no action was taken because of "stress" and the fact that there "was so much going on." I also note that, during the period between the return of the appeal as undeliverable and the date the appeal was

---

[2] The appellant presented testimony during the second phase of the hearing which concerned the merits of the removal action, that, after receiving the agency's October 3, 1999 decision to terminate his employment effective October 17, 1996, he left the office on October 4, 1996, and never returned to duty.

[3] During the course of the hearing, both the appellant and his wife took credit for completing the appeal form.

refiled using the correct address, the appellant obtained the necessary forms for filing an application for disability retirement from his employing agency and filed such an application with the Office of Personnel Management. Moreover, the appellant filed for, and was awarded, disability benefits from the Social Security Administration during this same time period. Thus, there is no rational basis for the appellant's claim that neither he nor his wife was able to deal with the appeal to the Board after it was returned as undeliverable.

In fact, the appellant's wife, in response to one of my questions at the hearing, testified that there was nothing wrong with her, either mentally or physically, when the appeal was returned as undeliverable. Moreover, the appellant testified that all of the writing on the original appeal form, except for the address of his representative, was his own. And, this appeal form was signed on October 7, 1996--just three days after he was notified that he would be terminated, one week after his mother-in-law died, and ten days after his wife gave birth to his child--the central reasons for his stress.

It is clear from the record that neither a mental nor a physical condition prevented the appellant or his spouse from refiling the appeal once it was returned as undeliverable. What is apparent is that, when the appeal was returned as undeliverable, a decision had already been made to file for disability retirement rather than to challenge the removal action.[4] For, if the appellant wanted to pursue the removal action, all that he needed to do was to mail his appeal to the address which the agency provided him in its October 3, 1996 decision letter. And, the November 18, 1996 appeal would have been timely filed if it had been mailed to either the Board's correct address or to the incorrect address provided by the agency. But, it was not.

---

[4] In this regard, I note that, in addressing the issuance of timeliness in the initial appeal, the appellant's wife stated that she was told by a union official to apply for disability retirement on behalf of her husband "instead of trying to get him back working." See *Smith v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-99-0477-I-1, slip. op. at 4. Moreover, in a statement dated March 29, 1999, signed by the appellant, he states that, in speaking with a union representative after his initial appeal was returned by the U.S. Postal Service, he was told that he was eligible for disability retirement because he was disabled prior to his removal. *Id.*

In this regard, I note that, in the initial appeal, the appellant's wife alleged that the union provided the incorrect address to which the appeal was originally sent. *See Smith v. Department of Veterans Affairs*, MSPB Docket No. AT-0752-99-0477-I-1, slip. op. at 3. However, at the hearing, she testified that this incorrect address was provided by the agency's personnel office. Yet, there is no explanation as to why the personnel office would provide her with a different address, or why she would request the Board's address from the personnel office, when one had already been provided in the agency's decision letter.

Clearly, the address used when the appeal was originally mailed in November 1996 came from the union. And, while the appellant's wife testified that she tried to get the correct address by telephone after it was returned as undeliverable, she does not remember whom she called. Here again there is no explanation, other than that a decision had been made to pursue disability retirement, as to why the appeal that was returned as undeliverable due to an incorrect address was not mailed to the address which was originally provided to the appellant by the agency in its October 3, 1996 decision.

The appellant's wife testified about medications that she and the appellant were taking. In fact, she testified that the appellant forgot things as a result of his medication. However, none of these medications was ever identified. And, the appellant did not attribute his failure to remail the appeal in a timely manner after it was returned as undeliverable to the medications he was taking. Moreover, as previously noted, the appellant's spouse testified that there was nothing wrong with her when the initial appeal was returned as undeliverable.

