COURT OF CRIMINAL APPEALS NO._____

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

FROM

CIRCUIT COURT OF ___RUSSELL___ COUNTY, ALABAMA

CIRCUIT COURT NO. ___CC-97-95___

CIRCUIT JUDGE ___HON. GEORGE R. GREENE___

Type of Conviction / Order Appealed From: ___RAPE FIRST___

Sentence Imposed: ___20 YEARS PENITENTIARY___

Defendant Indigent: ☐ YES ☐X NO

___MELVIN SMITH___

NAME OF APPELLANT

___HON. RICHARD LEE CHANCEY___    (334) 297-6478
(Appellant's Attorney)                    (Telephone No.)
___P O BOX 1369___
(Address)
___PHENIX CITY, AL   36868___
(City)            (State)            (Zip Code)

V.

STATE OF ALABAMA

NAME OF APPELLEE

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)

1          THE COURT:  The Court would deny the

2                  Defendant's motion for directed

3                  verdict.

4          MR. GREG GRAHAM:  Thank you.

5                  (End of side-bar conference.)

6          THE COURT:  Does the Defendant have anything

7                  to present at this time?

8          MR. GREG GRAHAM:  Yes, sir, Your Honor.  The

9                  defense would call Mr. Melvin Smith.

10                 MELVIN SMITH

11       was affirmed and testified as follows:

12             DIRECT EXAMINATION

13  BY MR. GREG GRAHAM:

14  Q    Can I get you to state your name for the record,

15      Melvin?

16  A    My name is Melvin Smith.

17  Q    And let me get you to speak up a little bit.

18  A    Okay.  My name is Melvin Smith.

19  Q    And where is it that you reside?

20  A    I reside in Hurtsboro, Alabama.

21  Q    What's that address?

22  A    37 Highway 51 North.

23  Q    How long -- on the day in question back in

24      October of, I believe, of '96, would you just

25      give your recollection of what happened that

1    morning?

2  A    Yes, sir.  On the morning that this alleged

3       incident happened, it was October --

4            THE COURT:  You need to keep your voice up,

5                 make sure the jurors can hear you now.

6            THE WITNESS:   Yes, sir.

7  A    On October the -- I think October the 25th, 1996,

8       I think it was about seven.

9  Q    And that would be seven in the morning?

10  A    Yes, sir.

11  Q    And that would be Central Time?

12  A    Yes, sir.

13  Q    Okay.

14  A    I went to Annette Thomas' house and knocked on

15       the door.  She let me in.  I went in and we

16       started talking.  She closed the door, and like I

17       said, we started talking for a while and I

18       started touching her, and she pulled me in the

19       bedroom and we had sexual intercourse.  Before we

20       had sexual intercourse, we had oral sex.

21  Q    Now, did you give oral sex or did she give oral

22       sex?

23  A    I did the oral sex.

24  Q    So you performed oral sex on her?

25  A    Yes, sir.

Q   Okay.  And then what happened?

A   After we finished oral sex and we had sexual
    intercourse, I was telling her, you know, about
    that -- since I had been off my job, that I had
    spent a lot of time with my wife and that me and
    my wife had patched everything up and that we
    were going to get back together, so I wasn't
    going to see her anymore, I wasn't going to be
    messing around on my wife no more, because we had
    made some plans to go to Washington, D.C.  I was
    going to leave my wife and we was going to move
    to Washington, D.C. and all that.

Q   And who would we be?

A   Me and Annette.

Q   Okay.

A   And she got mad and she slapped me, and I hit
    her.  When I hit her, she jumped up and saying
    I'm going to get you, just like that, so I just
    put my clothes on and left and that was it.  And
    later on that day, the police officer picked me
    up, you know, saying that she said I had raped
    her.  But at that time Mr. Tapley, I think
    Rayford Tapley, he the one that picked me up.

Q   Is he an officer at Hurtsboro?

A   Yes, sir.  He's a police officer on the Hurtsboro

```
 1        police force.  He picked me up and they tote me

 2        to jail, and he asked me a few questions and that

 3        was it.  And I stayed in jail, you know, for

 4        three months and made bond, got out.  But in the

 5        mean -- you know, that's all I can say.

 6   Q    Well, let me ask you a couple of questions.  Your

 7        wallet was recovered at the scene, correct?

 8   A    I don't know, sir.

 9   Q    Well, let me ask you this, do you own a knife?

10   A    No, sir.

11   Q    Not even a pocket -- do you own a pocketknife?

12   A    No, sir.  Never owned one.

13   Q    Is there any certain reason?

14   A    Yes, sir.  Because when I was four years old, my

15        brother which was two at the time, we were

16        playing, we thought it was a cap gun, but it was

17        an actual 38 or a 32, and it went off and shot my

18        brother.  And ever since then, I just ain't been

19        able to own a weapon or anything because it

20        just -- I mean, I just can't, I can't, I can't --

21   Q    Well, let me back up --

22   A    I don't own a gun or anything.

23   Q    -- with a few questions for you.  You know Ms.

24        Thomas from riding back and -- from other than

25        growing up, from riding back to work to Tuskegee?
```

1    A    Yes, sir.

2    Q    And you all worked at different places?

3    A    Yes, sir.

4    Q    During the rides back and forth to work or

5         throughout you all's relationship, how would you

6         describe your relationship?

7    A    It was -- it was -- at times it was sensual.  At

8         times it was, you know, sexual.  At times -- you

9         know, at times it was --

10   Q    Would you say you all are friends?

11   A    Friends, yeah.

12   Q    Any more or any less than friends?

13   A    If you would - if you would call having sex

14        friends, I mean, we were friends.

15   Q    During this relationship, would you ever provide

16        her with gifts or any sort of thing like that?

17   A    Yes, sir.  On a couple of occasions that I can

18        recall, you know, just like at the Tuskegee

19        Floral Shop in Tuskegee, I sent her some flowers

20        on many occasions to her job like for Valentine's

21        Day and for her birthday.  During Christmas,

22        bringing gifts like 18 karat or 24 karat gold

23        earrings, and 24 karat gold Mickey Mouse watch

24        that I bought at K-Mart, you know, and giving her

25        money and stuff like that at times.

1   Q   And you also -- how long would you say that you

2       all rode back and forth to work together?

3   A   Actually, I think it was -- started I was riding

4       with her sister Gail and I think I started --

5       well, actually, Gail started riding with me like

6       '91, and my car tore up and I started riding

7       with her because she got a car later on once she

8       got her license and stuff, so I started riding

9       with her, and I think it was about a year later

10      Annette started riding with us.

11  Q   And her was her sister Gail?

12  A   Yes.

13  Q   So you all were riding together?

14  A   Yes, sir.

15  Q   And would you go meet her at her house usually?

16  A   Yes, sir.

17  Q   And that would be about 7:00 in the morning,

18      Central Standard Time?

19  A   Sometimes seven, sometimes 6:30, you know,

20      sometimes a little earlier.

