COURT OF CRIMINAL APPEALS NO. _CR 01-1261_

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

FROM

CIRCUIT COURT OF ____RUSSELL____ COUNTY, ALABAMA

CIRCUIT COURT NO. CC 97-95.60

CIRCUIT JUDGE ____HON. GEORGE R. GREENE____

Type of Conviction / Order Appealed From: ____RULE 32____

Sentence Imposed: ____DENIED____

Defendant Indigent: [x] YES  [ ] NO

____MELVIN SMITH____

NAME OF APPELLANT

MELVIN SMITH #204766 PRO SE
(Appellant's Attorney)                    (Telephone No.)
PO BOX 5107
(Address)
UNION SPRINGS, AL 36089
(City)          (State)          (Zip Code)

V.

STATE OF ALABAMA

NAME OF APPELLEE

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

_____

_____

(For Court of Criminal Appeals Use Only)



EXHIBIT
6
PENGAD 800-631-6989

## INDEX TO TRANSCRIPT

|  | PAGE |
|---|---|
| Case Action Summary | 1 |
| Petition for Relief From Conviction or Sentence Pursuant to Rule 32 | 3 |
| Answer to Rule 32 Petition | 16 |
| Memo from District Attorney's Office | 19 |
| Order | 20 |
| Arrest Report - Returned for Court | 22 |
| Final Order | 23 |
| Notice of Appeal | 25 |
| Docketing Statement | 27 |
| Reporter's Transcript Order | 29 |
| Notice of Appeal to the Court of Criminal Appeals by the Trial Court Clerk | 31 |
| Reporter's Request for Local Extension and Order Granting Same. | 32 |
| Notice from Court of Criminal Appeals | 33 |
| Motion to Withdraw | 34 |
| Order granting Motion to Withdraw | 35 |
| Notice of Appeal to the Court of Criminal Appeals From the Trial Court Clerk | 36 |
| Motion for Status and Order Noted. | 37 |
| Certificate of Completion and Transmittal of Record on Appeal by the Trial Court Clerk | 39 |

INDEX TO REPORTER'S TRANSCRIPT

Reporter's Transcript Order                    1

Index                                          2

Rule 32 Hearing                              3-62

Reporter's Certificate                        63

CC0001

```
ACR0370              ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 1997 000095.60
OPER: SHG                    CASE ACTION SUMMARY
PAGE:    1                    CIRCUIT   CRIMINAL              RUN DATE: 06/17/2002
=================================================================================
IN THE CIRCUIT COURT OF  RUSSELL                                    JUDGE: GRG

STATE  OF  ALABAMA                 VS        SMITH MELVIN
                                             204766
CASE: CC 1997 000095.60                      P.O. BOX 5107
                                             UNION SPRINGS , AL  36089 0000

DOB: 09/11/1965        SEX: M  RACE: B  HT: 5 03  WT: 190   HR: BLK EYES: BRO
SSN: 418021110  ALIAS NAMES:
=================================================================================
CHARGE01: RULE 32-FELONY        CODE01: RULE  LIT: RULE 32-FELONY TYP: F #: 001
OFFENSE DATE:                            AGENCY/OFFICER:

DATE WAR/CAP ISS:                    DATE ARRESTED:
DATE    INDICTED: 01/10/1997         DATE   FILED: 07/10/2001
DATE    RELEASED:                    DATE  HEARING:
     BOND AMOUNT:             $.00        SURETIES:

DATE 1: 10/10/2001  DESC: HEAR         TIME: 1030 A
DATE 2:             DESC:              TIME: 0000

TRACKING NOS:                     /                      /

   DEF/ATY: COLLINS L JOEL          TYPE: R                      TYPE:
            P O BOX 580

            PHENIX CITY    AL 36867                   00000

PROSECUTOR:


=================================================================================
 TH CSE:   000000000000 CHK/TICKET NO: 96-2886       GRAND JURY: 85
 COURT REPORTER:               SID NO:   000000000
 DEF STATUS: JAIL              DEMAND: Y                    OPER: SHG
=================================================================================
  TRANS DATE    ACTIONS, JUDGEMENTS, AND NOTES                        OPE
=================================================================================
| 07/10/2001 | ATTORNEY FOR DEFENDANT: COLLINS L JOEL      (AR01)    JOS |
|------------|------------------------------------------------------------|
| 07/10/2001 | PETITION FOR RELIEF FROM CONVICTION OR SENTENCE       JOS |
|------------|------------------------------------------------------------|
| 07/11/2001 | PAYMENT DUE DATE SET TO: 09/07/2001         (FE52)    JOS |
|------------|------------------------------------------------------------|
| 08/09/2001 | ANSWER TO RULE 32 PETITION                            JOS |
|------------|------------------------------------------------------------|
| 08/09/2001 | DO SUBP. FOR HEARING                                  JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | ORDER SETTING HEARING FOR OCTOBER 10, 2001, AT        JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 |    10:30 A.M.  THE SHERIFF OF RUSSELL COUNTY SHALL    JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 |    TRANSPORT DEFENDANT FROM THE DEPT. OF CORREC-      JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 |    TIONS ON OR BEFORE OCTOBER 5, 2001.                JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | PARTY ADDED  W001  GREG KELLY               (AW21)    JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | PARTY ADDED  W002  HON. GREG GRAHAM         (AW21)    JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | PARTY ADDED  W003  HON. RICK CHANCEY        (AW21)    JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | PARTY W001 NAME CHANGED FROM: GREG KELLY    (AW21)    JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | TRANSMITTAL NOTICE     SENT TO DEFENDANT    (AR09)    JOS |
|------------|------------------------------------------------------------|
| 08/23/2001 | WITNESS SUBPOENA ISSUED                               JOS |
|------------|------------------------------------------------------------|
| 09/28/2001 | DEFENDANT RETURNED TO RUSSELL COUNTY JAIL             JOS |
|------------|------------------------------------------------------------|
| 10/02/2001 | STATUS CHANGED TO: "J" - JAIL               (AR01)    JOS |
|------------|------------------------------------------------------------|
```

```
CC0002
ACR0370              ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 1997 000095.60
OPER: SHG                 CASE ACTION SUMMARY
PAGE:    2                CIRCUIT   CRIMINAL              RUN DATE: 06/17/2002
=====================================================================================
IN THE CIRCUIT COURT OF RUSSELL                                      JUDGE: GRG

STATE  OF  ALABAMA              VS        SMITH MELVIN
                                          204766
CASE: CC 1997 000095.60                   P.O. BOX 5107
                                          UNION SPRINGS , AL  36089 0000

DOB: 09/11/1965        SEX: M  RACE: B  HT: 5 03  WT: 190   HR: BLK EYES: BRO
SSN: 418021110  ALIAS NAMES:
=====================================================================================
   TRANS DATE     ACTIONS, JUDGEMENTS, AND NOTES                               OPE
=====================================================================================
```

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | | OPE |
|---|---|---|---|
| 02/21/2002 | JUROR FELONY FLAG SET ON FOR INDIVIDUAL | (AR10) | SHG |
| 02/21/2002 | ENFORCEMENT STATUS SET TO: "N" | (AR10) | SHG |
| 02/21/2002 | DISPOSITION JUDGE ID CHANGED FROM:      TO: GRG | | SHG |
| 02/21/2002 | CHARGE 01: RULE 32-FELONY/#CNTS: 001 | (AR10) | SHG |
| 02/21/2002 | CHARGE 01 DISPOSED BY: DISMISSED ON: 02/15/2002 | | SHG |
| 02/21/2002 | TRANSMITTAL NOTICE      SENT TO DEFENDANT | (AR09) | SHG |
| 02/21/2002 | CASE ACTION SUMMARY PRINTED | (AR08) | SHG |
| 03/14/2002 | APPEAL DATE CHANGED FROM: 00/00/0000 | (AR11) | SHG |
| 03/14/2002 | ATTY 1 TYPE CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | IRA TYPE CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | COURT REPORTER 1 CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | INDTRL TYPE CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | APPEAL TYPE CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | ATTY 1 CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | ATYW TYPE CHANGED FROM: | (AR11) | SHG |
| 03/14/2002 | IRA TYPE CHANGED FROM: N | (AR11) | SHG |
| 04/25/2002 | MOTION FOR STATUS | | SHG |
| 04/25/2002 | FILE TO GRG | | SHG |
| 05/21/2002 | MOTION TO WITHDRAW | | SHG |
| 05/31/2002 | FILE TO GRG | | SHG |
| 06/12/2002 | ORDER GRANTING MOTION TO WITHDRAW | | SHG |
| 06/14/2002 | ATYW TYPE CHANGED FROM: N | (AR11) | SHG |
| 06/14/2002 | PROSECUTOR CHANGED FROM: | (AR11) | SHG |
| 06/17/2002 | CERTIFICATE OF COMPLETION AND TRANSMITTAL OF | | SHG |
| 06/17/2002 |   RECORD ON APPEAL | | SHG |
| 06/17/2002 | CASE ACTION SUMMARY PRINTED | (AR08) | SHG |

CCC003

# PETITION FOR RELIEF FROM
# CONVICTION OR SENTENCE
(Pursuant to Rule 32,
Alabama Rules of Criminal Procedure)

Case Number
_CC_, _97_, _095_60
ID    YR    NUMBER

IN THE _____Circuit_____ COURT OF _____Russell County_____, ALABAMA

_____Melvin Smith_____ vs. _____State of Alabama_____
Petitioner (Full Name)         Respondent

[Indicate either the "State" or,
if filed in municipal court, the
name of the "Municipality"]

Prison Number _____204766_____ Place of Confinement ___Bullock County Correctional Facility_

County of conviction _____Russell_____

NOTICE:  BEFORE COMPLETING THIS FORM, READ CAREFULLY
THE ACCOMPANYING INSTRUCTION.

1.    Name and location (city and county) of court which entered the judgment of conviction or sentence

under attack _____Russell County Circuit Court_____ Phenix City, Alabama_____

_____

2.    Date of judgment of conviction _____3/18/99_____

3.    Length of sentence _____20 Years_____

4.    Nature of offense involved (all counts) ___Rape 1st Degree_____

_____

_____

5.    What was your plea? (Check one)

(a)    Guilty    _____

(b)    Not Guilty    _____X_____

C00004

(c)     Not guilty by reason of mental disease or defect _____

(d)

6.    Kind of trial (Check one)

(a) Jury __X____                 (b) Judge only _____

7.    Did you testify at the trial?

Yes __X__                  No _____

8.    Did you appeal from the judgment of conviction?

Yes __X__                  No _____

9.    If you did appeal, answer the following:

(a)     As to the state court to which you first appealed, give the following information:

(1) Name of court _____ Alabama Court of Criminal Appeals _____

_____

(2) Result _____Affirmed___ _____

_____

(3) Date of Result _____5/12/00_____

_____

(b)     If you appealed to any other court, then as to the second court to which you appealed, give the following information:

(1) Name of court _____N/A_____

_____

(2) Result _____

_____

(3) Date of Result _____

_____

C00005

(c)   If you appealed to any other court, then as to the third court to which you appealed, give the following information:

    (1) Name of court _____N/A_____

    _____

    (2) Result _____

    _____

    (3) Date of Result _____

    _____

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petition, applications, or motions with respect to this judgment in any court, state or federal?

    Yes _____                    No __X___

11.   If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

(a)   (1) Name of court _____N/A_____

    (2) Nature of proceeding _____

    (3) Ground raised _____

    _____

    _____

    _____

    _____

    (attach additional sheets if necessary)

(4)   Did you receive an evidentiary hearing on your petition, application, or motion?

    Yes _____                    No _____

(5)   Result _____

(6)   Date of Result _____

C00006

(b)    As to any second petition, application, or motion, give the same information:

(1) Name of court _____N/A_____

(2) Nature of proceeding _____

(3) Ground raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____                    No _____

(5) Result _____

(6) Date of result _____

(c)    As to any third petition, application, or motion, give the same information (attach additional
sheets giving the same information for any subsequent petitions, applications, or motions):

(1) Name of court _____

(2) Nature of proceeding _____

(3) Ground raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____                    No _____

(5) Result _____

(6) Date of result _____

(d)    Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1) First petition, etc.        Yes _____        No _____

(2) Second petition, etc.       Yes _____        No _____

(3) Third petition, etc.        Yes _____        No _____

ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.

(e)    If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12.    Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

_X_ A. The Constitution of the United States or the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation.:

(1)    Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2)    Conviction obtained by use of coerced confession.

(3)    Conviction obtained by use of evidence gained pursuant to an unconstitutional search

and seizure.

(4)    Conviction obtained by use of evidence obtained pursuant to any unlawful arrest.

(5)    Conviction obtained by a violation of the privilege against self-incrimination.

(6)    Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7)    Conviction obtained by a violation of the protection against double jeopardy.

(8)    Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9)    Denial of effective assistance of counsel.

This list is not a complete listing of all possible constitutional violations.

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. be specific and give details.

___ B. The court was without jurisdiction to render the judgment or to impose the sentence.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

___ C. The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

___ D. Petitioner is being held in custody after his sentence has expired.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

___ E. Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:

The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing

or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and

The facts are not merely cumulative to other facts that were known; and

The facts do not merely amount to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

       If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F.  The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

       If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.    IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2 (b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:

> "Successive Petitions. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.    Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attaching this conviction or sentence?

      Yes _____                No __X__

B.    If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

      (a)    Name of court _____

(b)    Result _____

(c)    Date of result _____
        (attach additional sheets if necessary)

C.    If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14.    Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____            No __X__

15.    Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a)    At preliminary hearing ____Gregory Kelley_____

(b)    At arraignment and plea ____Greg Graham_____

(c)    At trial _____Greg Graham_____

(d)    At sentencing ____Greg Graham_____

(e)    On appeal _____Richard Chancey_____

(f)    In any post-conviction proceeding _____

_____

(g)   On appeal from adverse ruling in a post-conviction proceeding _____

_____

_____

16.   Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes _____                              No __X__

17.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____                              No __X__

(a)   If so, give name and location of court which imposed sentence to be served in the future _____

_____

(b)   And give date and length of sentence to be served in the future: _____

_____

(c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____                              No _____

18.   What date is this petition being mailed?

_____July 10, 2001_____

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

C00012

## PETITIONER'S VERIFICATION UNDER OATH
### SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on _____

(Date)

_____

Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the ____ day of _____, 20 ____.

_____

Notary Public

OR *

## ATTORNEY'S VERIFICATION UNDER OATH
### SUBJECT TO PENALTY FOR PURJURY

I Swear ( or affirm) under penalty of perjury that, upon information and belief, the foregoing is true

and correct.  Executed on _____ July 10, 2001 _____

(Date)

_L. Joel Collins_

Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _10th_ day of __July___, 2001.