The appellant submitted 40 pages of documents in response to my January 10, 2000 Order.[5] *See* Remand Appeal, Tab 3. However, many of these documents are dated after the period of time at issue (subsequent to the April 9, 1999 refiling of the appeal). One document, completed by Albert von Oldenburg, M.D., a psychiatrist, dated August 28, 1997, describes the appellant as "like another child" and states that "his

---

[5] These 40 pages have been numbered in the lower, right-hand corner of the document. And, these numbered pages under Tab 3 have been referenced in this decision.

mental condition is deteriorating." *Id.* at p. 7. Another document signed by Dr. von Oldenburg dated May 15, 1997, describes the appellant as "dysfunctional." *Id.* at p. 9. But, Dr. von Oldenburg also notes in this document that the appellant is "waiting for SS"--an apparent reference to the Social Security disability benefits which the appellant eventually was granted. *Id.*

Dr. von Oldenburg testified at the March 31, 2000 hearing at the appellant's request. However, he did not remember the appellant. Dr. von Oldenburg further testified that, based upon his review of the medical documents bearing his signature which he was shown at the hearing, he could not determine the appellant's condition in 1996 because these records only relate to 1997. But, as to the 1997 records, Dr. von Oldenburg testified that while the appellant was able to communicate, he was not reliable.

One need only listen to the hearing tapes to conclude that the appellant was alert, aware of what was going on, and had no difficulty remembering past events on March 31, 2000.[6] Only when the appellant was asked why he did not report for work after October 4, 1996, even though the effective date of his removal was not until October 17, 1996, did the appellant become emotional. But, even then, his testimony was coherent.

This is not to say that there is no evidence that the appellant has a psychiatric disorder. For, the record reflects that a social worker noted that the appellant was experiencing chronic mental and medical health care problems during a visit on August 17, 1999. *Id.* at p. 1. But, by the appellant's own admission, his anxiety, depression, and other mental health symptoms began prior to his discharge from the Department of the Army in 1987 and existed during the entire period of his employment with the agency. *Id.* at p. 1. And, while some of his co-workers testified at his disability retirement hearing that he attributed his performance deficiencies to "personal problems," not one indicated that his problems related to a mental or physical condition. *See* Remand File, Tab 2 (Initial Decision dated August 25, 1999). Thus, OPM's reconsideration decision denying the appellant's claim for disability retirement based

---

[6] The appellant's only difficulty in testifying was related to a speech impediment.

upon paranoid schizophrenia, post traumatic stress disorder, nerves, psychosis, depression, ulcers, back injury, diabetes, and an injury to his legs was affirmed. *Id.*

In view of the foregoing, I find that the appellant has not established good cause for his delay in filing his appeal to the Board regarding his removal. Accordingly, the appeal is hereby DISMISSED again as untimely filed.

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:

Richard P. Klein
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **June 7, 2000**, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if this initial decision is received by you more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition, with supporting evidence and argument, must be filed with:

The Clerk of the Board
Merit Systems Protection Board
1120 Vermont Avenue, NW., Room 806
Washington, DC 20419

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be postmarked, faxed, or hand-delivered no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you fail to provide a statement with your petition that you have either mailed, faxed, or hand-delivered a copy of your petition to the agency, your petition will be rejected and returned to you.

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

> The United States Court of Appeals
> for the Federal Circuit
> 717 Madison Place, NW.
> Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 60 calendar days after the date this initial decision becomes final.

**ERVENOR**

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent by regular mail, unless otherwise indicated below, this day to each of the following:

### Appellant

Melvin Smith
17B Dykes Road
P.O. Box 22
Hurtsboro, AL  36860

### Appellant's Representative(s)

Louise Smith
P.O. Box 22
#37 Highway 51 North
Hurtsboro, AL  36860

### Agency's Representative(s)

William G. Stevens
V.A. Regional Counsel's Office
345 Perry Hill Road
Montgomery, AL  36109

### Other

Kenneth L. Bates
U.S. Office of Personnel Management
Employee Relations Division
1900 "E" Street, N.W., Room 7412
Washington, DC  20415

May 3, 2000
_____
(Date)