21  Q   I want to ask you a couple of questions about

22      your statement that you made?

23  A   Yes, sir.

24  Q   When you made your statement was in '98?

25  A   Yes, sir.

1    Q    And you had originally been arrested in 96?

2    A    Yes, sir.

3    Q    And you stated that you had been in jail for how

4         long?

5    A    At least -- I had been in jail that day since

6         about nine.  I think it was about 9:00 Central

7         Time, and I hadn't had anything to eat.  I mean,

8         I was there a long time, sir.

9    Q    Were you at the jail or at the actual sheriff's

10        department?

11   A    I was in the jail in the holding cell.

12   Q    Prior to that, you had been in jail for three

13        months and then you posted bond?

14   A    Yeah.  From October of '96 to January the 27th of

15        '97 I was in jail.

16   Q    Does that statement accurately -- truly and

17        accurately describe the statements that you would

18        have gave to Sergeant Russell?

19   A    Sir, it don't sound exactly like what I told

20        him.  And he did ask me was that it and I told

21        him one thing, but I told him also, I said, it's

22        kind of close, I said, I'll just let it go, you

23        know, because I was really tired and I just

24        wanted to get out of there because him and -- it

25        was him and another guy, I don't know his name,

| | | |
|---|---|---|
| 1 | | another detective. |
| 2 | Q | That would probably be Detective O'Steen which he |
| 3 | | had mentioned? |
| 4 | A | Yes, sir. |
| 5 | Q | Did they release you after your statement? |
| 6 | A | No, sir.  I had to go back over to the jail |
| 7 | | because I had been arrested for a bad check. |
| 8 | Q | About the day in question, did you force yourself |
| 9 | | on Ms. Thomas? |
| 10 | A | No, sir, I did not.  I did not. |
| 11 | Q | And your standing is it was a consensual |
| 12 | | relationship? |
| 13 | A | Yes. |
| 14 | Q | And how long had this relationship been going on? |
| 15 | A | Sir, I would say -- I know my youngest -- I mean, |
| 16 | | my oldest boy, I think he was like two, so I know |
| 17 | | it was one Christmas when he was about two |
| 18 | | because I bought him a truck and I had -- during |
| 19 | | that time I took some earrings and a watch over |
| 20 | | to her house and her whole family was in the |
| 21 | | living room when I took it in and her father |
| 22 | | asked me did I want to stay, but I told him I had |
| 23 | | to go put my child's truck together, so I |
| 24 | | couldn't stay and I know that was around, I would |
| 25 | | say, '94 or '95. |

1   Q   Well, let me ask you this, what was your purpose

2       in going to Ms. Thomas' house that morning?

3   A   To have sex.

4   Q   Well, did you think that you'd just show up and

5       she'd want to have sex?

6   A   Yes, sir.

7   Q   Or had you been invited over?

8   A   Yes, sir.  I had talked to her, I think it was --

9       I think it was that Sunday, that Sunday; during

10      that week or that Saturday night.  One of those

11      nights I had called her.

12   Q   And she --

13   A   And then once I called her, I walked down to her

14      house because I was over to my in-law's house.  I

15      walk down to her house and she told me she was

16      tired that night, but she said call me and come

17      by some other time.

18   Q   Okay.  And had this been a common occurrence?

19   A   Not at the house, sir.

20   Q   Well, in this relationship, where would you all

21      meet?

22   A   Usually, like when we was riding home or

23      something like that, we might stop off, you know,

24      side of the road or something like that.

25   Q   Side of the road, you mean pull the car off or

113

1      you mean side of the road like gas station,

2      restaurant?

3  A   No.  Just pull the car off, just like down a dirt

4      road or something like that.

5  Q   I don't have any more questions for you right

6      now, Melvin.  Mr. Smith is going to ask you some

7      questions.

8  A   Yes, sir.

9  Q   Okay?

10  A   Yes, sir.

11               CROSS EXAMINATION

12  BY MR. SMITH:

13  Q   What part of your statement that you gave to

14      Sergeant Russell is incorrect?

15  A   Oh, sir, I mean, the wording.  There's a

16      different wording than I would put it in.

17  Q   Okay.  You do agree with me that you changed part

18      of it; that he had lined through on the second

19      page that Ms. Thomas was completely naked.  You

20      told him that was incorrect, right?

21  A   Yes, sir, sure did.

22  Q   So he changed that part?

23  A   Yes, sir.

24  Q   And you didn't feel that it was important to

25      change any other parts of the statement?

1    A    Like I said, sir, I was tired.

2    Q    You were tired, okay.  The note which is State's

3         Exhibit Number 5 that has been introduced

4         previously, you wrote this note, didn't you?

5    A    Yes, sir, I did.

6    Q    You did?

7    A    Yes, sir.

8    Q    What was the purpose of you writing that note?

9    A    I wrote it to my wife, sir.

10   Q    And did you tell your wife to give it to Ms.

11        Thomas?

12   A    I told her she could show it to her if she

13        wanted, but it was actually for us and some

14        questions that she might want to ask Annette.

15   Q    Well, if you'll look about 13 lines down the note

16        where it says does Louise, Demetrius, Dominique

17        and Davina have to suffer for Melvin's sins or

18        mistakes.  Do you normally address your wife like

19        this in a note?

20   A    Yes, sir.

21   Q    Why wouldn't you have said do you, my wife, have

22        to suffer for my mistakes?

23   A    I don't know.  I can't say what my thought or

24        frame of mind was at that time during '96.

25   Q    Because you meant for that letter to be read by

1       Ms. Thomas, didn't you?

2  A   No. I don't know, sir. I don't recall at this

3       time.

4  Q   Are Demetrius, Dominique and Davina your

5       children?

6  A   Yes, sir.

7  Q   Why, if this letter were addressed to your wife,

8       would you at the top of it write Thomas family?

9  A   Just like I say, I sent a letter to my wife and

10      this was an insert that was in there, and I

11      told -- when I talked to my wife, I asked her, I

12      said, I really wrote this out and I said if you

13      wanted, these are some questions that you can ask

14      the Thomas family, but I didn't send a letter to

15      the Thomas family.

16  Q   Why would your wife want to ask the Thomas family

17      these questions?

18  A   I have no idea, sir.

19  Q   But you wrote the questions?

20  A   Yes, sir, because my wife had questions for me.

21  Q   Oh. So you answered her questions with

22      questions?

23  A   Like I said, this is an insert of a letter that's

24      sent to my wife.