_____

Notary Public

Name and address of attorney representing petitioner
in this proceeding (if any)

____L. Joel Collins_____

____Post Office Box 580_____

____Phenix City, Alabama 36868-0580_

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the petition.

C00013

## GROUNDS OF PETITION

(A) The Constitution of the United States or the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

    (1)    Conviction infringed upon Defendant's 1st amendment right to freedom of religion.

        (a)    Defendant cannot be accused of rape by only one witness, Annette Thomas, because doing so violates Defendant's free practice of religion. In the Bible, Deuteronomy 19:15 provides that "[a] single witness may not testify against another person for any trespass or sin-any whatsoever-that he may have committed. A matter may be legal only on the testimony of two or three witnesses."

    (2)    Denial of effective assistance of counsel.

        (a)    No defense based on Defendant's freedom of religion claim was ever presented by any counsel.

        (b)    Counsel Greg Kelley failed to study the police report and to investigate surrounding facts which were necessary to sufficiently prepare for a preliminary hearing.

        (c)    Counsel Greg Kelley failed to visit Defendant in jail to learn facts that were necessary to prepare for a successful preliminary hearing.

        (d)    Counsel Greg Kelley failed to learn that Defendant desired to subpoena witnesses to testify on his behalf at the preliminary hearing.

        (e)    Counsel Greg Kelley failed to file a motion to challenge the legality of the complaint and warrant of arrest.

        (f)    Counsel Greg Kelley failed to obtain DNA test results so that they may have been used as favorable evidence at the preliminary hearing.

        (g)    Counsel Greg Kelley failed to file a request for a preliminary hearing.

        (h)    Counsel Greg Kelley waived the preliminary hearing without the Defendant's consent.

        (i)    Counsel Greg Graham failed to file a motion challenging the legality of the complaint and warrant of arrest.

C00014

(j)     Counsel Greg Graham failed to file a motion to dismiss the indictment which omitted the essential elements of the offense and did not apprise the Defendant of charges against him.

(k)     Counsel Greg Graham failed to inform Defendant of the relevant law in regards to the charges against him.

(l)     Counsel Greg Graham failed to file a motion to suppress the testimony of Detective Lon Russell, who interrogated the Defendant concerning the present case before reading Defendant his Miranda rights.

(m)    Counsel Greg Graham failed to object to the testimony given at trial by Detective Lon Russell for the reasons stated in paragraph (l), and therefore not preserving the issue for appeal.

(n)     Counsel Greg Graham failed to move for a mistrial after the introduction of Detective Lon Russell's testimony for the reasons stated in paragraph (l), and therefore not preserving the issue for appeal.

(o)     Counsel Greg Graham failed to investigate the surrounding facts of the case so that he may present an effective defense at trial.

(p)     Counsel Greg Graham failed to learn that Defendant desired to subpoena witnesses at trial to testify on his behalf who would have testified concerning the Defendant's relationship with the victim, Annette Thomas, and that the tissue samples found under the victim's fingernails did not belong to the Defendant.

(q)     Counsel Greg Graham failed to present an effective opening argument concerning Defendant's mistake of maintaining an adulterous relationship with the victim, Annette Thomas.

(r)     Counsel Greg Graham failed to introduce into evidence the rape kit, which was favorable evidence to the Defendant.

(s)     Counsel Greg Graham failed to file a motion for acquittal when the State's evidence was insufficient to sustain a prima facie case against Defendant on the charge of rape, not preserving this issue for appeal.

(t)     Counsel Greg Graham failed to protect Defendant's desire to have a non-jury trial, which the Court had previously consented to.

C00015

    (u)    Counsel Richard Chancey failed to file a motion for a new trial on the basis of ineffective trial counsel for the reasons stated in paragraphs (i-t), and therefore not preserving the issue for appeal.

    (v)    Counsel Richard Chancey failed to file a motion for additional time so that he may study the trial court transcript to better prepare an appellate argument.

(3)    Conviction obtained by use of unconstitutional warrant of arrest.

    (a)    Arrest warrant violates Defendant's right to due process of law because the affidavit was signed only by Chief Jay King, who had no personal knowledge of the incident.

    (b)    The affidavit accompanying the arrest warrant contains only a conclusion and omits facts from which the conclusion is based.

    (c)    The victim's deposition was not recorded into writing and therefore not offered to Magistrate Dennis Boswell before executing the arrest warrant.

C00016

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | IN THE CIRCUIT COURT OF |
| | ( | |
| V. | ) | RUSSELL COUNTY, ALABAMA |
| | ( | |
| MELVIN SMITH | ) | CASE NO. CC-97-095.60 |

### ANSWER TO RULE 32 PETITION

COMES NOW THE STATE OF ALABAMA, by and through it's Assistant District Attorney and answers the Defendant's petition as follows:

Petitioner has alleged:

1.   The Conviction Violates petitioners Freedom of Religion,
2.   Ineffective Counsel,
3.   Then warrant of arrest was unconstitutional.

Petitioner filed an appeal which was duly considered by the Alabama Court of Criminal Appeals.   The issues raised above were either raised and adjudicated adversely to petitioner or could and should have been raised in that manner. Pursuant to ARCP 32.2(a)(3) and (a)(5), therefore, these allegations are precluded and the petition is due to be dismissed.

Petitioner fails to cite any law supporting his first claim that the State has violated his right to Freedom of Religion by not complying with Old Testament law contained in Deuteronomy 19:15 requiring more than one witness to convict an individual of a crime.   Claim one is therefore due to be dismissed.

Petitioner fails to supply a sufficient factual basis on his second claim - that of ineffective counsel. The record shows that Petitioner desired to represent himself before the Court and was appointed Greg Graham simply as standby counsel. Mr. Graham was present to assist Petitioner if Petitioner so desired.   Petitioner infrequently availed himself of this source of help.   The record will show that Petitioner conducted the trial himself and is not eligible to complain of Ineffective Counsel as a result.   Petitioner has further failed to state any sufficient ground against counsel at the Preliminary Hearing stage, Greg Kelly; or the attorney on appeal, Richard Chancey. The State of Alabama denies that any conduct complained of in the petition would rise to the level of ineffective counsel.

C00017

Petitioner's third claim, that of an improper warrant of arrest, is incorrect. There was no impropriety in the warrant of arrest and further if there was an impropriety such defect was waived once an indictment was issued in this matter. The State of Alabama stands behind the warrant used in this matter and denies that there was any insufficiency in the manner it was written.

Therefore, based on the above, the State of Alabama moves this Honorable Court to dismiss this petition.

Done this the 9th day of August, 2001.

KENNETH DAVIS,
District Attorney


Greg Waldrep
Assistant District Attorney

C00013

## CERTIFICATE OF SERVICE

The State of Alabama certifies that it has this day served a copy of the foregoing answer upon counsel for defendant by placing a copy of same in the box reserved in his name in the Circuit Clerk's Office in the Russell County

This the 9th day of August, 2001.

KENNETH DAVIS,
District Attorney


Greg Waldrep
Assistant District Attorney

C00019



**BUSTER LANDREAU**
CHIEF DEPUTY DISTRICT ATTORNEY

**GREG WALDREP**
ASSISTANT DISTRICT ATTORNEY

**J. MAXWELL SMITH**
ASSISTANT DISTRICT ATTORNEY

**JOE EDWARDS**
ASSISTANT DISTRICT ATTORNEY

# KENNETH E. DAVIS
## DISTRICT ATTORNEY
### TWENTY-SIXTH JUDICIAL CIRCUIT
### RUSSELL COUNTY, ALABAMA

Post Office Box 939
Phenix City, Alabama 36868-0939
(334) 298-6028 / (334) 297-0916
Fax (334) 291-5453

MEMO

To:       Jodi Sellers
From:    Greg Waldrep
Date:    August 9, 2001
Re:       Rule 32 Witness List

++++++++++++++++++++++++++++++++++++++++++++++++++

When the Judge sets hearings on these Rule 32 petitions I will need subpoenas issued for the following witnesses:

| | | |
|---|---|---|
| CC-96-574.61 | Douglas Alexander | Patrick Miller |
| CC-00-284.60 | Marcus Moore | James Paul Graham, III |
| CC-00-285.60 | " | " |
| CC-00-286.60 | " | " |
| CC-00-332.60 | Dannie  McLendon | Walt Gray & Wayne T. Johnson |
| CC-00-333.60 | " | " |
| CC-00-138.60 | Sheila Jakes | Patrick Miller |
| CC-00-139.60 | " | " |
| CC-97-095.60 | Melvin Smith | Greg Kelly, Greg Graham & Richard Chancey |

Thanks

CC0020

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | IN THE CIRCUIT COURT OF |
| | ) | |
| PLAINTIFF, | ) | RUSSELL COUNTY, ALABAMA |
| | ) | |
| VS. | ) | CASE NO.: CC 97-095.60 |
| | ) | |
| MELVIN SMITH | ) | |
| | ) | |
| DEFENDANT. | ) | |

## ORDER

Upon consideration of the pleadings, the Court finds that the Defendant, Melvin Smith states in his petition five grounds for relief:

1. Defendant's conviction of rape in the 1st degree violated Defendant's First Amendment right to the free exercise of his religion. Specifically, that Defendant's conviction was based on the accusation and testimony of a single witness. Defendant claims that the Bible requires at least two or more witnesses to testify against him in order for it to be legal.

2. Defendant was denied effective assistance of counsel. Specifically, Defendant's pre-trial counsel failed to properly investigate the claims against Defendant and waived Defendant's right to a preliminary hearing without the consent of the Defendant.

3. Defendant was denied effective assistance of counsel. Specifically, trial counsel failed to raise appropriate motions, arguments, and evidence and failed to waive the right to a jury trial and demand a bench trial as per the desire of the Defendant.

4. Defendant was denied effective assistance of counsel. Specifically, appellant counsel failed to file a motion for a new trial on the basis of ineffective assistance of counsel and failed to file a motion for additional time to file appeal.

5. Defendant's conviction was based upon an unconstitutional warrant of arrest.

Upon review of the record, the court finds that claims 1, 2, 3 and 5 of Defendant's petition are dismissed. Claims 1, 2, 3 and 5 are barred by Alabama Rules of Criminal Procedure 32.2(a)(3) and (a)(5). These claims could have, but were not, raised at trial or on appeal by the Defendant. Defendant was represented by different counsel at pre-trial, trial and on appeal. Defendant, being represented by different counsel at trial than pre-trial, could have raised the issue as to ineffective assistance of pre-trial counsel at trial. Moreover, Defendant, being represented on appeal by different counsel than at trial, could

C00021

have raised ineffective assistance of counsel on appeal.  Claims 1 and 5 should have been raised at trial or on appeal.  Therefore, this court dismisses these claims pursuant to the Alabama Rules of Criminal Procedure.

The court on Claim 4 of Defendant's petition, ineffective assistance of appellant counsel, schedules a hearing on that issue for the 10th day of October, 2001., at 10:30 a.m.

The Sheriff of Russell County shall be responsible for transporting the defendant from the Department of Corrections to the Russell County Jail on or before October 5, 2001.

**DONE** this the 22nd day of August, 2001.

_____
JUDGE, CIRCUIT COURT

# ALABAMA UNIFORM ARREST REPORT

| Fingerprinted | R84 Completed |
|---|---|
| 1 ☑ Yes | 1 ☑ Yes |
| 2 ☐ No | 2 ☐ No |

YC00022

**OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION**

## IDENTIFICATION

| 1 ORI # | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| 01-7,0,0,0 | Russell County Sheriff Dept | 01,0,0,1,1,9,4,9 | |

5 LAST, FIRST, MIDDLE NAME: Smith, Melvin Jimmy
6 ALIAS AKA: Melvin

| 7 SEX | 8 RACE | 9 HGT. | 10 WGT. | 11 EYE | 12 HAIR | 13 SKIN | 14 | ☐ SCARS | ☑ MARKS | ☐ TATOOS | ☐ AMPUTATIONS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☑ M | ☑ W ☐ A | 5' 7" | 190 | Bro | Blk | Blk | | | | | |

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| Tuskegee Macon County | 01,41,159-14,21-1/1,110,199 | 1/16/53 | 36 | |

| 20 SID # | 21 FINGERPRINT CLASS: KEY   MAJOR   PRIMARY   SCDV   SUB-SECONDARY   FINAL | 22 DL # | 23 ST |
|---|---|---|---|
| | | 5809771 | AL |

| 21 FBI # | | | 25 IDENTIFICATION COMMENTS |
|---|---|---|---|
| | HENRY CLASS | | |
| | NCIC CLASS | | |

| 26 ☐ RESIDENT  ☑ NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) #37 Hwy 51 North Hurtboro Al | 28 RESIDENCE PHONE (334) 667-6594 | 29 OCCUPATION (BE SPECIFIC) N/A |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) N/A | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) N/A | 32 BUSINESS PHONE ( ) N/A |
|---|---|---|

## ARREST

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) Bullock County Collection Facit | 34 SECTOR # | 35 ARRESTED FOR YOUR JURISDICTION? ☑ YES ☐ NO |
|---|---|---|

| 36 CONDITION OF ARRESTEE: ☑ DRUNK ☐ SOBER ☑ DRINKING ☐ DRUGS | 37 RESIST ARREST? ☐ YES ☑ NO | 38 INJURIES? ☑ NONE ☐ OFFICER ☐ ARRESTEE | 39 ARMED? ☐ Y ☑ N | 40 DESCRIPTION OF WEAPON ☐ HANDGUN ☐ RIFLE ☐ SHOTGUN ☐ OTHER FIREARM ☐ OTHER WEAPON N/A |
|---|---|---|---|---|

| 41 DATE OF ARREST 09 12 90 | 42 TIME OF ARREST 1400 ☑ 1. AM ☐ MIL. ☐ 2. PM | 43 DAY OF ARREST S M T W T☑ F S | 44 TYPE ARREST ☑ VIEW ☐ ON VIEW ☐ WARRANT | 45 ARRESTED BEFORE? ☑ Y ☐ N ☐ UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE—1 ☐ FEL ☑ MISD Return For Court | 47 UCR CODE | 48 CHARGE—2 ☐ FEL ☐ MISD | 49 UCR CODE |
|---|---|---|---|

| 50 STATE CODE/LOCAL ORDINANCE | 51 WARRANT # | 52 DATE ISSUED M D Y | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | 55 DATE ISSUED M D Y |
|---|---|---|---|---|---|

| 56 CHARGE—3 ☐ FEL ☑ MISD | 57 UCR CODE | 58 CHARGE—4 ☐ FEL ☐ MISD | 59 UCR CODE |
|---|---|---|---|

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT # | 62 DATE ISSUED M D Y | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED M D Y |
|---|---|---|---|---|---|

| 66 ARREST DISPOSITION ☑ HELD ☐ BAIL ☐ RELEASED ☐ TOT—LE ☐ OTHER | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

## VEHICLE

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|

| 78 VIN | 79 IMPOUNDED? ☐ YES ☑ NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|

## JUVENILE

| 82 JUVENILE DISPOSITION: ☐ HANDLED AND RELEASED ☐ REF. TO JUVENILE COURT ☐ REF. TO WELFARE AGENCY ☐ REF. TO OTHER POLICE AGENCY ☐ REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE ( ) |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE ( ) |
|---|---|---|---|

## RELEASE

| 91 DATE AND TIME OF RELEASE 09 12 90 800 ☐ AM ☐ MIL. ☐ PM | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID # |
|---|---|---|---|

| 95 RELEASED TO: | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐ YES ☑ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) | | LOCAL USE |
|---|---|---|
| | | STATE USE |

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER William P Flynn |
|---|---|

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED NARRATIVE ☐ Y ☐ N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M.) Flynn, William P | 112 ID # 57 | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID # | 115 SUPERVISOR ID # | 116 WATCH CMDR. ID # |
|---|---|---|---|---|---|

**TYPE OR PRINT IN BLACK INK ONLY**

ACJIC—34 REV. 10-90

CC0023

STATE OF ALABAMA   )  IN THE CIRCUIT COURT OF
          )
   PLAINTIFF,  )  RUSSELL COUNTY, ALABAMA
          )
  VS.      )  CASE NO.: CC 97-95.60
          )
MELVIN SMITH     )
          )
   DEFENDANT.  )

## ORDER

Upon consideration of sworn testimony taken in open court, the court finds that the Petition for relief filed by Petitioner, Melvin Smith pursuant to Rule 32 of the Alabama Rules of Criminal Procedure is due to be dismissed.