William Fuller, Jr.
Legal Assistant
404-730-2755 X 1023

Aq

MELVIN SMITH  
O BOX 22  
URTSBORO, AL 36860

MAIL/FEE IN-BOUND  
215 PERRY HILL I  
MONTGOMERY, AL 36109-3798  
(800) 214-8387  
619    619-3183-1609  
SEP 7, 1999

Exhibit No: A 10

A 10

---

MELVIN SMITH  
DIVALPROEX NA 250MG EC TAB  
Manufacturer: ABBOTT  
RX# 933979A  Provider: MENA MD, FELICITAS M  

TAKE TWO TABLETS TWICE A DAY

**REFILL / RENEWAL SLIP**  
Qty: 120   TAB   ID: 418021110  
Lot Number: 49820AA21  Rx Expires: MAY 19, 2000  
Fill: (3of6)

**REFILLS REMAINING BEFORE MAY 19, 2000**  
O COPAY   Days Supply: 30

619-3085792

---

MELVIN SMITH  
HYDROXYZINE HCL 10MG CAP  
Manufacturer: GENEVA  
RX# 933978A  Provider: MENA MD, FELICITAS M  

TAKE ONE CAPSULE AT BEDTIME

**REFILL / RENEWAL SLIP**  
Qty: 30   CAP   ID: 418021110  
Lot Number: 92149  Rx Expires: MAY 19, 2000  
Fill: (3of6)

**REFILLS REMAINING BEFORE MAY 19, 2000**  
O COPAY   Days Supply: 30

619-3085793

---

Exhibit No: A 10

A 10

EXHIBIT
NOT
A H

```
PATIENT NAME                      | AGE | SEX | RACE | SSN          | CLAIM NUMBER
SMITH, MELVIN                     | 31  | M   | BLAC | 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  | 418021110

ADM DATE      | DISC DATE     | TYPE OF RELEASE | INP | ABS | WARD NO
MAR 26, 1997  | APR 09, 1997  | OPT/NSC         | 14  | 0   | T44-1WU
```

DICTATION DATE: APR 28, 1997                    TRANSCRIPTION DATE: MAY 04, 1997
TRANSCRIPTIONIST:

DIAGNOSES:                                                                    CODE:
AXIS   I:   1. Schizophrenia chronic undifferentiated type.                   295.60
AXIS  II:   Paranoid personality with chronic brain syndrome.                 301.0
AXIS III:   Deferred.                                                         310.9
AXIS  IV:   Level 3.                                                          564.0
AXIS   V:   G.A.F. 50 on admission; 60 on discharge.                          496
                                                                              272.0
                                                                              724.5

DIAGNOSES NOTED NOT TREATED:

[redacted]

A11

```
TUSKEGEE VAMC                                              7/  08:40      Page:  A12
----------------------------------------------------------------------------------------
PATIENT NAME              | AGE | SEX | RACE |     SSN      | CLAIM NUMBER
SMITH,MELVIN              | 31  |  M  | BLAC | 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  | 418021110
----------------------------------------------------------------------------------------
  ADM DATE    |  DISC DATE   |  TYPE OF RELEASE  | INP | ABS | WARD NO
MAR 26, 1997  | APR 09, 1997 |  OPT-SC           | 14  |  0  | 144-1WU
----------------------------------------------------------------------------------------
```

2. Pepcid 20 mg bid.
3. Xyprexia 10 mg AM.
4. Tegretol 200 mg tid.
5. Theo-Dur SR 300 mg bid.
6. ---- 20 mg hs.
7. Benadryl 50 mg hs.

He was put on a bland diet, however, he is emotionally impaired and it is difficult for him if he wants to work.

LABORATORY DATA: CBC was normal. Urinalysis was normal. Chemistry profile was normal.

He will continue his treatment as an outpatient.

                                              A. VON OLDENBURG, M.D.

AVO/myd
Job #1467-1470
D: 04-28-97
T: 04-29-97

Exhibit No: A 12

A 12

SIGNATURE APPROVING PHYSICIAN/DENTIST