25  Q   I understand, Mr. Smith. So pretty much

|   |   |                                                         |
|---|---|---------------------------------------------------------|
| 1 |   | everything that Ms. Thomas has told this jury           |
| 2 |   | today and this Court is a lie?                          |
| 3 | A | I'm not saying everything that she said is a            |
| 4 |   | lie.  I'm saying she added some things, sir, and        |
| 5 |   | she took away some things.                              |
| 6 | Q | But the part about you having forced yourself           |
| 7 |   | sexually on her is a lie; is it not?                     |
| 8 | A | Yes, sir.                                                |
| 9 | Q | Why would she come into court, swear to tell the        |
| 10|   | truth, and lie about you?                                |
| 11| A | I don't know, sir.                                       |
| 12| Q | What ax does she have to grind with you?                 |
| 13| A | Like I said, she said she was going to get me.           |
| 14|   | I'm here.                                                |
| 15| Q | Why?                                                     |
| 16| A | I'm here.                                                |
| 17| Q | Why is she going to get you?                             |
| 18| A | I stated -- just like I stated in my testimony          |
| 19|   | earlier, sir, I had told her that it was off and        |
| 20|   | that I was no longer going to Washington, D.C.          |
| 21| Q | Now, you heard Ms. Thomas testify that you called       |
| 22|   | her from jail.  Is that true or is that a lie?          |
| 23| A | No, sir, I did not call.                                 |
| 24| Q | You didn't call?                                         |
| 25| A | No, sir.                                                 |

1    Q    Did you call your wife and get your wife to call

2         Ms. Thomas?

3    A    I called my wife.

4    Q    Well, did you get on the three-way call with Ms.

5         Thomas?

6    A    Yes, sir.  I talked to her from jail.

7    Q    Oh, okay.  So you did talk to her from jail?

8    A    Yes, sir.  But I did not call, sir.

9    Q    I'm sorry I didn't get the phraseology correct.

10        So you did talk to her from jail and you told her

11        you were sorry?

12   A    I talked to her from jail.

13   Q    Well, what did you tell her?

14   A    I don't know, sir.

15   Q    Okay.  Before you said you had gotten laid off

16        from your job or you had lost your job.  What

17        kind of job did you have?

18   A    I worked for the Department of Veterans Affairs

19        in Tuskegee, Alabama.

20   Q    What kind of work did you do for them?

21   A    As a -- I'm a dental technician/specialist.

22   Q    A dental technician?

23   A    Yes, sir.

24   Q    Did you have to go to college for that?

25   A    Yes, sir.

```
 1   Q    Do you have a degree?

 2   A    Yes, sir.

 3   Q    From where?

 4   A    From the United States Academy of Health and

 5        Sciences in San Antonio, Texas.

 6   Q    Now, these gifts that you said that you gave to

 7        Ms. Thomas on her birthday or whatnot, how many

 8        times did you send her flowers?

 9   A    I think it was three times, sir.

10   Q    Three times.  Was it each time on her birthday?

11   A    No, sir.

12   Q    For what occasions would you send the flowers?

13   A    Valentine's Day, birthday, and I think just --

14        one was just secret admirer type thing.

15   Q    Okay?

16   A    Yes, sir.

17   Q    You have proof that you sent these, obviously?

18   A    Well, we called the flower shop and they said

19        they don't have records that -- they don't keep

20        records that long.

21   Q    So you must have paid for them in cash?

22   A    Yes, sir, I sure did.

23   Q    You don't have a canceled check or a credit card

24        receipt showing that you paid for these?

25   A    No, sir, I don't.
```

1  Q    I understand.  How much did you spend for these

2       flowers?

3  A    I spent twenty-four, I think.  Sir, I couldn't be

4       sure, but it was roses, I know that.  A dozen of

5       roses each time.

6  Q    So how many times did you send them to her on her

7       birthday?

8  A    I think once.

9  Q    When is her birthday?

10 A    April the 10th or the 14th.

11 Q    April 10th or the 14th?

12 A    Somewhere I know it was a -- sir, I couldn't be

13      sure, but I know it's around somewhere in there.

14 Q    Of what year?

15 A    I can't -- I can't --

16 Q    What year was she born?

17 A    Oh, sir, I don't know exactly what year now, but

18      at that time I got some notes on my calendar that

19      I had at work.

20 Q    Yes, sir.

21 A    And I had it marked out.

22 Q    So it's in April?

23 A    I'm not sure, sir.

24 Q    You're not sure.

25 A    But I would say April because I feel that it was

1       sure, but it might have been -- like I say, I

2       just know -- at that time I knew her birthday,

3       but it's been three years ago, so I'm trying to

4       forget all this.

5  Q  What would you say if I told you her birthday was

6       in June?

7  A  I'll say it could be possible.

8  Q  When you said that you had it marked on your

9       calendar, do you have that with you in court

10      today?

11  A  No, sir.

12  Q  In your statement to Sergeant Russell, you stated

13      or you made a correction that she was wearing a

14      see-through gown, correct?

15  A  Yes, sir.

16  Q  And you see this that has been marked as, I

17      think, State's Exhibit Number 3 and introduced

18      into evidence today, and Ms. Thomas, I believe,

19      testified that this is what she was wearing as

20      well as her sister testified to that.  You

21      remember that, right?

22  A  Yes, sir, I sure do.

23  Q  That's not see-through, is it?

24  A  No.

25  Q  And what did you mean in your statement when you

1   said that you had been praying to God to help you

2   through this mess?

3  A   What did I mean?

4  Q   Yeah.

5  A   Sir, when you're locked up in jail, ain't that a

6   mess?

7  Q   I guess it is, Mr. Smith.  And you also stated

8   that Ms. Thomas slapped you after you all had

9   finished having sex, correct?

10 A   Yes, sir.

11 Q   And then you hit her back?

12 A   Yes, sir.

13 Q   You didn't remember how many times you hit her?

14 A   I didn't say that, sir.

15 Q   You didn't say that?

16 A   No, sir.

17 Q   Well, in the statement it says I don't know how

18   many times I hit her.  I remember I couldn't

19   control my temper.

20 A   I didn't write that.

21 Q   You didn't write that.  But you initialed on the

22   page right in front of that; did you not?

23 A   I didn't say it, sir.

24 Q   Well, let me show you.  Let's see, the bottom of

25   Page 2 where it says when we were through having

1      sex, Annette slapped me.  I hit her with my

2      fist.  I believe I hit her in the face.  I don't

3      know how many times I hit her.  I remember I

4      couldn't -- is that your initial right there, MS?

5  A    Yes, sir, that's my initial.

6  Q    Next page -- control my temper.  Is that your

7      initial right in front of that?

8  A    Yes, sir.  But that's not what I told him.

9  Q    Then why would you initial it?

10  A    Because I was tired, sir, and just wanted to get

11      out of there.

12  Q    Just wanted to get out of there.  So when you

13      gave this statement to Sergeant Russell, you were

14      in jail on something else, you weren't down there

15      because of this?