On August 22, 2001 this Court previously dismissed all of the Petitioner's claim except his claim, which alleged ineffective assistance of appellate counsel. Petitioner claimed that the Hon. Richard Chancey failed to file a motion for new trial on the basis of ineffective assistance of trial counsel and failed to file a motion for additional time to better prepare an appellate argument.

The Court finds from the evidence that the Petitioner, Melvin Smith, knowingly and voluntarily waived assistance of counsel. He appeared before the Hon. Wayne Johnson on April 29, 1997 and after being advised of his right to be represented by counsel, he voluntarily refused the appointment of counsel. On February 17, 1999, Petitioner appeared in the Circuit Court of Russell County and again voluntarily waived his right to be represented by counsel. The Court appointed the Hon. Greg Graham to advise the Defendant during trial should the Defendant decide to seek legal advice. Mr. Graham did participate in the trial and assisted the Defendant, Melvin Smith, but the failure to investigate the Defendant's case or interview witnesses is due directly to the Petitioner's insistence on representing himself.

Mr. Chancey cannot be held as rendering ineffective legal assistance on appeal. A failure to raise the issue of ineffective

C00024

assistance of counsel is due directly to the Defendant's insistence that he not be represented by counsel. It is therefore ORDERED that the petition for relief is hereby dismissed.

**DONE** this the 14th day of February, 2002.

_____

JUDGE, CIRCUIT COURT

C00025

# In The Circuit Court of Russell County

Melvin Smith
               Appellant

           Vs.

State of Alabama, et al.,
               Appellee

Case No.
CC-97-9560

FILED IN OFFICE
2002 MAR 12 PM 4:44
CIRCUIT CLERK COURT
RUSSELL CO. AL

## Notice of Appeal

Comes Now the Appellant, Melvin Smith, by and through himself, only aided by prison inmate assistance, and files this Notice of Appea to the Alabama Court of Appeals, from the Judgmen and sentence of this Court of February 14th 2002 Wherein the Appellant was convicted of Rape in th first degree, and sentenced to Twenty (20) years.

Dated: March 7, 2002

Is/ Melvin Smith
Melvin Smith
204 766 - 22
P.O. Box 5107
Union Springs, Ala.
36089

C00026

Certificate of Service
    I hereby certify that I have served a
true and correct copy of the foregoing upon
the Circuit Court Clerk by U.S. mail, postage pre
paid and properly addressed.

Dated: 3-7-02                    isi Melvin Smith
                                    Melvin Smith
                                    Affiant - Pro se

C00027

| State of Alabama<br>Unified Judicial System<br>Form ARAP-26 (front)    8/91 | COURT OF CRIMINAL APPEALS<br>DOCKETING STATEMENT | Criminal Appeal Number<br><br>_____ _____ |

## A. GENERAL INFORMATION:

☒ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF **Russell** _____ COUNTY

**Melvin Smith** _____ , Appellant

v. ☒ STATE OF ALABAMA ☐ MUNICIPALITY OF _____

| Case Number **CC-97-095.60** | Date of Complaint or Indictment **1-16-97** | Date of Judgment/Sentence/Order **3-18-99** |
| Number of Days of Trial/Hearing **ONE** Days | Date of Notice of Appeal Oral: **3-18-99** | Written: **5-12-99** |

Indigent Status Requested: ☒ Yes ☐ No          Indigent Status Granted: ☒ Yes ☐ No

## B. REPRESENTATION:

Is Attorney Appointed or Retained? ☐ Appointed ☐ Retained.     If no attorney, will appellant represent self? ☒ Yes ☐ No

| Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary) | Telephone Number |
| Address | City | State | Zip Code |

## C. CODEFENDANTS: List each CODEFENDANT and the codefendant's case number.

| Codefendant **N/A** | Case Number |
| Codefendant | Case Number |
| Codefendant | Case Number |

## D. TYPE OF APPEAL: Please check the applicable block.

1 ☐ State Conviction
2 ☒ Post-Conviction Remedy
3 ☐ Probation Revocation
4 ☐ Pretrial Order
5 ☐ Contempt Adjudication
6 ☐ Municipal Conviction
7 ☐ Juvenile Transfer Order
8 ☐ Juvenile Delinquency
9 ☐ Habeas Corpus Petition
10 ☐ Other (Specify)
_____
_____

## E. UNDERLYING CONVICTION/CHARGE: Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - § _____
2 ☐ Homicide - § _____
3 ☐ Assault - § **13A-6-61**
4 ☐ Kidnapping/Unlawful Imprisonment - § _____
5 ☐ Drug Possession - § _____
6 ☐ Trafficking in Drugs - § _____
7 ☐ Theft - § _____
8 ☐ Damage or Intrusion to Property - § _____
9 ☐ Escape - § _____
10 ☐ Weapons/Firearms - § _____
11 ☐ Fraudulent Practices - § _____
12 ☐ Offense Against Family - § _____
13 ☐ Traffic - OUI - § _____
14 ☐ Traffic - Other - § _____
15 ☐ Miscellaneous (Specify):
_____ - § ____

## F. DEATH PENALTY:

Does this appeal involve a case where the death penalty has been imposed?  ☐ Yes  ☒ No

## G. TRANSCRIPT:

1. Will the record on appeal have a reporter's transcript? ☒ Yes ☐ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed. **25-10-99**
   (Date)
3. If the answer to question "1" is "No":
   (a) Will a stipulation of facts be filed with the circuit clerk? ☐ Yes ☐ No
   (b) Will the parties stipulate that only questions of law are involved and will the trial court certify the questions? ☐ Yes ☐ No

NOTE: If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

H. POST-JUDGMENT MOTIONS: List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| 4 | 17 | 01 | Rule 32 | 2 | 14 | 02 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

I. NATURE OF THE CASE: Without argument, briefly summarize the facts of the case.

That there is no accosation base or probable cause for Rape. No complaint exist.

J. ISSUE(S) ON APPEAL: Briefly state the anticipated issues that will be presented on appeal. (Attach additional pages if necessary.)

whether or Not Smith had an oppertunity To present evidence.

K. SIGNATURE:

3-7-02

Date

Melvin Smith

Signature of Attorney/Party filing this form

000029

| State of Alabama<br>Unified Judicial System<br>Form ARAP- 1C    8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number<br><br>_____ - _____ |

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

[X] CIRCUIT COURT  [ ] DISTRICT COURT  [ ] JUVENILE COURT OF __Russell__ COUNTY

__Melvin Smith__ , Appellant

v.  [X] STATE OF ALABAMA  [ ] MUNICIPALITY OF _____

| Case Number CC-97-095.60 | Date of Judgment/Sentence/Order 3-18-99 |
| Date of Notice of Appeal<br>Oral:    Written: 5-12-99 | Indigent Status Granted:<br>[X] Yes   [ ] No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*)

3-7-02                    Melvin Smith
Signature          Date          Print or Type Name

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.):

**MARK PROCEEDINGS REQUESTED:**                    COURT REPORTER(S)

A. [ ] **TRIAL PROCEEDINGS** - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately

B. [ ] **ORGANIZATION OF THE JURY** - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. [ ] **ARGUMENTS OF COUNSEL** - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs (See Rule 19.4, ARCrP.)

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
| D. Rule 32 hearing | ongoing | |
| E. | | |
| F. Transcript presented | 25-10-99 | Linda S. Wilson |
| G. | | |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not transcribed on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER''S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S-TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

Melvin Smith          3-7-02                    Melvin Smith
Signature          Date          Print or Type Name

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to:  (1) Clerk of the Court of Criminal Appeals.  (2) the District Attorney. (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript

Melvin Smith
164766-22
P.O. Box 5187
Union Springs, Al. 36089

300030

Circuit Court of Russell County
% Circuit Clerk
P.O. Box 518
Phenix City, Ala. 36868-0518





```
ACR371            ALABAMA JUDICIAL DATA CE  ER           C00031
            NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                        BY THE TRIAL COURT CLERK
                IN THE CIRCUIT COURT  OF   RUSSELL COUNTY
STATE OF ALABAMA VS SMITH MELVIN            JUDGE: GEORGE R. GREENE
--------------------------------------------------------------------
| APPEAL DATE: 03/12/2002                                           |
|------------------------------------------------------------------|
| INDIGENCY STATUS:                                                 |
|    GRANTED INDIGENCY STATUS AT TRIAL COURT:      __X__ YES __X__ NO|
|    APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: _____ YES __X__ NO|
|    INDIGENT STATUS REVOKED ON APPEAL:            __X__ YES _____ NO|
|    INDIGENT STATUS GRANTED ON APPEAL:            __X__ YES _____ NO|
|                                                                   |
| DEATH PENALTY: NO                                                 |
|                                                                   |
| APPEAL TYPE: RULE 32 PETITION                                     |
|------------------------------------------------------------------|
| THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E., RULE 32 PETITION,|
| WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.|
|                                                                   |
| CO/CASE NUMBER: 57/CC 1997 000095.60                              |
|                                                                   |
| ORDER ENTERED(DATE): 02152002 PETITION: X DISMISSED __DENIED __GRANTED|
|------------------------------------------------------------------|
| POST-JUDGMENT MOTIONS FILED:  DT FILED    DT DENIED   CON BY AGREE |
| ___  MOTION FOR NEW TRIAL     _____    _____    _____ |
| ___  MOTION FOR JUDG. OF ACQUIT _____  _____    _____ |
| ___  MOTION TO W/D GUILTY PLEA _____    _____    _____ |
| ___  MOTION FOR ATTY TO W/DRAW _____    _____    _____ |
| ___  OTHER                    _____    _____    _____ |
|------------------------------------------------------------------|
| COURT REPORTER(S):                 WILSON, LINDA S.               |
| ADDRESS:                           C/O HON. GEORGE R. GREENE      |
|                                    PHENIX CITY   ,  AL  36867     |
|                                                                   |
| APPELLATE COUNSEL #1:              COLLINS L JOEL                 |
| ADDRESS:                           P O BOX 580                    |
|                                                                   |
|                                    PHENIX CITY   ,  AL   36867    |
| PHONE NUMBER:                      205-297-2926                   |
|                                                                   |
| APPELLATE COUNSEL #2:              _____  |
| ADDRESS:                           _____  |
|                                    _____  |
|                                    _____  |
| PHONE NUMBER:                      _____  |
|                                                                   |
| APPELLANT (PRO SE):                SMITH MELVIN                   |
| ADDRESS:                           204766                         |
|                                    UNION SPRINGS ,  AL  360890000 |
| AIS #:                             000204766                      |
|                                                                   |
| APPELLEE (IF CITY APPEAL):         _____  |
| ADDRESS:                           _____  |
|                                    _____  |
|------------------------------------------------------------------|
```

I CERTIFY THAT THE INFORMATION PROVIDED                OPERATOR: SHG
ABOVE IS ACCURATE TO THE BEST OF MY          PREPARED: 03/14/2002
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO      _Kathy Coulter_
THIS ACTION ON THIS 14th DAY OF March, 02    ( CIRCUIT COURT CLERK )

C00032

## REQUEST FOR LOCAL EXTENSION OF TIME
### TO COMPLETE THE REPORTER'S TRANSCRIPT

_Melvin Smith_ v. _State of Alabama_
Appellant's Name                              Appellee

Trial Court Case No. _CC97-95.60_ Notice of Appeal Date _3/12/02_

On appeal from the: [X] Circuit Court of
[ ] District Court of          _Russell_ County
[ ] Juvenile Court of

I, _Linda Wilson_, a court reporter in the above referenced case,
hereby request a _28_ day extension to complete the transcript in said cause for the reasons
I have set out below. Currently this transcript is due on _5/7/02_, and with this extension
the transcript will be due on _6/4/02_.

REASONS: _____

_____

_____

_____

_Linda Wilson_                    _5/1/02_
Court Reporter                    Date

===========================================================
### TRIAL COURT ACTION

[X] Upon consideration of the above request, I hereby grant a _28_ day extension to complete said transcript, thus extending
the transcript's due date to _6/4/02_. Upon granting this request, I direct the court reporter to file this order
with the Clerk of this Court and to mail or fax a copy hereof to the Clerk of the Court of Criminal Appeals at the address
noted below by no later than the transcript due date in effect immediately preceding this order.

[ ] The above referenced request for a local extension is denied.

_George R. _____                    _5/1/02_
Judge's Signature                    Date

Note:   Pursuant to Rule 11(c) of the Alabama Rules of Appellate Procedure, local extensions cannot total more than 28
days and cannot be to a date more than 84 days from the date of the notice of appeal.

===========================================================
The Clerk of the Court of Criminal Appeals          Fax (334) 242-4689
P. O. Box 301555
Montgomery, Alabama 36130-1555

COURT OF CRIMINAL APPEALS
STATE OF ALABAMA
JUDICIAL BUILDING, 300 DEXTER AVENUE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

CC0033

'. W. "Bucky" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

May 15th, 2002

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
FAX (334) 242-4689

IMPORTANT NOTICE

Linda S. Wilson, Court Reporter
Court Reporter
1600 46th Street
Phenix City, AL 36867

RE: CR-01-1261
Melvin Smith v. State of Alabama (Appeal from
Russell Circuit Court: CC97-95.60).