16  A    Yes, sir.  You know, you picked me up, sir.

17          MR. SMITH:  Judge, that's all the questions

18              I'd have at this time.

19          THE COURT:  Do you have anything on

20              redirect?

21          MR. GREG GRAHAM:  A couple more, Your

22              Honor.

23           REDIRECT EXAMINATION

24  BY MR. GREG GRAHAM:

25  Q    When is the last time you sent her flowers, Ms.

```
 1        Thomas flowers on her birthday; how many years
 2        ago?
 3   A    It's been over three years ago, sir.
 4   Q    So it would be hard for you to remember her
 5        birthday?
 6   A    Yes, sir, it would.
 7   Q    Okay.  She testified, and as her sister did, that
 8        she was wearing that nightgown when everyone
 9        arrived after the alleged incident.  Is it your
10        testimony that she had something on prior to
11        that?
12   A    No, sir.  She didn't have that.
13   Q    So she had something else on?
14   A    Yes, sir, sure did.
15   Q    Were you here earlier when Sergeant Russell
16        admitted changing your statement to see if you
17        would catch it?
18   A    Yes, sir.
19   Q    In your opinion --
20   A    A lot of things --
21   Q    Could he have changed something else?
22   A    Yes, sir.  A lot of things I didn't catch because
23        that's not even my words.
24            MR. GREG GRAHAM:  Thank you, Melvin.
25
```

### RECROSS EXAMINATION

BY MR. SMITH:

Q    Even though it's not your wording, you still
signed and initialed the statement?

A    Uh --

Q    And you read the statement, too, right?

A    No, sir.  I didn't read it, he read it.

Q    You didn't.  But you initialed it and signed it?

A    Yes, sir, sure did.

         MR. SMITH:  I don't have any further
              questions.

         MR. GREG GRAHAM:  Nothing further, Your
              Honor.

         THE COURT:  Mr. Smith, you have participated
              in your own defense and I'm going to
              give you the opportunity at this point,
              is there anything that you've not been
              asked that you would like to testify to
              that you haven't had the opportunity to
              testify to?

         THE WITNESS:  No, sir.  I'm just going to
              say that, you know, a lot of lies been
              told.  That's all I'm going to say.
              Just a lot of lies.

         THE COURT:  Are you satisfied that you've

```
 1              had the opportunity to express

 2              everything you want to to this jury?

 3      THE WITNESS:  Yes, sir.  I wonder, can I get

 4              an opportunity in my closing

 5              statement?

 6      THE COURT:  Well, you'll have an opportunity

 7              to talk about the evidence, but you

 8              won't have an opportunity to testify

 9              and that's why I'm giving you the

10              opportunity now, to make sure that you

11              understand that this is the point that

12              whatever evidence you wish to present

13              has to be presented now because you

14              won't have an opportunity later as far

15              as your own testimony is concerned.

16      THE WITNESS:  Well, I got one thing I need

17              to say, sir.

18      THE COURT:  Okay.

19      THE WITNESS:  Is the fact that Annette know

20              she lying.  She know that I sent her

21              flowers, she know she got gifts, and

22              she know she got money from me.  I

23              don't know why they're sitting up there

24              lying.  It's a shame.  It's just a

25              shame.
```

1    THE COURT:  Anything else you'd like to

2         add?

3    THE WITNESS:  No, sir.

4    THE COURT:  You may step down.

5    MR. GREG GRAHAM:  Your Honor, may we

6         approach the bench?

7              (Bench conference, off record.)

8    THE COURT:  Does the State have anything

9         further at this time, I mean, the

10         defense?

11    MR. GREG GRAHAM:  No, sir, Your Honor.

12    THE COURT:  Defense rests?

13    MR. GREG GRAHAM:  We'd rest, Your Honor.

14    THE COURT:  State have anything?

15    MR. SMITH:  Yes, sir.  We would have

16         rebuttal.

17    THE COURT:  If you'll call your witness.

18    MR. SMITH:  Ms. Thomas, would you retake the

19         witness stand, please?

20              ANNETTE THOMAS

21         recalled by the State,

22    previously sworn, testified further as follows:

23         FURTHER DIRECT EXAMINATION

24  BY MR. SMITH:

25  Q    You're under the same oath.  Again, state your

1     name for the record, please?

2  A  Annette Thomas.

3  Q  Ms. Thomas, when is your birthday?

4  A  July 15th, 1967.

5  Q  Have you ever received flowers or gifts or

6     earrings or a watch from Mr. Melvin Smith as a

7     gift?

8  A  The flowers I'm not sure about.  I remember one

9     Christmas, I was at home with my family and he

10    did come by with some earrings and a watch.

11  Q  What about flowers?

12  A  I don't remember any flowers.

13  Q  Have you ever given him a gift?

14  A  Never.

15  Q  Did you ever initiate sexual contact with Mr.

16    Smith on the day of October the 25th?

17  A  No, I did not.

18  Q  Anytime that you ever rode with Mr. Smith to

19    Tuskegee, did you ever stop on the side of the

20    road and have sexual intercourse with him?

21  A  No, I did not.

22  Q  Have you ever agreed to move with Mr. Smith and

23    go to Washington, D.C. to live?

24  A  We never even talked about Washington and Melvin

25    knows that.

1    Q    Did you ever slap Melvin and tell him that you

2         were going to get him?

3    A    Excuse me?

4    Q    Did you ever slap Melvin and tell him that you

5         were going to get him?

6    A    If I slapped him, I slapped him when I was trying

7         to protect myself.  But as for going to get him,

8         no, I did not.

9    Q    Are the things that you've told this jury today

10        the truth?

11   A    Absolutely the truth.

12   Q    Thank you.

13             MR. SMITH:  That's all the questions I would

14                 have.

15             MR. GREG GRAHAM:  Your Honor, I have a

16                 couple.

17             THE COURT:  All right.

18                 (Brief pause.)

19             FURTHER CROSS EXAMINATION

20   BY MR. GREG GRAHAM:

21   Q    Ms. Thomas, do you remember your testimony

22        earlier when I asked you if you had received any

23        flowers or gifts from Mr. Smith and you said no?