Dear Linda S. Wilson:

        Our records indicate that the transcript in the above referenced case was due to be
filed with the circuit clerk on May 7th, 2002.  If our information is incorrect, you should
contact this Court immediately to straighten this matter out.  Otherwise, to prevent this
court from remanding this cause back to the trial court with directions that the trial court
take specific action regarding the delinquent transcript, please be advised that you should
complete and file this transcript by no later than  June 5th, 2002.

                                            Sincerely,

                                            Lane W. Mann, Clerk
                                            Court of Criminal Appeals

LWM/di

cc:   Honorable George R. Greene, Circuit Judge
      Honorable Kathy S. Coulter, Circuit Clerk
      Honorable L. Joel Collins, Attorney, Appellant
      Office of Attorney General

C0003⁴

STATE OF ALABAMA                    *    IN THE CIRCUIT COURT OF
                                   *
            PLAINTIFF              *    RUSSELL COUNTY, ALABAMA
                                   *
VS.                                *    CASE NO CC-97-95.60
                                   *            CR-01-1261
MELVIN SMITH                       *
                                   *
            DEFENDANT              *

## MOTION TO WITHDRAW

Comes now L.JOEL COLLINS, attorney for Defendant in the above-styled

action and moves the Court to allow him to withdraw as attorney for Defendant.

Defendant has not hired attorney to represent him, nor has he been appointed

to represent him on appeal.

                            BY: _L. Joel Collins_
                            L. JOEL COLLINS,
                            ATTORNEY FOR DEFENDANT

1323 Broad Street
Post Office Box 580
Phenix City, Alabama  36868-0580
334/297-2926

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the above and foregoing
Motion to Withdraw upon the Honorable Kenneth E. Davis,  District Attorney of
Russell County, by placing a copy of same in the receptacle reserved in his name in
the office of the Circuit Court of Russell County.

This the 21ˢᵗ day of May, 2002.

                            _L. Joel Collins_
                            _____
                            L. JOEL COLLINS

C00035

IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

STATE OF ALABAMA       *
                         *

      PLAINTIFFS,     *

VS.                       *      CASE NO.   CC-97-95.60

MELVIN SMITH         *

      DEFENDANTS,     *

## ORDER

It is hereby ORDERED that the request filed by Hon. Joel Collins to withdraw as attorney for defendant is hereby granted.

DONE this the 12th day of June, 2002.

_____
JUDGE, CIRCUIT COURT

C00036

```
ACR371                    ALABAMA JUDICIAL DATA CENTER
             NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
                           BY THE TRIAL COURT CLERK
                   IN THE CIRCUIT COURT OF  RUSSELL COUNTY
STATE OF ALABAMA VS SMITH MELVIN         JUDGE: GEORGE R. GREENE
-----------------------------------------------------------------------
| APPEAL DATE: 03/12/2002                                              |
|---------------------------------------------------------------------|
| INDIGENCY STATUS:                                                   |
|    GRANTED INDIGENCY STATUS AT TRIAL COURT:    __X__ YES _____ NO   |
|    APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: __X__ YES __X__ NO |
|    INDIGENT STATUS REVOKED ON APPEAL:          __X__ YES __X__ NO   |
|    INDIGENT STATUS GRANTED ON APPEAL:          __X__ YES _____ NO   |
|                                                                     |
| DEATH PENALTY: NO                                                   |
|                                                                     |
| APPEAL TYPE: RULE 32 PETITION                                       |
|---------------------------------------------------------------------|
| THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E., RULE 32 PETITION,|
| WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.|
|                                                                     |
| CO/CASE NUMBER: 57/CC 1997 000095.60                                |
| ORDER ENTERED(DATE): 02152002 PETITION: X DISMISSED __DENIED __GRANTED|
|---------------------------------------------------------------------|
| POST-JUDGMENT MOTIONS FILED:   DT FILED    DT DENIED   CON BY AGREE  |
|    MOTION FOR NEW TRIAL        _____    _____   _____   |
|    MOTION FOR JUDG. OF ACQUIT  _____    _____   _____   |
|    MOTION TO W/D GUILTY PLEA   _____    _____   _____   |
|    MOTION FOR ATTY TO W/DRAW   _____    _____   _____   |
|    OTHER                       _____    _____   _____   |
|---------------------------------------------------------------------|
| COURT REPORTER(S):              WILSON, LINDA S.                     |
| ADDRESS:                        C/O HON. GEORGE R. GREENE            |
|                                 PHENIX CITY  , AL 36867             |
|                                                                     |
| APPELLATE COUNSEL #1:           ------------------------------      |
| ADDRESS:                        ------------------------------      |
|                                 ------------------------------      |
|                                 ------------------------------      |
| PHONE NUMBER:                                                       |
| APPELLATE COUNSEL #2:           ------------------------------      |
| ADDRESS:                        ------------------------------      |
|                                 ------------------------------      |
|                                 ------------------------------      |
| PHONE NUMBER:                                                       |
| APPELLANT (PRO SE):             SMITH MELVIN                        |
| ADDRESS:                        204766                              |
|                                 UNION SPRINGS , AL  360890000       |
| AIS #:                          000204766                           |
| APPELLEE (IF CITY APPEAL):      ------------------------------      |
| ADDRESS:                        ------------------------------      |
|                                 ------------------------------      |
-----------------------------------------------------------------------
```

I CERTIFY THAT THE INFORMATION PROVIDED                         OPERATOR: SHG
ABOVE IS ACCURATE TO THE BEST OF MY                  / PREPARED: 06/14/2002
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO       *Kathy Coulter*
THIS ACTION ON THIS 14th DAY OF June , 02     CIRCUIT COURT CLERK

C00037

For The Alabama Court of Criminal Appeals

Melvin Smith
            Appellant

                                          Case No.
       Vs.                                CC-97-95.60
State of Alabama, et al.,
            Appellee

From The Circuit Court of Russell County

Motion For Status

I, Melvin Smith, the Appellant in the above-styled cause, by and through himself, only prison inmate assistent, and request this Honorable Court for status of the Notice of Appeal Filed in the trial court on March 12, 2002.

       Please advise as to status and/or disposition of said notice of appeals.

Dated: April 22, 2002

FILED IN OFFICE:
2002 APR 25   PM 12: 48
CIRCUIT/DISTRICT COURT
RUSSELL CO., AL

                        /s/ Melvin Smith
                        Melvin Smith
                        204766-22
                        P.O. Box 5107
                        Union Springs, Al. 3608

1-4-02   Appeal pending
         Motion noted

         George R. Greene

C00038

Certificate of Service

I hereby certify that I have served a true and correct copy of the foregoing upon the circuit court and court of Appeals via the Clerks of their office, by U.S. Mail, postage prepaid.

Dated: April 22, 2002

/s/ Melvin Smith
Melvin Smith.
Affiant - Pro se

C00029

| State of Alabama<br>Unified Judicial System<br>ᴬ ARAP- 14          11/91 | **CERTIFICATE OF COMPLETION AND<br>TRANSMITTAL OF RECORD ON<br>APPEAL BY TRIAL CLERK** | Appellate Case Number |
|---|---|---|

| TO:  THE CLERK OF<br>THE COURT OF CRIMINAL APPEALS OF ALABAMA | DATE OF<br>NOTICE OF APPEAL:  MARCH 12, 02 |
|---|---|

APPELLANT

        MELVIN SMITH

v.   STATE OF ALABAMA

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling in (a single volume of __102__ pages) (_____ volumes of 200 pages each and one volume of _____ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of briefs.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

Dated this __2nd__ day of _____JULY_____ ,19 _2002_

_____                 _Kathy Coulter /SS_
                                               Circuit Clerk

                         RUSSELL COUNTY, ALABAMA

| State of Alabama<br>Unified Judicial System<br>Form ARAP- 1C          8/91 | **REPORTER'S TRANSCRIPT ORDER -- CRIMINAL**<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number<br>_ - _ - _ |
|---|---|---|

**TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

☒ CIRCUIT COURT  ☐ DISTRICT COURT  ☐ JUVENILE COURT OF _Russell_ COUNTY

_Melvin Smith_ , Appellant

V.  ☒ STATE OF ALABAMA  ☐ MUNICIPALITY OF _____

| Case Number _CC-97-095.60_ | Date of Judgment/Sentence/Order _3-18-99_ |
|---|---|
| Date of Notice of Appeal<br>Oral:          Written: _5-12-99_ | Indigent Status Granted:<br>☒ Yes   ☐ No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**

I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

| _Signature_ | _3-7-02_<br>Date | _Melvin Smith_<br>Print or Type Name |
|---|---|---|

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**                                   COURT REPORTER(S)

A. ☐ **TRIAL PROCEEDINGS** - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.

B. ☐ **ORGANIZATION OF THE JURY** - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. ☐ **ARGUMENTS OF COUNSEL** - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

*(margin stamp: CIRCUIT/DIST. COURT  RUSSELL CO.  FILED IN OFFICE  02 MAR 2  PM 4:47)*

**IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):**

| | ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
|---|---|---|---|
| D. | _Rule 32 hearing_ | _ongoing_ | |
| E. | | | |
| F. | _Transcript presented_ | _25-10-99_ | _Linda S. Wilson_ |
| G. | | | |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER''S TRANSCRIPT:**

I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

| _Melvin Smith_<br>Signature | _3-7-02_<br>Date | _Melvin Smith_<br>Print or Type Name |
|---|---|---|

**DISTRIBUTION: Original filed with Clerk of Trial Court and copies mailed to:**  (1) Clerk of the Court of Criminal Appeals,  (2) the District Attorney. (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

1                    INDEX TO REPORTER'S TRANSCRIPT

2

3    Reporter's Transcript Order                    1

4    Index                                          2

5    Rule 32 Hearing                             3-62

6    Reporter's Certificate                        63

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF ALABAMA

IN THE CIRCUIT COURT FOR THE COUNTY OF RUSSELL

TWENTY-SIXTH JUDICIAL CIRCUIT

CRIMINAL


STATE OF ALABAMA

     v.                        Case No. CC 97-95.60

MELVIN SMITH,

       Defendant.
_____/


REPORTER'S OFFICIAL TRANSCRIPT

Before:

         Honorable George R. Greene
           Phenix City, Alabama - October 10, 2001


APPEARANCES:

         For the State:
           Greg Waldrep, Esq.
           Assistant District Attorney

         For the Defendant:
           L. Joel Collins, Esq.
           Phenix City, Alabama


Linda S. Wilson
Official Court Reporter

1    THE COURT:  Mr. Waldrep, who would you call

2    as your first witness?

3        MR. WALDREP:  We call Greg Graham.

4            GREG GRAHAM

5    was sworn and testified as follows:

6            DIRECT EXAMINATION

7  BY MR. WALDREP:

8  Q    Would you state your name for the court record,

9    please?

10 A    Greg Graham.

11 Q    Mr. Graham, are you a licensed attorney here in

12    the State of Alabama?

13 A    Yes, sir.

14 Q    And were you so licensed back when this case was

15    set for trial?

16 A    Yes, sir.

17 Q    How did you become involved in the case here with

18    Mr. Smith?

19 A    I was appointed when it was at the Circuit Court

20    level.

21 Q    There had already been an indictment?

22 A    Yes, sir.

23 Q    At that time did you attempt to represent Mr.

24    Smith as far as his criminal charges?

25 A    Yes, sir.  I talked with -- Mr. Smith came in

5

1    after I was appointed and we met, I think, on two

2    occasions.

3    Q    Let me ask you, did Mr. Smith indicate an

4    interest in you handling the case, or did he

5    indicate to you a preference for handling the

6    case himself?

7    A    Melvin or Mr. Smith indicated that pretty much

8    that he wanted to handle the case himself.  At

9    one point, I think it may have been two weeks

10   before the trial or the trial week, I told Melvin

11   he needed to come back in and we need to go over

12   the case and get some stuff ready.

13   Q    Was he out on bond at the time?

14   A    Yes, he was out on bond.

15   Q    Did you, in fact, meet with him?

16   A    Yes.  He came in my office and we met.

17   Q    And did you receive discovery from the District

18   Attorney's office?

19   A    Yes.

20   Q    Did you go over that discovery in preparing for

21   that meeting?

22   A    I'm not sure if I had the discovery during the

23   first meeting, but at the second meeting I

24   believe is when we started going over the

25   discovery and that sort of stuff.

1   Q    So you met with him on two occasions?

2   A    Right.

3   Q    At the second meeting did you talk to him about

4        what you had received in discovery as far as what

5        the State was prepared to present?

6   A    We talked about the case.  We didn't talk about

7        it a whole lot because Melvin informed me that,

8        you know, he had been praying to God or

9        meditating to God for two days and that it was in

10       God's hands, and that there wasn't a whole lot we

11       could -- basically, from what I understood from

12       him, there wasn't a whole lot we could do

13       preparation wise and that he planned on basically

14       handling the case most of the way.

15  Q    Did you talk with him about the wisdom of him

16       handling his own case?

17  A    We talked about that, that I didn't advise that

18       he handle his own case.

19  Q    At that point did he present you with any defense

20       or any facts that he wanted you to make sure were

21       presented to the jury in the trial?

22  A    No.  I mean, he just basically told me that the

23       nature of their relationship was he told me they

24       were dating and that, you know, that it was

25       consensual sex.

1  Q   So he admitted to you at the time that there had

2      been -- the act of sex had taken place?

3  A   Yes, sir.

4  Q   But his representation to you was that it was

5      consensual?

6  A   Right.

7  Q   In going over the evidence that the State was

8      prepared to present, did you inform him of what

9      you had learned as far as the facts that the

10     State was going to present?

11 A   Yes.

12 Q   Was he moved or swayed by that at all?

13 A   No, not really.  I mean, he was kind of

14     indifferent.  If I said the discovery said

15     something, he said -- like I remember one point.

16     He was charged with, I think, having a knife or a

17     pocketknife and he stated well, it was

18     consensual, that he didn't have a knife.

19 Q   Did you attempt to file any type of pre-trial

20     motions in the case?

21 A   I filed a motion to suppress the Defendant's

22     statement, I believe a Motion in Limine, another

23     motion on the word rape, on how it could be used,

24     and off the top of my head, I believe that's

25     all.  I did file a motion to continue on March

1     the 8th.

2  Q    Okay.

3  A    And I believe that was it.

4  Q    Were any of those motions granted that you

5     recall?

6  A    No.

7  Q    Did you talk with him about the relevant law as

8     far as the charge of rape first degree?