24   A    I said I didn't recall it.

25   Q    But now it's possible that you could have

|    |   |                                                          |
|----|---|----------------------------------------------------------|
| 1  |   | received flowers on your birthday, and he did            |
| 2  |   | come by your house and give you a present at             |
| 3  |   | Christmas?                                                |
| 4  | A | Right.                                                    |
| 5  | Q | So he did give you that?                                 |
| 6  | A | Right.                                                    |
| 7  | Q | So now you're going to change those two things           |
| 8  |   | and we're supposed to believe you on everything          |
| 9  |   | else?                                                     |
| 10 | A | I didn't change anything.  I said I could not            |
| 11 |   | recall about the flowers.  You did not ask me            |
| 12 |   | about a watch.  You did not ask me about                 |
| 13 |   | earrings.                                                 |
| 14 | Q | Well, I said gifts and I believe a wedding -- I          |
| 15 |   | mean, a present at Christmas of earrings and a           |
| 16 |   | watch would be considered a gift.  And you sat           |
| 17 |   | here in front of the jury and said, no, you              |
| 18 |   | didn't?                                                   |
| 19 | A | I said I could not remember.  I have no reason to        |
| 20 |   | sit here and lie about anything.                         |
| 21 | Q | Well, I cannot remember is a real convenient             |
| 22 |   | answer.  Are you sure that you didn't mean no?           |
| 23 |   | MR. SMITH:  I would object to the                        |
| 24 |   | characterization of a convenient                         |
| 25 |   | answer.                                                   |

```
 1              THE COURT:  I'm going to sustain the
 2                  objection.  Strike the question.
 3   Q   So flowers are possible on your birthday?  It was
 4       possible that you received flowers on your
 5       birthday?
 6   A   I said I did not recall.
 7   Q   But, I mean, from what Mr. Smith just asked you
 8       this last time?
 9   A   He does not even know when my birthday is, so
10       why --
11   Q   Ma'am, I'm not arguing that point.  My question
12       to you is, your testimony now which is different
13       from earlier is that you could have received
14       flowers from Melvin on your birthday?
15   A   Like I said, I do not recall.
16   Q   But you told Mr. Smith just then that it was
17       possible?
18   A   Right, it's possible.  If I can't recall, it
19       doesn't mean it did not happen.
20   Q   Well, there's a difference in the answer whether
21       it's possible or I can't recall.
22   A   Okay, okay.
23   Q   So is it possible or I can't recall?
24   A   It is possible.
25   Q   But you did receive earrings and a watch?
```

```
1   A    Yes.  He did bring it over in front of my
2        family.  He brought it and he left.
3   Q    Did you keep those gifts?
4   A    As long as they lasted.
5   Q    So that would be, yes, you kept them?
6   A    Yes, I did.
7   Q    But you would still consider you and Melvin just
8        acquaintances?
9   A    Melvin brought those gifts over because he said
10       he appreciated me for taking him to work.  That's
11       the only reason.
12  Q    But you didn't remember him bringing this over
13       earlier?
14            MR. SMITH:  Judge, this question has been
15                asked and answered now several times.
16                I would object to the continuing asking
17                of the question.
18            THE COURT:  I think it's been asked and
19                answered enough.
20            MR. GREG GRAHAM:  We have no further
21                questions, Your Honor.
22            FURTHER REDIRECT EXAMINATION
23  BY MR. SMITH:
24  Q    Ms. Thomas, did you consider the gift of the
25       earrings and the watch to be a romantic gesture?
```

1    A    Not at all.  My family was there.  Everybody was

2         there and they thought it was funny because

3         Melvin knew -- he knows and he knew then that we

4         never, never had any kind of involvement with

5         each other.  And I can't believe he would sit

6         here and lie like he have been doing, and he

7         knows that.  I don't have to change my story as

8         he has been doing constantly.

9    Q    Ms. Thomas, earlier in your original testimony, I

10        had asked you about State's Exhibit 5, the letter

11        that you received, and I also asked you about

12        another letter.

13   A    Right.

14   Q    How many letters did Mr. Smith send to you

15        through his wife?

16   A    There was this one and another one.

17   Q    And where is the other one?

18   A    She wouldn't let me keep that one.

19   Q    Do you remember what it said?

20   A    Very vaguely.  I remember he was saying that

21        don't let the white man judge.  Take it to the

22        church.  Don't take it to court.  Something about

23        we're supposed to be cousins or something like

24        that.

25   Q    Were these questions or these statements directed

```
 1          to you or to his wife?
 2   A      By the way I was reading that, not to let the
 3          white man judge, why would his wife have anything
 4          to do with that.  That was directed to me.
 5               MR. SMITH:  I don't have any further
 6                 questions.
 7               MR. GREG GRAHAM:  A couple more.
 8                 FURTHER RECROSS EXAMINATION
 9   BY MR. GREG GRAHAM:
10   Q      Was that in the other letter that he sent you?
11   A      Excuse me?
12   Q      Or is that the telephone conversation?
13   A      It was in the letter.
14   Q      It was in the letter?  And that's the letter
15          other than the one that Mr. Smith has on the
16          billboard?
17   A      Excuse me?
18   Q      That's the letter other than the one --
19   A      Right.
20   Q      -- that's already in evidence?  Do you know where
21          that letter is?
22   A      I gave it back to her.
23               MR. GREG GRAHAM:  Thank you.
24               MR. SMITH:  That's all, Judge.  No further
25                 questions.
```

1    MR. GREG GRAHAM:  Your Honor, we have no

2         further questions.

3    THE COURT:  All right.  Ladies and gentlemen

4         of the jury, we're going to take about

5         a 10-minute break and when we come

6         back, we will proceed with closing

7         argument and instructions in this

8         case.  Thank you.

9         (Jury not present.)

10   THE COURT:  Does Mr. Smith have any written

11        jury instructions?

12   MR. GREG GRAHAM:  No, sir, Your Honor.

13   THE COURT:  Do you have any other motions at

14        this time?

15   MR. GREG GRAHAM:  Once again, Your Honor,

16        we'd make a motion for a directed

17        verdict.

18   THE COURT:  The Court would deny your

19        motion.  We'll start back with closing

20        argument in 10 minutes.

21   MR. GREG GRAHAM:  Thank you, Your Honor.

22        (Recess.)

23        (Jury not present.)

24   THE COURT:  We'll put that on the record,

25        that Mr. Melvin Smith has made the

```
 1              decision not to have Mr. Graham
 2              participate in the closing argument,
 3              that he will handle that by himself.
 4              And he's been given the opportunity to
 5              have both himself and Mr. Graham
 6              participate in the closing argument,
 7              and he's declined to do so.
 8       THE DEFENDANT:  No, sir.  Sorry, Judge.  I
 9              don't mean to address you like that.
10              Could you kind of like leave it open
11              just in case he sees something --
12       THE COURT:  No, sir.  You've been given the
13              opportunity, and I'm not going to let
14              you get up there and change your mind
15              while you're closing argument to the
16              jury.  Make your decision now or not.
17       THE DEFENDANT:  Yes, sir.  We'll make the
18              decision that both of us will do it,
19              sir.
20       THE COURT:  Okay.
21       THE DEFENDANT:  Thank you, Judge.
22       THE COURT:  You're welcome.  Now, the
23              exhibits I have as entered were one,
24              three, four, five and seven.
25       MR. SMITH:  Yes, sir.  Well, Judge, I would
```

1    of the trial with closing argument by

2    counsel.  The State will proceed with

3    the first part followed by the

4    Defendant and by his counsel and then

5    the State will again have the right to

6    present a closing argument.