9  A    We went over the charge, you know, basically what

10     the elements of the charge were.

11  Q    Did he indicate any misunderstanding --

12  A    No.

13  Q    -- or problem with that?

14  A    He said that -- he told me basically he

15     understood what he was charged with.

16  Q    Did you see that he knew the proper date to be

17     here for the trial?

18  A    Yes.  He was here on the trial date.

19  Q    Do you recall on that date once the proceedings

20     began, did Mr. Smith indicate a desire to --

21     well, how much assistance was he willing for you

22     to give?

23  A    Melvin told me that he wanted to do the opening

24     and I believe the closing statements in the

25     beginning, before the trial started, and that he

1    was going to question the witnesses. He didn't

2    want to question the victim, and I cannot recall

3    her name, and I did question her. But before the

4    trial, he wanted to handle certain things and I

5    was to -- basically, I was to question her and I

6    may have -- I think I actually questioned him as

7    well.

8  Q  Do you remember if the Court went over with him

9    the consequences, potentially, of representing

10   himself?

11 A  I believe that, if I remember correctly, he

12   advised or the Court advised Mr. Smith, you know,

13   basically to let his lawyer represent him.

14 Q  Were you allowed to make the opening statement

15   then?

16 A  No. Melvin made the opening statement.

17 Q  At some point then did he indicate during the

18   trial an increased desire for your participation?

19 A  He -- I can remember that when she went to take

20   the stand or when she was on the stand, that he

21   told me he wanted me to cross-examine her; that

22   he didn't want to do it.

23 Q  So you did that?

24 A  I did that.

25 Q  Do you recall what other direct involvement you

1      would have had in the actual trial?

2  A   I believe I did the closing statement and I

3      believe I questioned Melvin.

4  Q   After the trial -- well, let me ask you this.

5      Before the trial, did Mr. Smith indicate any

6      desire to you that you recall to have a non-jury

7      rather than a jury trial?

8  A   No.

9  Q   After the trial, what was your communication with

10     him concerning what he wanted to do from that

11     point?

12 A   We asked -- I believe we asked at sentencing that

13     a bond be set, or after the conviction, I think

14     we asked that a bond be set.  Then at sentencing,

15     I believe Rick Chancey stood in at sentencing and

16     asked that a bond be -- an appeal bond be set

17     then.

18 Q   At the conclusion of the State's case during the

19     actual trial, was there any motion for acquittal

20     or for a directed verdict filed?

21 A   I believe we made a motion for a directed verdict

22     when the State rested and when we rested.

23 Q   Did you assist him in doing that?

24 A   Yes, sir.  I think I actually made the motion for

25     directed verdict.

1   Q    And again, did he give you any particular defense

2        other than that of consent?

3   A    No.  He said that it was consensual and that they

4        had had a relationship.

5   Q    Okay.

6   A    In essence, they were dating.

7              MR. WALDREP:  Mr. Collins?

8                    CROSS-EXAMINATION

9   BY MR. COLLINS:

10  Q    Mr. Graham, you said that you met with the

11       Defendant on two occasions?

12  A    Yes, sir.

13  Q    Is that the only times that you set up for him to

14       come see you or the only times he actually showed

15       up?

16  A    I believe the first time he came in was when I

17       was appointed to him.  He called.  He came in.

18       It was kind of, you know, to get his -- go over

19       some stuff with him.  I think if Melvin missed an

20       appointment, that he may have missed two, one or

21       two at the most.  Usually, if he made an

22       appointment, he would come.  I remember -- what I

23       can remember is if Melvin made an appointment, he

24       came to see me.

25  Q    How long after -- when were you appointed; do you

1    remember?

2  A   Probably around February the 24th.

3  Q   And did you file for motion for discovery?

4  A   I filed for motion for discovery on February

5      24th.

6  Q   And do you remember when you received your

7      discovery?

8  A   Let me back up and I can answer your question a

9      little better. On February 16th, I was appointed

10     to represent him. On February the 24th, I filed

11     the discovery motion, and I received discovery,

12     but I didn't receive all of it. I received his

13     statement. I believe -- I'm not sure if I

14     received it altogether or if I received his

15     statement at a later date, but I know that I

16     received his statement on March the 5th because I

17     filed a motion to suppress it. And I also filed

18     a motion to continue because I got the statement

19     on March the 5th with the trial week being on

20     March the 15th.

21 Q   And what happened to your motions?

22 A   They were denied.

23 Q   Did you have sufficient time in which to prepare

24     an adequate defense for the Defendant?

25 A   Yes and no. I mean yes, but Melvin was going to

1      handle the trial himself, so it was hard to get

2      him to sit down and really go over things with

3      him.

4  Q   Did you discuss any witnesses that he felt would

5      be appropriate for you or him to subpoena?

6  A   He told me that he didn't have any witnesses to

7      subpoena.  During the trial I believe Melvin told

8      me that he wanted this person that he remembered,

9      there was this person that could come testify.  I

10     tried to get my office to get in touch with that

11     person, and we were unable to do so on such short

12     notice.

13  Q  When he talked in terms of having a relationship

14     with this alleged victim, did he go into any

15     detail with you about that?

16  A  Basically, he told me they rode back and forth to

17     work together, that they had been seeing each

18     other, and that they had been intimate with each

19     other.

20  Q  Did he indicate anybody else that would be able

21     to corroborate his testimony?

22  A  No.  Well, the day of trial he said there was one

23     person that sometimes would ride back and forth

24     to work with them, and he gave me that name the

25     day of trial.

1   Q    And where was this person, where did he work?

2   A    I believe -- I think it was in Tuskegee, maybe at

3        the hospital.  I think one of them worked at the

4        hospital in Tuskegee, but I believe they all

5        worked in Tuskegee.

6   Q    Do you know of any efforts that he requested be

7        made regarding subpoenaing or obtaining records

8        from a florist in Tuskegee?

9   A    He asked me -- he said that the day of trial,

10       that there was where he had sent flowers to her

11       and it was out of a florist in Tuskegee, and we

12       tried to get in contact with that florist.

13  Q    Now, there were 12 witnesses listed on the

14       State's witness list.  Did you interview each and

15       every one of these individuals?

16  A    No.

17  Q    Why not?

18  A    Before trial or at trial?

19  Q    Before trial.

20  A    No.

21  Q    Why not?

22  A    Well, I guess that for one thing I didn't know

23       who all their witnesses were going to be.  I

24       believe -- I didn't really speak with anybody

25       about it other than Melvin.  I didn't speak with

```
 1            the victim.  I couldn't tell you who all the

 2            witnesses were to let you know if I talked to

 3            them or not.

 4       Q    Did you ever discuss any of the case prior to

 5            trial with the doctor or nurse that examined the

 6            alleged victim?

 7       A    No.

 8       Q    Did you get a copy of the report from the doctor

 9            or the hospital?

10       A    In the discovery, I have one page that's from

11            Emergency Medical Services, and it's basically a

12            report from the sheriff's department, and some

13            motions that Melvin had filed himself, some

14            copies of motions.

15       Q    Was there any physical evidence that was

16            presented at trial concerning the physical

17            examination by the doctor?

18       A    I'm going to say no.  I really can't remember if

19            there was or if there wasn't.

20       Q    But you had never talked to the doctor or anybody

21            at the hospital prior to the day of trial?

22       A    No.

23       Q    And did you question the doctor or did Mr. Smith?

24       A    Honestly, I don't know who did.

25       Q    Did you at any time put on the record Mr. Melvin
```

1       Smith's motion that he be allowed to represent

2       himself and put on the record your testimony that

3       you had talked to the doctor or talked to Mr.

4       Smith and suggested that he not do that?

5   A   I don't know if it was put on the record, but I

6       did suggest that Melvin not represent himself.

7   Q   Was there ever a hearing held by anybody that you

8       are aware of that the matter of Mr. Smith

9       representing himself arose and a court made a

10      ruling as to what you were to do at the trial and

11      what Mr. Smith was supposed to do at the trial?

12  A   No, not to my knowledge.

13       THE COURT:  I can answer that for you.

14     There was, in fact, an appearance of Mr. Smith

15     before the Court.  He was advised by the Court

16     that he needed legal counsel.  He declined it,

17     and the Court ordered legal counsel to be

18     appointed to represent him to be present at such

19     time as if he needed advice and to assist him,

20     and that was done in open court prior to the

21     trial.  In fact, that was done twice.

22       He was advised of his right to have legal

23     counsel by the Honorable Wayne Johnson on April

24     the 29th of 1997, and Mr. Smith declined legal

25     counsel on that date as well.  There was twice

1          that he appeared in court and declined legal

2          counsel, and on the last occasion I specifically

3          refused to allow him to decline legal counsel and

4          appointed counsel to assist him at the trial.

5          And there is a handwritten note by the Court in

6          the file stating that counsel was appointed to

7          assist him.

8     Q    Did you ever discuss the theory of defense that

9          Mr. Smith had in that due to his freedom of

10         religion, he could not be convicted by not less

11         than two witnesses?

12    A    No.

13    Q    You didn't ever discuss that with him or --

14    A    No.  Melvin talked a lot about religion, but he

15         said basically, you know, it was in God's hands

16         and that God would help those people decide the

17         right thing.

18    Q    At that particular time when you tried this case,

19         had you ever tried a rape case before?

20    A    No.

21    Q    And how long had you been practicing in the State

22         of Alabama at the time of this trial?

23    A    Probably right at a year.

24              MR. COLLINS:  That's all I have of Mr.

25         Graham, Your Honor.

1        that he appeared in court and declined legal

2        counsel, and on the last occasion I specifically

3        refused to allow him to decline legal counsel and

4        appointed counsel to assist him at the trial.

5        And there is a handwritten note by the Court in

6        the file stating that counsel was appointed to

7        assist him.

8  Q    Did you ever discuss the theory of defense that

9        Mr. Smith had in that due to his freedom of

10       religion, he could not be convicted by not less

11       than two witnesses?

12  A    No.

13  Q    You didn't ever discuss that with him or --

14  A    No.  Melvin talked a lot about religion, but he

15       said basically, you know, it was in God's hands

16       and that God would help those people decide the

17       right thing.

18  Q    At that particular time when you tried this case,

19       had you ever tried a rape case before?

20  A    No.

21  Q    And how long had you been practicing in the State

22       of Alabama at the time of this trial?

23  A    Probably right at a year.

24         MR. COLLINS:  That's all I have of Mr.

25       Graham, Your Honor.

<u>REDIRECT EXAMINATION</u>

<u>BY MR. WALDREP:</u>

Q    In talking with the District Attorney's office,
     had there been any type of plea agreement?

A    Yes, sir.

Q    Well, a plea agreement offered or posed to you?

A    Right.

Q    Did you make sure that was communicated to the
     Defendant?

A    Right.  They made an offer, Max did, Mr. Smith
     did, and I met with Melvin and he said that he
     wasn't going to accept it.

Q    Okay.  He understood the possible consequences of
     going to trial?

A    Yeah.

          MR. WALDREP:  Nothing further, Your Honor,
     of this witness.

          THE COURT:  Anything further of this
     witness?

          MR. COLLINS:  No, Your Honor.

          MR. WALDREP:  State would call Rick
     Chancey.

<u>RICHARD L. CHANCEY</u>

was sworn and testified as follows:

<u>DIRECT EXAMINATION</u>

<u>BY MR. WALDREP:</u>

1  Q    Would you state your name for the court record,
2       please?

3  A    Richard L. Chancey.

4  Q    You're employed as an attorney here in the City
5       of Phenix City?

6  A    Yes, sir.

7  Q    Did you have occasion to represent Mr. Melvin
8       Smith on appeal from this rape conviction?

9  A    That's right, yes, sir.

10 Q    Can you tell me how you became involved, when and
11      how?

12 A    I believe it was right after Melvin was
13      convicted, right after the jury came back and
14      found him guilty.  I believe his wife, Ms. Louise
15      Smith, came in and talked to me about retaining
16      me and spoke on several occasions, and either she
17      or some member of his family did retain me prior
18      to sentencing.

19 Q    And what was your understanding of what you were
20      being retained for at that time?

21 A    To handle the appeal of the conviction for rape.

1   Q    Did you consider -- in part of his list of

2        grievances here in his petition, he indicates

3        that you failed to file a motion for a new trial

4        on the basis of ineffective trial counsel.  Did

5        you have an occasion to go over the record from

6        the trial?

7   A    No, sir.  I didn't have the transcript until, I

8        think, October of '99 and sentencing was

9        something like May of '99.  So I think you get 30

10       days to file a motion for new trial, so I didn't

11       even get the transcript until months after that

12       time had passed.

13  Q    What was your understanding of what had happened

14       at trial; did you talk with Melvin about that?

15  A    Basically, I think, going back over my notes, it

16       seemed like Melvin's main concern was that he

17       wasn't guilty, that this was a consensual matter

18       and he just was displeased and dissatisfied with

19       the verdict; that this was a consensual matter

20       and he couldn't understand how the jury couldn't

21       see that, but --

22  Q    Did he raise the issue of ineffective assistance

23       of counsel of Greg Graham with you at that time?

24  A    You know, I looked over my notes while I was

25       sitting back here and I don't in my mind recall

```
 1         him saying that.  Going over my notes, I don't
 2         see that as one of the issues.  And I saw a
 3         couple of letters that he had written to the
 4         Court that I guess the clerk copied me with, and
 5         most of those were dealing with things other
 6         than -- none of them really said anything about
 7         Mr. Graham one way or the other.
 8    Q    Was it your understanding that Mr. Smith had
 9         really basically handled his own trial?
10    A    Mr. Waldrep, I -- and I've been sitting here
11         listening to about half of what Mr. Graham said,
12         and I didn't hear much about what happened at
13         trial, but it seems like to me from talking to
14         Melvin that he handled some and Mr. Graham
15         handled some, and I don't remember percentage
16         wise who handled what.
17    Q    As an attorney, do you have an opinion as to
18         whether a client should handle any of their own
19         case at trial?
20    A    Not in a Class A felony, certainly.
21    Q    Would that make it extremely difficult for an
22         attorney to present an effective defense on
23         behalf of his client?
24    A    I don't guess I understand your question.  If you
25         represent yourself at trial, then --
```

1   Q    Would it make it difficult for the attorney to

2       help in presenting a defense?

3           MR. COLLINS:  Objection to the form of the

4       question, Your Honor.

5           THE COURT:  Well, I'll let him speak from

6       experience.

7   A    If you're talking about splitting duties like

8       that, I would say it would be very difficult to.

9       You want you and your client to be on the same

10      page, and if you are and the client's handling

11      some of it, then I guess that's okay.  If you are

12      disagreeing about how to handle the case, I guess

13      that would present a big problem.

14  Q    Before you filed -- well, did you file a brief

15      raising some issues with the appellate court?