7         Mr. Smith, on behalf of the State,

8    are you ready at this time?

9    MR. SMITH:  Your Honor, at this time the

10        State would waive its initial argument

11        and would reserve final argument.

12   THE COURT:  All right.  Mr. Graham, do you

13        have anything to present at this time?

14   MR. GREG GRAHAM:  Yes, Your Honor.

15        (Closing argument by Mr. Graham.)

16   THE COURT:  Mr. Smith?

17   THE DEFENDANT:  Yes, sir.

18        (Closing argument by Mr. Melvin

19          Smith, the Defendant.)

20   MR. SMITH:  I would object to that, Your

21        Honor.  He cannot testify or make a

22        statement as to what's in the minds

23        of --

24   THE COURT:  Sustain the objection.

25   MR. SMITH:  -- individuals.

1                    (Closing argument by Mr. Melvin

2                        Smith, the Defendant, continues.)

3          MR. SMITH:  I would object to that, Your

4               Honor.  It's not a fact.  There's been

5               no evidence of that.

6          THE COURT:  I would sustain the objection.

7               The jury is to disregard that part of

8               the argument.

9          THE DEFENDANT:  Yes, sir.

10                   (Closing argument by Mr. Melvin

11                       Smith, the Defendant, continues.)

12         THE COURT:  All right.

13                   (Final argument by Mr. Smith.)

14         THE COURT:  Ladies and gentlemen of the

15              jury, this would conclude the closing

16              argument part of the case.  The

17              argument that is made by the

18              participants is only designed to help

19              you understand the evidence and apply

20              the law.  However, this argument is not

21              evidence and you should disregard any

22              remark, statement or argument which is

23              not supported by the evidence or by the

24              law as given to you by the Court.

25              Likewise, statements made by me are not

1   evidence and are not to be so

2   considered by you.

3       The case was originally brought to

4   you by way of the indictment that's

5   been read out to you and talked to you

6   several times, and again, I want to

7   remind you the indictment is not

8   evidence in the case. It is merely the

9   written means by which the case is

10  brought before you for trial.

11      The witnesses were sworn and

12  placed under oath before they testified

13  before you. It is their testimony

14  which is evidence. There was also

15  exhibits offered which were received by

16  the Court and that is evidence. It is

17  upon this testimony and this evidence

18  that you will arrive at your final

19  verdict and only the testimony and

20  evidence as presented in this

21  courtroom.

22      It is the duty of the judge to see

23  that the trial progresses in an orderly

24  fashion, to rule upon all legal matters

25  that are presented, to define the

140

1    issues involved, and instruct the jury

2    as to the law applicable to the

3    particular case.  It is your duty as

4    jurors to follow the law as so stated

5    to you by the judge.  You will

6    therefore render a verdict in

7    accordance with the facts as you

8    determine them from the evidence and

9    the law as given to you by the Court.

10        You are the sole and exclusive

11   judges of the facts.  It will be your

12   duty to attempt to reconcile the

13   testimony of all the witnesses so as to

14   make them all speak the truth, if this

15   can be done reasonably.  If you cannot

16   reasonably reconcile all the testimony,

17   it is then your duty to consider the

18   testimony with a view of determining

19   what the true facts are.  In so doing,

20   you may accept or reject any part of

21   the testimony of any witness and accept

22   only the testimony you consider worthy

23   of belief.

24        In determining what the true facts

25   are from the evidence, you may take

1    into consideration any natural interest

2    or bias a witness may have as a result

3    of any connection with the case.  You

4    may take into consideration the

5    interest or bias a witness may have

6    shown while testifying.  You may take

7    into consideration the demeanor of any

8    witness, as to whether that witness has

9    apparently testified frankly or

10   evasively.  You make take into

11   consideration any matter which you

12   would in your everyday affairs in

13   passing upon the truthfulness and

14   accuracy of the testimony.  Weigh the

15   testimony in the light of your common

16   observation and experience and reach a

17   verdict that will be based upon the

18   truth as you determine it from all of

19   the evidence.

20        In arriving at a verdict in this

21   case, you must not permit sympathy,

22   prejudice or emotion to influence you.

23   I am not permitted by law to express my

24   opinion or comment on the effect of the

25   evidence presented to you or the

1   credibility of any witness in the

2   case.  Therefore, any ruling, statement

3   or expression which may have been made

4   by me during the course of this trial

5   is not to be considered by you as any

6   part -- any effort on my part to convey

7   to you any feeling or opinion about the

8   facts of this case or the credibility

9   of any witness.

10  There may be in the explanation

11  that is to come some words or phrases

12  or terms used that need to be defined.

13  The Court will give you the proper

14  definition of these words or terms.  A

15  legal definition may be different from

16  that which you customarily ascribe to

17  them.  If this should happen, you

18  should accept the Court's definition.

19  In no event should you seek any

20  definition of any word or phrase by

21  consulting a dictionary, encyclopedia

22  or other book.  It would be highly

23  improper for you to do so.

24  The burden is upon the State of

25  Alabama to prove the Defendant guilty

1    conflict in the evidence, or a

2    combination of those three. It is a

3    doubt that remains after going over in

4    your minds the entire case and giving

5    consideration to all the testimony. It

6    is distinguished from a doubt arising

7    from mere possibility, from bare

8    imagination or from fanciful

9    conjecture.

10        If, after considering all the

11    evidence, you are convinced of the

12    Defendant's guilt beyond a reasonable

13    doubt, then it would be your duty to

14    convict the Defendant. However, if you

15    still have a reasonable doubt, then the

16    Defendant is entitled to the benefit of

17    it and you should acquit him.

18        The Defendant, Melvin Smith, is

19    charged with the offense of rape in the

20    first degree. A male commits the crime

21    of rape in the first degree if he

22    engages in sexual intercourse with a

23    female, and he does so by forcible

24    compulsion. To convict, the State must

25    prove beyond a reasonable doubt each of

1   the following elements of rape in the

2   first degree:  That the Defendant,

3   Melvin Smith, a male, engaged in sexual

4   intercourse with Annette Thomas, a

5   female; that the Defendant did so by

6   forcible compulsion; and that the

7   Defendant acted intentionally and

8   knowingly.

9       A person acts intentionally with

10  respect to a result or to conduct when

11  his or her purpose is to cause that

12  result or to engage in that conduct.  A

13  person acts knowingly with respect to

14  conduct or to a circumstance when he is

15  aware that his or her conduct is of

16  that nature or that the circumstance

17  exists.  Sexual intercourse has its

18  ordinary meaning and occurs upon any

19  penetration, however slight.  Emission

20  is not required.  Forcible compulsion

21  is physical force that overcomes

22  earnest resistance, or it is a threat,

23  express or implied, that places a

24  person in fear of death or serious

25  physical injury to himself or to

1    herself or to another person.