16  A    Right, I did.

17  Q    Before you did that, did you have a chance to go

18      through and read the transcript of the trial?

19  A    Right.  Eventually I got the transcript, that's

20      right.

21  Q    Do you feel like you had adequate time to go over

22      that transcript and prepare for a brief?

23  A    Certainly.

24  Q    Did Mr. Smith raise any issues with you that you

25      did not place in the brief?

A    Melvin, I think, kept bringing up issues that,

hey, he was not guilty, that he didn't think that

he should have been found guilty of this offense,

you know, and that would be -- in my opinion,

from reviewing the record, there was evidence

presented by the State that a rape occurred, and

so I think there was sufficient evidence to

submit that to a jury and for a jury, a

reasonable jury, to come back with a guilty

verdict.  So I guess, yes, I didn't raise that in

the brief, anything about the quantity of

evidence necessarily to uphold the conviction.  I

thought that was probably there.

Q    What issues did you raise?

A    Mr. Graham, I think, had filed a motion for a

continuance for some reason and I don't recall

what, I haven't had a chance to review my file,

but I filed -- one of my issues was that the

Court should have granted his motion for a

continuance.

Another one was that there had been a Motion

in Limine filed about Melvin's statement he made

to the police, I believe, and I guess Mr. Graham

had actually filed that Motion in Limine to

suppress that statement.  Just from reading my

brief here, apparently there was never a hearing

held on that, and I objected saying or I filed an

appeal on that issue saying that the Court should

have held a hearing on that motion.

And my third issue was either Melvin or Mr.

Graham filed a motion to restrict the use of the

word rape in some context, and I don't recall

what context that was, but I raised that as my

third issue, that the Court did not hold a

hearing on that motion.

So I guess on those two pre-trial motions,

there was no hearing held on those Motions in

Limine, and then on the motion for a continuance,

the Court denied that, so those were my three

issues.

Q    From reading the trial transcript, did Mr. Smith

conduct most of the trial himself or Mr. Graham,

or how did they handle that?

A    I gave the transcript, I believe, back to

Melvin. I don't remember. I'm sorry, I didn't

read it before today's hearing.

Q    That's fine. Were there any other issues that

you recall being preserved that you just didn't

mention?

A    Every issue that I felt was an appealable issue,

1    I appealed.

2  Q  And the Court has ruled on that?

3  A  The Court of Criminal Appeals ruled on it.  I

4     filed an application for rehearing.  Actually,

5     the Court of Criminal Appeals issued a written

6     opinion denying each of those three points.  I

7     filed for rehearing.  That was denied.  And I

8     filed an application or petition for cert and

9     that was denied on all three issues, I believe,

10    each time.

11 Q  Did you discuss what you were doing with Mr.

12    Smith?

13 A  Melvin, I believe, made bond.  The Judge set him

14    an appeal bond and he got out, and he and his

15    wife either -- mostly on separate occasions would

16    come and see me periodically about the case --

17 Q  All right.

18 A  -- during the summer between the time he was

19    convicted and the time we filed it, so he came by

20    my office several occasions.

21 Q  Did you keep him informed on what issues you were

22    raising or how the petition -- how the appeal was

23    going?

24 A  Yes.

25 Q  Did he tell you anything else that he wanted

1      raised that you recall?

2  A    I can't remember how this came up, but at some

3      point Melvin and I began talking about his mental

4      history, and apparently from reviewing my notes,

5      I got a great deal of medical records at some

6      point from the VA that he had been previously

7      diagnosed with a mental illness.  That issue, I

8      think, probably could have been addressed prior

9      to the trial had an attorney been, I guess,

10     representing him known of these prior medical or

11     mental health problems.  I guess a defense of

12     mental disease or defect could have been raised.

13     That wasn't preserved, and so I couldn't raise

14     that in a direct appeal.  So that would have been

15     the only issue that I can think of that I thought

16     was a valid issue.  It was just my hands were

17     tied, procedurally.  I couldn't raise it.

18         MR. WALDREP:  Nothing further, Judge.

19         THE COURT:  Any questions, Mr. Collins?

20         MR. COLLINS:  Yes, Your Honor.

21               CROSS-EXAMINATION

22  BY MR. COLLINS:

23  Q    Mr. Chancey, you came on board right after the

24      conviction, didn't you?

25  A    Right.

1    Q    And you knew that you had 30 days in which to

2         file a motion for new trial?

3    A    Right.

4    Q    But you didn't do that?

5    A    That's right.

6    Q    And you did not do that because you wanted to

7         have a transcript before you filed that, or why

8         did you not file a motion for new trial?

9    A    I didn't sit in on any of Melvin's case and I

10        didn't have anything to get my hands on, so to

11        speak, to present to the Court in the form of a

12        motion saying, Judge, here are the specific

13        grounds that we think he should be granted a new

14        trial, so I guess that's why.  No, I didn't have

15        a transcript to read.  I wasn't involved in the

16        trial of the case.  And mainly from talking to

17        Melvin at that first point, it was just that

18        there wasn't enough evidence to convict him.  And

19        after talking to the DA and the other attorney,

20        Mr. Graham, you know, I didn't feel that was a

21        motion that should be presented.

22    Q    When did you discover his mental problems?

23    A    I don't recall.

24    Q    Was it before or after you filed your brief?

25    A    Before I filed my brief.

1   Q   So you could have filed a motion for new trial,

2       asked the Court to withhold ruling on it until

3       after you've gotten a copy of the transcript,

4       couldn't you?

5   A   From my understanding, Mr. Collins, and I may be

6       wrong, that procedure was done away with.  It was

7       an Ex Parte Jackson motion used to file asking

8       for an extension, a 30-day extension, and my

9       understanding was that has been overturned.  You

10      cannot no longer do that.  Once the 30 days goes,

11      it's gone.

12  Q   But you could have filed it within the 30 days,

13      the motion for new trial?

14  A   Yeah.  I certainly could have filed a motion for

15      new trial if I had known what grounds I was going

16      to ask for.

17  Q   And that motion for new trial is automatically

18      denied within 60 days of sentencing?

19  A   Right.

20  Q   Unless it's agreed upon between the parties to

21      extend the time for the Court's ruling?

22  A   I don't know.

23  Q   But it does not stay the time for filing the

24      notice of appeal, does it?  The motion for new

25      trial does not stay the motion or the notice of

29

1          appeal?

2    A    Right, right.

3    Q    But you did not do that.  And that would have

4          been an appropriate time at that time to raise

5          his mental capacity, wouldn't it?

6    A    If I had known enough about it within the 30 days

7          to file it, yes.  I had sent off -- I think I got

8          a release or something from Melvin and sent off

9          to the VA for some things.  I had some from --

10         Melvin, I think, gave me some things.  I didn't

11         have all the dates and everything back as to when

12         his diagnoses were, what they were, and all of

13         that within the 30 days, you know, to raise the

14         red flag that I can recall to file that motion.

15   Q    And you would not have had the information back

16         from the VA within 30 days anyway, would you,

17         because it took awhile to get the records?

18   A    It took awhile.  I got some things from Melvin

19         and some things from the VA, and I don't know

20         what from where.

21   Q    Did Mr. Smith ever mention to you that he was

22         mentally ill or had some mental disease?

23   A    Yes, he did, but -- yes, he told me that.

24         Speaking with him at the jail and speaking with

25         him in person, he was very coherent, I thought.

Q    Did he indicate to you that he had told his
     previous attorney about that?

A    I don't recall.

Q    Is there anything that you feel, after having
     looked at the record, that you could have filed
     but did not file as reasons for granting an
     appeal?

A    Appealable issues -- nothing from the
     transcript.  Another thing that I would have
     liked to have known from the transcript about
     this soliloquy that the Judge usually gives with
     Melvin about whether or not you can represent
     yourself and all.  I didn't have that before me.
     I guess looking back now, with all the medical
     records I have, I would have liked to have been
     able to raise that at some point, but the 30 days
     passed without me having all my records to be
     able to file anything.

Q    What about obtaining from the court reporter any
     other confrontations or meetings that Mr. Smith
     had either with or without Mr. Graham before
     Judge Johnson or Judge Greene where any of this
     might have been discussed and been placed on the
     record?

A    Any of what had been discussed?

1    Q    About him representing himself.  Did you see
2         anything in the record to reflect that?
3    A    I don't remember.  I'm sorry, I didn't have the
4         transcript to read before today's hearing, so I
5         don't recall what's in the transcript and what's
6         not.
7    Q    According to the request from Mr. Graham on the
8         notice of appeal and the reporter's transcript
9         indicates that the trial proceedings,
10        organization of the jury, arguments of counsel
11        are the only things that were requested.  In
12        fact, you did the request?
13   A    Right.
14   Q    That's your request.  Did you see any reason to
15        request anything other than that?
16   A    No.
17   Q    Since you didn't know if there were anything --
18        any other meetings that should have been
19        requested, did you feel that maybe you should
20        have done that?
21   A    At the time, no, because Melvin's main defense
22        was to me that I'm not guilty and the jury
23        shouldn't have returned a guilty verdict, so I
24        was basically starting an appeal from what my
25        client was telling me was something I didn't

1      think was very strong grounds to appeal from.  So

2      as time went by, for example, when I started

3      getting all of these medical records together and

4      then I got the transcript, I was able to see some

5      errors.  But from starting at the very beginning,

6      it's hard for me to know what to look for.

7  Q    At the time that you got the transcript, did you

8      at that time already have in hand the medical

9      records?

10  A    I don't recall.  I don't know.  I can look and

11      see if I've got a date here.

12  Q    Because the transcript was --

13  A    I want to say I did.

14  Q    -- certified completed October 25th of 1999?

15  A    Right.  I am reasonably competent that by that

16      time I had all of Melvin's records that I

17      eventually got by then.

18  Q    Then at the time that you got that and noticed

19      that you didn't recall seeing anything about his

20      mental capacity or any rulings on his meetings

21      with the Court, did you feel like that you

22      should, looking back, have requested additional

23      information or an additional transcript asking

24      the Court of Appeals to allow you additional time

25      to supplement the record on appeal so that you

1    could raise that issue?

2  A  No, no, that never -- looking back now, I still

3    don't know that I would have done that.

4  Q  Okay.

5        MR. COLLINS:  That's all I have, Your

6    Honor.

7        MR. WALDREP:  State has nothing further,

8    Your Honor.  No further witnesses.

9        THE WITNESS:  I guess, Judge, if I could

10   just add something?

11       MR. COLLINS:  Is there anything you'd like

12   to add?

13       THE COURT:  Go ahead.

14       THE WITNESS:  I don't know.  These are all

15   issues that if I'm representing someone prior to

16   a trial and I've got someone with a history of a

17   mental illness, I typically, and I think the

18   Court's aware, I file a lot of motions for

19   evaluations, and I probably would have done this

20   in this case with Melvin's history.  Whether it

21   would have been upheld, I don't know, because

22   Melvin seemed to be very well aware and

23   remembered what happened because he said it was

24   all consensual.

25       THE COURT:  Well, let me state for the

1    record that's apparently not part of this Rule 32

2    petition.   The issues involving Mr. Chancey are U

3    and V of the petition.   Counsel Richard Chancey

4    failed to file a motion for a new trial on the

5    basis of ineffective trial counsel for the

6    reasons stated in Paragraphs I through T, and

7    therefore, not preserving the issue for appeal.

8    The issue of his mental ability or capability is

9    not listed in I through T.   And then the only

10   other issue involving Mr. Chancey, he failed to

11   file a motion for additional time so that he may

12   study the trial court transcript to better

13   prepare an appellate argument, so that issue is

14   not before the Court.

15           MR. COLLINS:   I don't have any further

16   questions, Your Honor.

17           THE COURT:   Okay.

18           MR. CHANCEY:   I'm sorry, Judge.   I hadn't

19   read all the petitions, so I didn't know.

20           MR. WALDREP:   No further questions.

21           THE COURT:   I'd have some questions of Mr.

22   Chancey before he gets up and goes.

23                       EXAMINATION

24   BY THE COURT:

25   Q   Did Mr. Smith at any time that you conversed with

1      him complain about the representation of his

2      attorney, Mr. Graham, specifically, or Mr. Kelly?

3  A   I don't recall Mr. Kelly's name coming up at

4      all.  Mr. Graham?  No, sir.

5  Q   Did he specifically tell you about anything that

6      he felt that Mr. Graham had not done?

7  A   No, sir.

8  Q   Did you talk with the Defendant about his

9      expressing over a two-year period a desire that

10     he not have legal counsel to represent him?

11  A   I don't know that he and I ever really talked

12     about -- I don't think I ever approached or

13     broached the subject with him as to why --

14     Melvin, why in the world did you represent

15     yourself on this case.  I don't believe that we

16     even ever talked about that.

17  Q   Did anybody, other than Mr. Smith, bring to your

18     attention anything that Mr. Graham may have

19     failed to do or some improper representation of

20     Mr. Smith at trial?

21  A   No, sir.  Like I said, Melvin's main complaint

22     was that he just wasn't guilty.

23  Q   Were you aware that Mr. Graham had been appointed

24     to represent Mr. Smith over Mr. Smith's

25     objections to having legal counsel to represent

1      him?

2   A   My understanding with that, Judge, was that Mr.

3      Graham was appointed kind of as a stand-in

4      counsel to help Mr. Smith if he needed help, but

5      that at some point during the trial Mr. Smith

6      basically handed everything over to Mr. Graham.

7      So yes, sir, I guess I did know he was.

8   Q   Would you have expected Mr. Graham to have gone

9      out and investigated the case when Mr. Smith had

10     declined legal representation over a two-year

11     time period?

12  A   I don't recall how soon before the trial Mr.

13     Graham was appointed, but if Mr. Smith is

14     maintaining that he's going to handle this case

15     before the trial, which I've had cases like that,

16     I wouldn't do hardly anything prior to the trial

17     but just be ready to answer his legal questions

18     during the proceedings.

19        THE COURT:  Any further questions of this

20     witness?

21        MR. COLLINS:  No, Your Honor.

22        THE COURT:  Okay.

23        MR. WALDREP:  Nothing, Your Honor.

24        THE COURT:  Do you have anything further on

25     behalf of the State?

1    MR. WALDREP:  Nothing, Your Honor.

2    THE COURT:  Does the Defendant have anything

3    at this time?

4    MR. COLLINS:  Call Mr. Smith.

5                    MELVIN SMITH

6    was affirmed and testified as follows:

7                DIRECT EXAMINATION

8    BY MR. COLLINS:

9    Q    State your name?

10   A    My name is Melvin Smith, sir.

11   Q    Mr. Smith, you have asked me to file this

12        petition for Rule 32 for ineffective assistance

13        of counsel to have the Court determine that you

14        were not adequately represented during any of the

15        proceedings that you were represented by

16        counsel.  Why do you feel that this petition

17        should be granted?