2         If you find from the evidence that

3    the State has proved beyond a

4    reasonable doubt each of the elements

5    that I've listed to you of the offense

6    of rape in the first degree as charged,

7    then you shall find the Defendant

8    guilty of rape in the first degree.  If

9    you find that the State has failed to

10   prove beyond a reasonable doubt any one

11   or more of the elements of the offense

12   of rape in the first degree, then you

13   cannot find the Defendant guilty of

14   rape in the first degree, and you

15   should return a verdict of not guilty.

16        Upon retiring to the jury room to

17   consider your verdict, you will elect

18   one of your number as foreperson to

19   moderate your discussion and to sign

20   and return the verdict arrived at by

21   you to the Court.  I have prepared for

22   your use in this case verdict forms

23   which will be explained to you.  No

24   inferences are to be drawn by you from

25   the fact that the Court has supplied

1    you with these forms or from the order

2    in which the Court reads them to you.

3    When you have reached a verdict, you

4    will select and complete the form which

5    corresponds to your verdict and which

6    is to be signed by your foreperson.

7    All 12 of you must agree on any verdict

8    which you return to the Court.

9        At the beginning of this case, we

10   selected a jury and on the jury panel

11   there are 13 jurors.  I just read out

12   to you that all 12 of you must agree on

13   a verdict and that's because one of you

14   has been selected as an alternate juror

15   in case for some reason or other one

16   juror could not continue during the

17   trial.  In one case we had this week,

18   we had that to happen where we selected

19   a jury and one juror could not

20   continue, so the alternate took the

21   place of that juror.  We do not tell

22   you in advance that you are an

23   alternate and that's because we do not

24   want an alternate to think, well, I'm

25   just an alternate and I don't have to

1    pay the same attention or same duty to

2    this case that the actual juror may

3    have to serve.  And so at this time Ms.

4    Tomeko Allen is the alternate juror,

5    and I will excuse you from any further

6    duty in this case.  And I think, Ms.

7    Allen, I will excuse you from jury

8    service until Friday morning at 9:00.

9    JUROR ALLEN:  Okay.

10   THE COURT:  Thank you.

11            (Alternate juror excused.)

12   THE COURT:  The two jury verdict forms that

13       I have prepared for you, the first is a

14       guilty verdict and it reads, "We, the

15       jury, find the Defendant, Melvin Smith,

16       guilty of the offense of rape in the

17       first degree as charged in the

18       indictment," and it should be signed by

19       the foreperson of the jury and dated,

20       if that is your verdict.  If, however,

21       your verdict is not guilty, then you

22       would fill out the not guilty verdict

23       form and it reads, "We, the jury, find

24       the Defendant, Melvin Smith, not guilty

25       of the offense of rape in the first

1    degree as charged in the indictment,"

2    and it should also be signed by the

3    foreperson and dated. When you have a

4    verdict, if you will give notice to the

5    bailiff and he will come notify us.

6        It's getting late in the day, and

7    we'll try to let you deliberate as long

8    as we can. Thank you. The verdict

9    forms and the evidence will be sent to

10   accompany you into the jury room.

11        (Jury not present.)

12   THE COURT: Does the State have anything

13       further?

14   MR. SMITH: State is satisfied with the

15       charge.

16   THE COURT: Does the defense have anything

17       further?

18   MR. GREG GRAHAM: No, sir, Your Honor.

19            (Jury retires to begin their

20             deliberations.)

21            (Jury present.)

22   THE COURT: Ladies and gentlemen of the

23       jury, it's slightly after 6:15 now.

24       It's been sort of a long day and what

25       I'm going to do is, I'm going to recess

1    you for the day and I'd like you to

2    come back and be present at 9:00.  Come

3    straight to the jury room and start

4    your deliberations again at 9:00 in the

5    morning, and you'll be in the same jury

6    room that you were in today.  I'm sure

7    you're very familiar with that jury

8    room by now.

9        If you'll remember my

10   instructions, you may not discuss this

11   case with anyone for any reason

12   whatsoever until after you finish your

13   deliberations.  If you have a family

14   member that should ask you about it,

15   tell them you're under the Judge's

16   order not to discuss it at this point.

17   Of course, once you finish your

18   deliberations, then you're free to

19   discuss it at will, and don't let

20   anybody discuss it in your presence.

21   Be back tomorrow morning at 9:00.

22   Thank you.

23        (Proceedings were adjourned to

24         Thursday, March 18, 1999, at

25         9:00 a.m.)

1    STATE OF ALABAMA

2        v.                          Case No. CC 97-95

3    MELVIN SMITH

4                    Phenix City, Alabama - March 18, 1999

5                        (Jury continues their

6                        deliberations.)

7                        (Jury notification to the bailiff.)

8                        (Jury present.)

9        THE COURT:  Ladies and gentlemen of the

10                jury, it's my understanding you've

11                reached a verdict; is that correct?

12        THE FOREMAN:  Yes, sir, Judge.

13        THE COURT:  And you've elected a member of

14                the jury as foreperson?

15        THE FOREMAN:  Yes, sir.

16        THE COURT:  Are you that person?

17        THE FOREMAN:  Yes, sir.

18        THE COURT:  Would you stand and read the

19                verdict, please?

20        THE FOREMAN:  We, the jury, find the

21                Defendant, Melvin Smith, guilty of the

22                offense of rape in the first degree as

23                charged.

24        THE COURT:  Have you signed and dated that

25                verdict?

1        THE FOREMAN:  Yes, sir.

2        THE COURT:  I'm going to start with you, Mr.

3                Evans, and you may be seated, and I'll

4                ask you, is this your verdict?

5        THE FOREMAN:  Yes, sir.

6        THE COURT:  Ma'am, is this your verdict?

7        JUROR:  Yes, sir.

8        THE COURT:  Is this your verdict, sir?

9        JUROR:  Yes, sir.

10       THE COURT:  Is this your verdict, ma'am?

11       JUROR:  Yes, sir.

12       THE COURT:  Is this your verdict, sir?

13       JUROR:  Yes, sir.

14       THE COURT:  Is this your verdict, ma'am?

15       JUROR:  Yes, sir.

16       THE COURT:  Is this your verdict?

17       JUROR:  Yes.

18       THE COURT:  Is this your verdict, sir?

19       JUROR:  Yes, sir.

20       THE COURT:  Is this your verdict, sir?

21       JUROR:  Yes, sir.

22       THE COURT:  Is this your verdict, sir?

23       JUROR:  Yes, sir.

24       THE COURT:  Is this your verdict, ma'am?

25       JUROR:  Yes, sir.

1    THE COURT:  Is this your verdict, ma'am?

2    JUROR:  Yes.

3    THE COURT:  Thank you.  That finishes your

4              duty in this case.  There is a

5              possibility that we may not have a case

6              to try tomorrow.  There's only one case

7              left on the docket that has been

8              pending.  What I would need for you to

9              do is, if you will call the clerk's

10             office sometime around 4:00 today and

11             they will tell you whether or not

12             you'll be required to be here at court

13             at 9:00 in the morning.