18   A    Sir, I feel like the petition should be granted

19        because from initially when -- let me show you

20        the whole thing.  Initially, when Judge Johnson

21        was over the court and he asked me, you know, to

22        fill out the form for representation, okay, Greg

23        Kelly had already been obtained as my attorney,

24        retained, I mean, had already paid, but he wasn't

25        in court, so I told the Judge at that time I just

1   don't want nobody.  But during that time period,

2   before they called me back in for arraignment

3   after the time period, you know, it was just dead

4   time.  And when I came before Judge Greene and he

5   appointed Greg Graham, immediately I went to Greg

6   Graham and I told him when I went to his office,

7   I said look, I can't handle this.  I need you to

8   handle it.  I mean, that's the first thing what I

9   told him when I met with him in his office, and

10  that was like February of '99.  And he said okay,

11  let me call -- you know, when I went down there,

12  he really didn't know what I was there for, so he

13  said let me call the D.A., and he called the D.A.

14  I don't know who he called, but he called

15  somebody.  He said, yeah, they appointed me to

16  assist you.  I said me and my wife already talked

17  about it and I said, you know, I can't handle

18  this, you know, because they coming at me all

19  kind of ways and would you just handle

20  everything, and he said okay.  He went and got

21  his little tape recorder and he said tell me what

22  happened.  I explained to him what happened, you

23  know, exactly what happened.  Explained to him --

24  gave him a list of witnesses:  Dr. Kim, Annette's

25  neighbors, Ann Grant we picked up that morning.

1   I gave him the whole list of witnesses and then

2   he asked me, he said okay, it's like this, you

3   know, what you want, a jury or the Judge to hear

4   it.  And I said, Mr. Graham, I'd rather for --

5   because I know Judge Greene was over the court, I

6   said I'd rather for Judge Greene to hear because

7   I know he's going to ask questions and the person

8   can't just get up there and say something.  I

9   said I would like a judge only try it.  So that

10  was like, I don't know, mid-February, maybe the

11  first week in February.

12      So after that, like February the -- about

13  the last week in February or March the 1st, I met

14  with Greg Graham again, and he said he had met

15  with Judge Greene and the D.A. and they had

16  already consented to a non -- a judge only

17  trial.  Said he had talked with him and got with

18  the Judge and the D.A., and they had already

19  given me a judge only trial on -- I believe he

20  said he had talked with him on the 24th of

21  February, '99 or the 25th, somewhere in there,

22  but he said the Court had already consented.

23      So I came up for trial.  You know, the clerk

24  called me at home and Greg Graham had told me,

25  said I'm going to get all your witnesses when I

|    |   |                                                                   |
|----|---|-------------------------------------------------------------------|
| 1  |   | gave him the list.  He wrote them down.  He said                  |
| 2  |   | I'm going to get all your witnesses.  So when I                   |
| 3  |   | came to court on the, I believe it was the 16th                   |
| 4  |   | or 17th -- y'all excuse me if I get to talking                    |
| 5  |   | fast because I'm kind of nervous -- but when I                    |
| 6  |   | came to court that day before, Judge Greene asked                 |
| 7  |   | me, you know, he had called me before and said                    |
| 8  |   | why you was out there talking to the jury.  You                   |
| 9  |   | know, he got on me about talking to the jury.  He                 |
| 10 |   | said he was going to charge me --                                 |
| 11 | Q | No, no.  Let's go back to what you think that Mr.                 |
| 12 |   | Graham did not do that you felt like he should                    |
| 13 |   | have done.                                                        |
| 14 | A | He should have had my witnesses, Dr. Kim and                      |
| 15 |   | William and Mary Lindsey and Ann Grant.                           |
| 16 | Q | Anything else?                                                    |
| 17 | A | And he should have preserved my constitutional                    |
| 18 |   | right to have a trial of my choice, and I had                     |
| 19 |   | chose a judge only trial.                                         |
| 20 | Q | And what else?                                                   |
| 21 | A | And that Mr. Kelly didn't do his job, ineffective                 |
| 22 |   | assistance.                                                       |
| 23 | Q | What did he not do?                                              |
| 24 | A | He didn't investigate why Annette -- I told him                   |
| 25 |   | why Annette was saying what she was saying,                       |

41

1     because I wouldn't leave my wife for her.  I had

2     promised her I was going to leave my wife and me

3     and her were going to move to Washington, D.C.

4  Q  So how would he investigate that?

5  A  By talking to Dr. Kim.

6  Q  Who is Dr. Kim?

7  A  Dr. Robert Kim.  He's a dentist at the VA who had

8     made arrangements for -- had called to

9     Washington, D.C. to set up a job and everything

10    for Annette.

11  Q  And you told Mr. Greg Kelly about this?

12  A  No.  Mr. Greg Kelly never came down to see me,

13    never talked about it.  I told Mr. Graham about

14    it.

15  Q  So you told Mr. Graham about that?

16  A  Yes, sir.

17  Q  And who else did you want him to subpoena that he

18    didn't?

19  A  That was it as far as witnesses go.

20  Q  Now, were you ever in court and had either Judge

21    Johnson or Judge Greene indicate to you that you

22    were going to represent yourself and that Mr.

23    Graham was only going to be there to assist you

24    during the trial?

25  A  No, sir.  When Judge Greene told me to go down

```
 1          because I wouldn't leave my wife for her.  I had

 2          promised her I was going to leave my wife and me

 3          and her were going to move to Washington, D.C.

 4    Q     So how would he investigate that?

 5    A     By talking to Dr. Kim.

 6    Q     Who is Dr. Kim?

 7    A     Dr. Robert Kim.  He's a dentist at the VA who had

 8          made arrangements for -- had called to

 9          Washington, D.C. to set up a job and everything

10          for Annette.

11    Q     And you told Mr. Greg Kelly about this?

12    A     No.  Mr. Greg Kelly never came down to see me,

13          never talked about it.  I told Mr. Graham about

14          it.

15    Q     So you told Mr. Graham about that?

16    A     Yes, sir.

17    Q     And who else did you want him to subpoena that he

18          didn't?

19    A     That was it as far as witnesses go.

20    Q     Now, were you ever in court and had either Judge

21          Johnson or Judge Greene indicate to you that you

22          were going to represent yourself and that Mr.

23          Graham was only going to be there to assist you

24          during the trial?

25    A     No, sir.  When Judge Greene told me to go down
```

1      and see him, I thought he was appointed. I had

2      told Greg Graham I want him to handle the whole

3      thing because I ain't have no -- only thing I

4      gave at trial was a closing statement.

5  Q  So the Judge never told you that you were going

6      to represent yourself?

7  A  No, I didn't think I was representing myself.

8  Q  You never asked to?

9  A  No, sir.

10  Q  Never filed any papers with the Court

11      specifically requesting that you be allowed to

12      represent yourself?

13  A  I think when -- the only thing -- I think when

14      Judge Johnson was the trial judge, I did, but

15      that was because my attorney, Mr. Kelly, wasn't

16      here. But I didn't want to.

17  Q  Was that only at arraignment, or was it anytime

18      other than arraignment where you entered a plea

19      of not guilty?

20  A  It was only at arraignment.

21  Q  And anytime subsequent to that, did you ever tell

22      a judge that you did not want to -- that you

23      wanted to represent yourself and not have Mr.

24      Greg Graham represent you?

25  A  No, sir, never.

Q    Now, what do you say -- is there anything else
     that you say that Mr. Graham didn't do right?

A    Yes, sir.

Q    What's that?

A    He -- you know, he really just like -- okay.

Q    Just specifically, don't hem and haw.  State
     specifically what it is.

A    Okay.  Specifically, when Detective Russell,
     he -- okay.  Greg Graham, he had filed to
     suppress my statement, but when Detective Russell
     got on the stand, he didn't object to his
     statement, you know, preserving that issue for
     appellate court.  And when the rest of the
     witnesses got up there, he didn't object to
     nothing.  He preserving no issues for the appeal
     or appellate court.  He didn't preserve any of
     the issues.  He didn't object to any testimony,
     and I felt like that was -- because them people
     got up there and said things that weren't true.

Q    Did you ever ask any questions?

A    No, sir.

Q    You didn't ask any questions during the trial?

A    No, sir.

Q    Anything else that you feel Mr. Graham didn't do?

A    I felt like he didn't -- his opening statement he

1     didn't let the jury know -- you know, even though

2     I wasn't supposed to be at a jury trial, he

3     didn't let the jury know exactly what was going

4     on.  He didn't paint them a complete picture of

5     what was happening here; that this was a

6     relationship where this guy told this woman he

7     wasn't going to leave his wife for and she

8     hollered rape.

9  Q  Anything else?

10 A  And I felt like he didn't file a motion -- you

11    know, after the State had showed its evidence, I

12    felt like he didn't file a motion for acquittal

13    because the State never proved -- you know, the

14    evidence never showed the elements of rape, you

15    know.

16 Q  Anything else?

17 A  Yeah.  I felt like he could have -- he didn't

18    bring out or didn't cross-examine the witness,

19    you know, when the doctor said the tissue up

20    under her fingernail wasn't mine.  I mean, that

21    let you know that she was lying.

22 Q  I'm not asking you about the facts, Mr. Smith.

23    I'm asking you about what your attorney did not

24    do.  This is your chance to tell the Judge what

25    you say your attorney did not do.  That's all

1    you're here to tell about.

2    A    Yes, sir.  He didn't object to -- he didn't

3        interrogate or cross-examine the witness right.

4    Q    Anything else?

5    A    That's on Greg Graham.

6    Q    All right.  What about Rick Chancey?

7    A    I felt like Mr. Chancey didn't -- he didn't do

8        right because he didn't file ineffective

9        assistance on Greg Graham, because when I asked

10       him why he didn't file, and I did ask him, I went

11       to him and I said why you ain't filing nothing on

12       Greg Graham, and he said I didn't file nothing on

13       Greg Graham because you represented yourself.

14       Well, when he said that, I said well, my

15       transcript, I'll show you I didn't represent

16       myself.  I didn't ask a question, not one

17       witness.  I didn't cross-examine not one

18       witness.  Only thing I gave was a closing, a

19       little closing statement to tell them why.

20   Q    But what else did you say he didn't do?

21   A    And I felt like he didn't study the transcript to

22       see that Mr. Graham didn't preserve no issues for

23       the appellate court.

24   Q    Well, what issues do you feel that should have

25       been preserved that Mr. Chancey did not pick up

1        on?

2    A   The issues like Mr. Graham failing to object to

3        any testimony, not objecting to anything.  I felt

4        like him not preserving those issues.

5    Q   Anything else?

6    A   I felt like him not, Mr. Graham -- Mr. Chancey

7        was ineffective because he didn't file

8        ineffective assistance of counsel on Greg Graham

9        for not preserving my right to a non-jury trial

10       which I had asked for and which he said he had

11       got on February the 25th of '99.  He said that he

12       had met with the Judge and the D.A. and they had

13       consented to it.

14   Q   Anything else?

15   A   I felt like Mr. Chancey was ineffective because

16       he didn't file ineffective assistance on the

17       conviction.  Based on the conviction, the warrant

18       was unconstitutional, so I felt he was

19       ineffective in that area.

20   Q   Why was the warrant unconstitutional?

21   A   Well, because for one reason, it was signed by

22       Jay King who was the Chief of Police.  He wasn't

23       a victim.

24   Q   Anything else?

25   A   Let's see.

```
 1   Q   What about the motion for new trial.  Did you ask
 2       Mr. Chancey to file a motion for new trial?
 3   A   Yeah, based on those things that I just told you.
 4   Q   And did he tell you why he wouldn't do that?
 5   A   Yes, sir.
 6   Q   And what did he say?
 7   A   He said because I represented myself and he
 8       couldn't.
 9   Q   Anything else that you want to tell the Judge as
10       to why you feel like that you received
11       ineffective assistance of counsel?
12   A   I felt like -- I felt like I received ineffective
13       assistance of counsel because I know that Greg
14       Graham just -- he told me he was going to
15       represent me.  When I got here that morning, he
16       didn't have none of my witnesses here like the
17       list that I had gave, and I ain't never tell him
18       I was going to represent myself.  I know I
19       couldn't represent myself in the proceeding.  I
20       had saw that already.  And when Judge Greene sent
21       me down there, I went straight down there and I
22       told him, I said, Greg Graham, I need you to
23       represent me.  I gave him my witnesses, he took a
24       statement from me, and that was it.
25   Q   Anything else?
```

1    A    No, sir, that's it.

2              MR. COLLINS:  We rest on that, Your Honor.

3              THE COURT:  Do you have any questions, Mr.

4         Waldrep?

5                        CROSS-EXAMINATION

6    BY MR. WALDREP:

7    Q    Mr. Smith, the morning of trial did the Court

8         talk to you about you handling the case yourself?

9    A    No, sir.

10   Q    Court did not give you any instructions about

11        handling the case yourself or warnings or

12        anything of that nature?

13   A    No, sir.  The only thing, Mr. Smith had stood up

14        when he was talking to --

15   Q    You're referring to Mr. Max Smith of our office?

16   A    Yes, sir.  When he was, I guess, getting ready

17        to -- whatever you do when you have a whole jury

18        pool and he was getting ready to talk to them, he

19        told them I hope you don't hold it against me

20        that Mr. Smith is representing himself.  I told

21        Greg Graham I ain't representing myself.  I don't

22        know why he made that statement.

23   Q    All right.  Who picked the jury?

24   A    Mr. Smith and Mr. Graham.

25   Q    When you got in here and the trial got started,

49

1    who made the opening statement?

2  A    Greg Graham, not me.

3  Q    Okay. And who talked to any of the witnesses or

4    cross-examined the witnesses?

5  A    Greg Graham cross-examined every witness.

6  Q    So he fully participated in a full trial?

7  A    Yes, sir.

8  Q    So if the Court -- if the record shows that the

9    Court warned you about not handling your own

10    trial, the record would be wrong?

11  A    No, sir. The record wouldn't be wrong. It would

12    just be maybe I didn't understand. I thought

13    maybe that might have been something they read

14    before they start court all the time.

15  Q    So what you're saying is Greg Graham actually did

16    conduct the trial?

17  A    Yes, sir. I mean, I know the transcript would

18    show that I didn't cross-examine nobody. The

19    only thing I gave was one little statement at the

20    end, a closing statement at the end.

21  Q    Did you tell Mr. Graham that you thought you had

22    a First Amendment freedom of religion defense

23    here about you couldn't be convicted by only one

24    witness?