14                  There is one witness that may or

15             may not be able to be located

16             tomorrow.  If the witness cannot be

17             located, then that case would, of

18             course, have to be dismissed or

19             continued and we would not be able to

20             try the case, and if the witness can be

21             located, then we would proceed with

22             trial of the case in the morning at

23             9:00.

24                  But to avoid you having to come up

25             here unnecessarily, if you'll call the

```
 1              clerk's office, and that number is
 2              298-0516, and check about 4:00 and
 3              they'll tell you whether you have to be
 4              here or not.  If you don't have to be
 5              here tomorrow, your check for your jury
 6              service duty will be mailed to you or
 7              you can come by and pick it up at a
 8              certain time tomorrow if you'd rather
 9              pick it up rather than it be mailed to
10              you.  Thank you, and that concludes
11              your jury service in this case.
12    MR. SMITH:  Thank you for your service in
13              this case.
14              (Jury dismissed.)
15    THE COURT:  Mr. Smith, would you come
16              around, please, sir?
17    THE DEFENDANT:  Yes, sir.
18    THE COURT:  Mr. Smith, the jury impaneled in
19              this case has found you guilty of the
20              offense of rape in the first degree as
21              charged in the indictment.  At this
22              time I'm going to direct that you be
23              incarcerated in the Russell County jail
24              until the sentence date, and we will
25              show sentencing as continued until
```

1       April the 30th and that will be at 9:30

2       a.m..   There will be a pre-sentence

3       report completed, and the probation

4       officer will come talk with you about

5       the pre-sentence report in the jail.

6            It's my understanding there are

7       additional warrants outstanding for

8       your arrest and those additional

9       warrants will be served upon you also.

10      Thank you.

11  THE DEFENDANT:  Thank you, sir.

12  MR.  GREG GRAHAM:  Thank you, Judge.  We'd

13      make application for probation.

14            (The trial ended on March 18,

15            1999.)

STATE OF ALABAMA

IN THE CIRCUIT COURT FOR THE COUNTY OF RUSSELL

TWENTY-SIXTH JUDICIAL CIRCUIT

CRIMINAL


STATE OF ALABAMA

    v.                        Case No. CC 97-95

MELVIN SMITH,

        Defendant.
_____/

**S E N T E N C I N G**

Before:
        Honorable George R. Greene
           Phenix City, Alabama - April 30, 1999


APPEARANCES:

        For the State:
           J. Maxwell Smith, Esq.
           Assistant District Attorney

        For the Defendant:
           Richard L. Chancey, Esq.
           Phenix City, Alabama


Linda S. Wilson
Official Court Reporter

1    THE COURT:  Melvin Smith?

2              (Defendant approaches the bench.)

3    THE COURT:  Does Mr. Smith have anything to

4         present at this time prior to the Court

5         imposing sentence?

6    MR. CHANCEY:  Yes, Your Honor.  Judge, Mr.

7         Smith's family has retained me to

8         represent him in post-trial

9         proceedings.  Mr. Smith, it has come to

10        my attention by his family, that there

11        may be some mental health records that

12        may be useful to the Court in imposing

13        sentence that I may obtain from the

14        V.A. Hospital, and I would like to

15        request of the Court to postpone

16        sentencing for a couple of weeks to

17        give me time to get those records to

18        present to the Court.

19   THE COURT:  Well, there's nothing that's

20        been indicated previous to this time

21        that that would make any alteration of

22        the Court's sentence or have any effect

23        on the Court's sentence, and I'm going

24        to deny your motion to continue

25        sentencing.  Do you have anything to

1          present at this time?

2    MR. CHANCEY:  No, sir, Judge.  He claims his

3          innocence, Judge.

4    THE COURT:  State have anything further?

5    MR. SMITH:  No, Your Honor.

6    THE COURT:  Mr. Smith, having been tried by

7          a jury in Russell County and having

8          been found guilty of the offense of

9          rape in the first degree, the Court

10         would sentence him at this time --

11         there has previously been some felony

12         convictions.  The minimum sentence that

13         can be imposed in this case is 20 years

14         is my understanding.

15    MR. SMITH:  Judge, I believe he doesn't have

16         any prior felonies, but because of the

17         allegation that a weapon was used,

18         you're correct, the minimum sentence

19         would be 20 years.

20    THE COURT:  Well, he's been found guilty of

21         indecent assault --

22    MR. SMITH:  Yes, sir.

23    THE COURT:  -- in 1986 as well as unlawful

24         entry of a room.  Court would sentence

25         Mr. Smith to 20 years hard labor in the

1          state penitentiary, would direct that

2          he pay the court costs of this action,

3          a Victims Compensation Fund fee in the

4          amount of $1,000.00.

5     MR. SMITH:  Your Honor, there is also

6          restitution that is owed in the amount

7          of $853.50 and that would be to the

8          Alabama Crime Victims Compensation

9          Fund.

10    THE COURT:  And what proof do you have of

11         that?

12    MR. SMITH:  I have a restitution affidavit

13         here from the Crime Victims

14         Compensation Commission.

15    THE COURT:  Do you have any objections to

16         that, Mr. Chancey?

17    MR. CHANCEY:  Not at this time, Judge.

18    THE COURT:  Then the Court would order

19         restitution in the amount of $853.50

20         and that would be to the Alabama Crime

21         Victims Compensation Commission.  Of

22         course, Mr. Smith has the right to

23         appeal the Court's sentence.  Thank

24         you.

25              (End of proceedings.)

CERTIFICATE OF COMPLETION OF REPORTER'S TRANSCRIPT

MELVIN SMITH,

     Appellant

     v.

STATE OF ALABAMA

TO: The Clerk of the Court of
Criminal Appeals of
Alabama

On Appeal From the
Circuit Court of Russell
County

CASE NO. CC 97-95

DATE OF NOTICE OF APPEAL:
May 12, 1999

    I certify that I have this date completed and filed with the clerk of the trial court the original of a true and correct transcript of the proceedings designated in the Reporter's Transcript Order. All pages are numbered serially, in the upper right corner of each page, prefaced by a copy of the Reporter's Transcript Order (Page No. 1) and an index, and ending with the number appearing in the upper right corner of this certificate.
    I certify that a copy of this certificate is this date being served on counsel for defendant, the Attorney General of Alabama, and the District Attorney, along with a copy of the index.
    DATED this 25th day of October, 1999.

Linda S. Wilson
Official Court Reporter