25  A    Well, I told him what the scripture said, but

1      that's the way I live my life.  I try to live my

2      life by the scriptures.  So I told him, you know,

3      that's what the scripture said, Deuteronomy

4      19:15.

5  Q   Did he tell you that's not what the law said?

6  A   No, he didn't tell me that.

7  Q   Okay.  When you got through with the trial, were

8      you satisfied with what Mr. Graham had done for

9      you?

10 A   No, sir.

11 Q   When you hired Mr. Chancey, did you tell him

12     about all the things that you were unsatisfied

13     with with Mr. Graham's performance?

14 A   Yes, sir.

15 Q   So you actually went over that in detail with

16     him?

17 A   I told him -- yes, sir.  I told him everything,

18     pretty much the same list that I got here, about

19     Mr. Graham.

20 Q   From the time of the charge until the time of the

21     trial, approximately how much time went by?

22 A   From the time of the charge to the time of the

23     trial, I'd say maybe close to three years.

24 Q   During that time, how long did Mr. Graham

25     represent you?

1   A   I say about two, maybe three months.

2   Q   Did you receive any communication from the

3       District Attorney's office about entering a plea?

4   A   Yeah. I think when I came up, me and Mr. Max

5       Smith from the D.A.'s office, we came before

6       Judge Johnson, Judge Wayne Johnson, and he

7       offered me a plea at that time, which I turned

8       down.

9   Q   Would you have considered entering a plea to

10      anything in this case?

11  A   If the charges were -- if they had charged me

12      with what actually happened.

13  Q   Did you -- well, what charge would that be, Mr.

14      Smith?

15  A   I don't know, sir, but I'm saying -- what I'm

16      saying is I didn't -- I know I didn't rape

17      Annette, so how could I accept what they was

18      offering me.

19  Q   So it was your intention fully from the beginning

20      to go to trial?

21  A   If they were going to charge me with rape, yes,

22      sir.

23  Q   When you got here that day and you realized that

24      Mr. Graham had not gotten your witnesses here,

25      did you voice any objection to the Judge about

1       going to trial without your witnesses here?

2  A   I didn't know until after the State had finished

3       that he didn't have my witnesses here.

4  Q   Did you voice to the Judge once you saw a jury

5       out here that you actually wanted what's called a

6       bench trial or a trial before the Judge only?

7  A   I told -- I told Greg Graham and Jamie -- Jamie

8       Graham was sitting right here.  I said I asked

9       for -- I told them just like this, I thought you

10      said that the Court had consented to a judge only

11      trial.

12  Q   Did you bring that point up to the Judge?

13  A   No, I didn't bring it up because every time I got

14      ready to say so, Greg would tell me don't talk in

15      court.  Judge don't want me to say nothing.

16         MR. WALDREP:  Nothing further, Your Honor.

17         THE COURT:  Anything further on behalf of

18     Mr. Smith?

19         MR. COLLINS:  No, Your Honor.

20                EXAMINATION

21  BY THE COURT:

22  Q   Mr. Smith, did you appear in front of the

23      Honorable Wayne Johnson on April the 29th of

24      1997?

25  A   Yes, sir, I did.

53

1  Q  And there is an order in the court that says the
2     Defendant was before the Court to determine if he
3     had retained an attorney, wished a
4     court-appointed attorney, or appear pro se.
5     Defendant stated that he wished to represent
6     himself in these proceedings.  The Court advised
7     him of his right to be represented by counsel,
8     and the Defendant voluntarily and knowingly
9     refused the appointment of an attorney.  The
10    indictment was read to the Defendant and the
11    Defendant entered a plea of not guilty.
12        Defendant was informed by the Court that all
13    pleadings and motions should be filed within
14    three weeks.
15        Did you, in fact, file pleadings in this
16    case on your own behalf?
17 A  What's a pleading, sir?
18 Q  Well, a request or motion.
19 A  I had -- like after we had met with Judge
20    Johnson, I did, because like I say --
21 Q  And that was on May the 20th of 1997, you filed a
22    motion.  I file a motion for all discovery and
23    testimony of said witnesses, also all statements
24    from any and all experts?
25 A  Yes, sir.

Q    And I file a motion for a change of venue.  I
     also move that Ms. Thomas adhere to a
     psychological evaluation.  I also motion that all
     statements from bond hearings become available
     and statements from Circuit Court from December
     of 1995 and February of 1996 be made available.
         Were there two hearings on that particular
     motion that you filed on your own behalf?

A    Were there two hearings?

Q    Right.

A    Yeah, we had a hearing.

Q    And you appeared and represented yourself in that
     matter without advice of counsel; did you not?

A    Yes, sir, I did.

Q    And was that continued for another hearing date?

A    I don't recollect, sir.  I don't think so.

Q    Did you come in and agree to drop your request
     that Ms. Thomas have a psychological evaluation?

A    I think that was on the same day, I believe,
     Judge.

Q    Were you arrested on a writ for a failure to
     appear in this court in January of 1999?

A    No, sir, I wasn't arrested.  I came to your
     office and what happened, they had a docket call
     where I had told the bond company I had to go to

1        Washington for a retirement hearing.  I had a

2        hearing on my retirement disability, and I told

3        the bond company I had to go to Washington.

4        While I was gone on the 19th, the Court had a

5        docket hearing and I wasn't here, so when I got

6        back --

7   Q    And was another hearing scheduled for you on

8        February the 16th of 1999 at 2:30 in the

9        afternoon?

10  A    I'm not sure, sir.

11  Q    Did you appear in court in front of me?

12  A    I'm not sure, sir.

13  Q    And did I then ask you about did you have

14       representation?

15  A    Yes, sir.  I remember that now.

16  Q    And did you decline representation on that

17       occasion?

18  A    I didn't decline.  You told me you were going to

19       appoint Greg Graham to help me and told me to go

20       down there and see him, and that's what -- as

21       soon as you told me that, Judge Greene, I went on

22       down there and saw him.

23  Q    Well, I have a handwritten order in the file that

24       states that Melvin Smith, Honorable G. Graham

25       appointed to advise Defendant if he seeks

|    |   |                                                            |
|----|---|------------------------------------------------------------|
| 1  |   | advice.  Defendant declined appointment of                 |
| 2  |   | attorney.                                                  |
| 3  | A | Yeah.  And if I recollect right what you said,             |
| 4  |   | Judge, if you want him to represent you, go on             |
| 5  |   | down there to his office.                                  |
| 6  | Q | Well, do you also remember I advised you that you          |
| 7  |   | didn't need to represent yourself, you needed to           |
| 8  |   | have an attorney appointed to represent you?               |
| 9  | A | Yeah.                                                      |
| 10 | Q | And you declined to have an attorney, even after           |
| 11 |   | I advised you not to do that?                              |
| 12 | A | When you told me that, Judge Greene, I went down           |
| 13 |   | there to see him.  I went right down there.                |
| 14 | Q | And then I appointed him to advise you and be              |
| 15 |   | there to advise you since you were going to                |
| 16 |   | represent yourself.  Isn't that what I told you?           |
| 17 | A | Sir, I thought you said -- now, my understanding           |
| 18 |   | was you said if you want him to represent you, go          |
| 19 |   | down to his office, and that's what I did.  Maybe          |
| 20 |   | I got a misunderstanding, but I thought you said           |
| 21 |   | if you want him to represent you, go to his                |
| 22 |   | office.                                                    |
| 23 | Q | Well, didn't you, in fact, wait until the day of           |
| 24 |   | the trial to tell Mr. Graham that I've decided             |
| 25 |   | I'm going to let you handle it?                            |

A    No, sir. I told him the same day I went down
     there. He had his tape recorder. I told him
     right there the same day I went down there, Judge
     Greene, and I gave him all my witnesses and told
     him, you know.

Q    Well, my recollection is from the day that the
     case was tried and was called for trial, as we
     called your case and we started with the
     proceeding of it, Mr. Graham came and approached
     the bench and said that you had now changed your
     mind and you wanted him to handle the case?

A    I told him that initially, sir. I declare, I
     stand before God, I told him that from jump one
     that I wanted. I know I couldn't handle this,
     Judge Greene.

Q    When did you tell Mr. Chancey that you were
     dissatisfied with the legal representation you
     had received from Mr. Graham?

A    I told him that in -- when I got -- when I went
     to his office. I told him that on three or four
     occasions.

Q    Did Mr. Chancey indicate that he didn't have that
     conversation or did not hear that from you?

A    He said that, but what --

Q    Are you saying Mr. Chancey is not telling the

58

1       truth or his statement is incorrect?

2  A   What I'm saying, Judge Greene, maybe he don't

3       recollect, but he told me the reason he couldn't

4       file ineffective assistance on -- this is exactly

5       what he said.  He said --

6  Q   Well, when did you learn about ineffective

7       assistance of counsel; was that while you were in

8       prison or before you went to the prison?

9  A   Well, I told Mr. Graham about it before -- I

10      mean, Mr. Chancey about it before I went to

11      prison, sir.

12  Q   Well, who told you about ineffective assistance

13      of counsel?

14  A   The bonding company.

15  Q   The bonding company?

16  A   Yes, sir.

17  Q   Who in the bonding company told you about

18      ineffective assistance of counsel?

19  A   Patrick Weeks, yes, sir.

20  Q   And when was that he told you, after your

21      conviction?

22  A   Yes, sir, when they bond me out.  When I had got

23      out on bond.

24  Q   So Mr. Weeks advised you on the legal matter that

25      you had ineffective assistance of counsel?

```
 1  A   No, sir.  I was explaining to him exactly what
 2      happened at trial.  I was calling it incompetent
 3      counsel.  He said what you mean ineffective.  He
 4      just corrected the language, but I was calling it
 5      incompetent of the counsel.  And he told me well,
 6      make sure if you ain't satisfied, make sure you
 7      appeal or either Mr. Chancey file ineffective
 8      assistance counsel on him, and that's what I
 9      did.  And I did --
10  Q   And you claim that you told Mr. Chancey you
11      needed to assert a claim of ineffective
12      assistance of counsel on appeal?
13  A   No, sir.  I didn't tell -- I didn't say I told
14      him he needed to assert.  I told him I wasn't
15      satisfied with that, and he told me he couldn't
16      file ineffective.  He's the one that said he
17      couldn't file ineffective assistance.
18  Q   Did you say specifically what you were
19      dissatisfied with at the time?
20  A   Yes, sir.
21  Q   And what was that?
22  A   How Greg Graham represented me.
23  Q   What specifically did he not do?
24  A   He didn't call my witnesses in.
25  Q   Well, did those witnesses witness you having
```

60

1    consensual sex with the alleged victim in this

2    case?

3  A  No, but they --

4  Q  What would you think they would have testified

5    to?

6  A  They would have testified that there was a

7    relationship going on and that we were going to

8    move to Washington, D.C, and that that was one

9    reason -- that was the very reason I was saying

10   from the jump that that's what they were going to

11   testify.  They were going to rebut her testimony,

12   sir, that none of this was going on.

13 Q  Well, up until the time of February the 16th, had

14   you subpoenaed any of those witnesses when you

15   were representing yourself?

16 A  I had filed a motion with that one on the --

17   before Judge Greene.  I asked for -- I mean,

18   Judge Johnson.  I had asked for a subpoena for

19   the witnesses that I desired.

20 Q  And you made that request to the clerk's office?

21 A  I filed -- I put it on that same piece of paper,

22   sir.

23 Q  Is that the May 20th piece of paper you're

24   talking about?

25 A  Yes, sir.  The little old -- I think it was a

| | | |
|---|---|---|
| 1 | | little half a sheet of paper.  It wasn't on a |
| 2 | | whole sheet. |
| 3 | Q | Let's see. |
| 4 | A | If the original is in there, it would be on that |
| 5 | | original piece of paper. |
| 6 | Q | I just read that out awhile ago.  There is a |
| 7 | | handwritten statement by you in here dated May |
| 8 | | the 20th.  Motions.  I file a motion for all |
| 9 | | discovery and testimony of said witnesses, also |
| 10 | | all statements from any and all experts.  I file |
| 11 | | a motion for a change of venue due to the fact |
| 12 | | that the alleged victim has family members who |
| 13 | | have worked for the Court, Russell County |
| 14 | | namely.  I also move that Ms. Thomas adhere to a |
| 15 | | psychological evaluation.  I also motion that all |
| 16 | | statements from bond hearings become available |
| 17 | | and statements from Circuit Court from December |
| 18 | | of 1995 and February of 1996 be made available. |
| 19 | | Thank you.  Melvin Smith.  Signed Melvin Smith. |
| 20 | | And that was the entire writing on that |
| 21 | | document. |
| 22 | A | Okay.  I thought I had put -- |
| 23 | Q | So that would have been incorrect that you put in |
| 24 | | the names of witnesses on that document; is that |
| 25 | | correct? |

1  A    I didn't put the names.  I just asked for a

2       subpoena for witnesses.

3  Q    Well, the witnesses were the names of the State's

4       witnesses is what you're asking for, not for your

5       witnesses in a motion to discovery is what you

6       were doing in that occasion.

7  A    Yes, sir.  I didn't know what I was doing, Judge.

8  Q    Okay.

9  A    I was asking for -- I had -- like I said, sir, I

10      gave Greg Graham a list of witnesses.  I gave him

11      Dr. Robert Kim, Mr. William Lindsey, Ms. Mary

12      Lindsey, Ms. Ann Grant.  Sir, you know, I clearly

13      gave it to him.  That's all I can say, sir.  I

14      know I'm telling the truth.

15           THE COURT:  Anything further from either

16      party?

17           MR. WALDREP:  No further witnesses, Your

18      Honor.

19           MR. COLLINS:  None, Your Honor.

20           THE COURT:  The Court will take the matter

21      under advisement and will notify the parties of

22      my decision.  Thank you.

23           MR. COLLINS:  Thank you, Your Honor.

24              (End of proceedings.)

25

CERTIFICATE OF COMPLETION OF REPORTER'S TRANSCRIPT

MELVIN SMITH,

      Appellant

      v.

STATE OF ALABAMA

TO: The Clerk of the Court of Criminal Appeals of Alabama

On Appeal From the Circuit Court of Russell County

CASE NO. CC 97-95.60

DATE OF NOTICE OF APPEAL: March 12, 2002

     I certify that I have this date completed and filed with the clerk of the trial court the original of a true and correct transcript of the proceedings designated in the Reporter's Transcript Order. All pages are numbered serially, in the upper right corner of each page, prefaced by a copy of the Reporter's Transcript Order (Page No. 1) and an index, and ending with the number appearing in the upper right corner of this certificate.

     I certify that a copy of this certificate is this date being served on counsel for defendant, the Attorney General of Alabama, and the District Attorney, along with a copy of the index.

     DATED this 2nd day of July, 2002.

_____

Linda S. Wilson
Official Court Reporter