IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MELVIN SMITH,                           )
AIS #204766,                            )
                                        )
           Petitioner,                  )
                                        )
    v.                                  )        CASE NO. 3:05-CV-470-MHT
                                        )              [WO]
                                        )
ARNOLD HOLT, et al.,                    )
                                        )
           Respondents.                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief

filed by Melvin Smith ["Smith"], a state inmate, on May 15, 2005.  In this petition, Smith

challenges a conviction for first degree rape imposed upon him by the Circuit Court of

Russell County, Alabama on March 18, 1999.  The trial court sentenced Smith to twenty

years imprisonment for this conviction.

## II.  PROCEDURAL HISTORY

In October of 1996, law enforcement officials arrested Smith on a charge of first

degree rape and placed him the Russell County Jail on a bond of $50,000.  On January 9,

1997 counsel of record for Smith, Gregory Kelly, filed a motion for bond reduction.  On

January 10, 1997, a Russell County grand jury issued an indictment against Smith for first

degree rape. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 13-14.  The court thereafter

denied Smith's motion for bond reduction. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 12. Smith nevertheless bonded out of jail on January 28, 1997.

Based on Smith's February 7, 1997 affidavit of substantial hardship, the court on February 11, 2007 appointed L. Joel Collins to represent Smith. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 20. On March 18, 1997, the court arraigned Smith at which time he entered a plea of not guilty. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 21. The court noted that Smith "shall appear in court on April 29, 1997 ... to report if he has retained an attorney." *Id.* "Defendant was before the court [on the scheduled date] to determine if he had retained an attorney, wished a court appointed attorney, or [sought to] appear pro se. ***Defendant stated that he wished to represent himself in these proceedings. The court advised him of his right to be represented by counsel and defendant voluntarily and knowingly refused the appointment of an attorney***. The indictment was read to defendant and defendant entered a plea of not guilty." *Id.* at 25 (emphasis added).

Smith, acting *pro se*, filed various motions with the court on May 20, 1997. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 26. Specifically, Smith motioned the court for discovery from the State, a change of venue, a psychological evaluation of the victim, statements made during the bond hearing and production of previous statements before the court in December of 1995 and February of 1996. *Id.* On May 29, 1997, the court entered an order granting the discovery motion filed by Smith. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 28. After a hearing on the remaining motions submitted by

2

Smith, at which time Smith withdrew his request for a psychological evaluation of the victim, the court issued an order denying these motions to the extent not covered by its previous discovery order.  *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 29.

On February 16, 1999, the court appointed "Greg Graham ... to assist defendant in presenting his case."  *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 42.  As to the actions of the court with respect to the eventual appointment of counsel to represent Smith, the court noted at the evidentiary hearing on Smith's first Rule 32 petition that:

> .... [Smith] was advised by the Court that he needed legal counsel.  He declined it, and the Court ordered legal counsel to be appointed to represent him to be present at such time as if he needed advice and to assist him, and that was done in open court prior to the trial.  In fact, that was done twice.
>
> [Smith] was advised of his right to have legal counsel by [Judge] Wayne Johnson on April the 29th of 1997, and Mr. Smith declined legal counsel on that date as well.  There was twice that he appeared in court and declined legal counsel, and on the last occasion I specifically refused to allow him to decline legal counsel and appointed counsel to assist him at the trial.  And there is a handwritten note by the Court in the file stating that counsel was appointed to assist him.

*Respondents' Exhibit 6 - Court Doc. No. 17-9* at 58-59 (Rule 32 Transcript at 16-17).[1]  At a subsequent point in this Rule 32 evidentiary hearing, the court advised "that Mr. Graham had been appointed to represent Mr. Smith over Mr. Smith's objections to having legal counsel to represent him" at which time appellate counsel acknowledged "that at some point during the trial Mr. Smith basically handed everything over to Mr. Graham...."  *Id.*

---

[1] Respondents' Exhibits 17-9 contains a copy of the transcript of Smith's Rule 32 hearing.  The page numbers referenced are those of each exhibit as entered on the docket of this case with the actual pages of the Rule 32 hearing transcript noted in parentheses.

at 78-79 (Rule 32 Transcript at 35-36).  In his testimony to the court, Smith conceded that the court "appointed Greg Graham" to represent him and maintained he advised the attorney at their initial meeting to handle his case.  *Id*. at 81 (Rule 32 Transcript at 38) ("[W]hen I came before Judge Greene and he appointed Greg Graham, immediately I went to Greg Graham and I told him ... I can't handle this.  I need you to handle it.  I mean, that's the first thing what I told him....  [Graham] said, yeah, they appointed me to assist you.  I said me and my wife already talked about it and I said, you know, I can't handle this, ... would you just handle everything, and he said okay.").

Trial counsel disputes Smith's version of events and argues that Smith, despite counsel's advice to the contrary, declined assistance and insisted on representing himself. *Id*. at 46-48 (Rule 32 Transcript at 4-6) (After counsel's appointment by the court, "Mr. Smith came ... and we met, I think on two occasions....  Mr. Smith indicated ... pretty much that he wanted to handle the case himself....  [At the second meeting,] we talked about [the wisdom of him handling his own case and] I didn't advise that he handle his own case.... [H]e just basically told me that ... it was consensual sex.").  Despite the discrepancies in the factual accounts provided by Smith and trial counsel, it is undisputed that prior to the submission of testimony at trial Smith declined to represent himself and allowed appointed counsel to conduct the trial proceeding.  *Id*. at 101 (Rule 32 Transcript at 57) (The court's "recollection is from the day that the case was tried and was called for trial, as we called your case and we started with the proceeding of it, Mr. Graham came and approached the

bench and said that you had now changed your mind and you wanted him to handle the case[.]"). Thus, the record establishes that upon such notification to counsel, counsel thereafter undertook representation of Smith at trial. Specifically, other than Smith providing the opening statement and a short closing statement which occurred in addition to the closing argument made by counsel, counsel filed pre-trial motions, received and analyzed discovery materials, submitted a witness list, selected the jury, examined/cross-examined all witnesses, interjected objections, requested a directed verdict at the close of the State's case and presented a closing argument to the jury.

During the trial of this case, the victim, Annette Thomas, testified that on the morning of October 25, 1996, Smith came by her home under the guise of completing payment to her for providing him transportation. *Respondents' Exhibit 1 - Court Doc. No. 17-3* at 24-25 (Trial Transcript at 25-26).[2] Upon entering Ms. Thomas' residence, Smith pushed the victim into the bedroom at which time a struggle ensued. *Id.* at 25 (Trial Transcript at 26) ("... I fought as hard as I could with him and I screamed. He told me to shut up."). The relevant testimony of the victim upon direct examination reads as follows:

> A. No [one was at home with me and Melvin] knew the schedule. So after he came in, he pushed me on the bed and I fought him, and he told me to shut up and then he took out a knife and told me to look, look what I got, and then I couldn't do anything else. And we fought and we fought until he put me in a position where I could not move, which is like a corner which was

---

[2]Respondents' Exhibits 17-2, 17-3 and 17-4 comprise a copy of the trial record which contains the transcript of Smith's rape trial. The page numbers referenced are those of each exhibit as entered on the docket of this case with the actual pages of the trial transcript noted in parentheses.

the bed, then the wall against the bed, and I couldn't go anywhere.

Q.  And you said that he had a knife?

A.  Yes.

Q.  Do you know what kind of knife it was?

A.  I think it was like a pocketknife.

Q.  And he showed that to you?

A.  Yes.

Q.  Did he say anything to you?

A.  He just told me to shut up and look what I have.

Q.  And then what happened?

A.  And like I said, we fought.  And he pushed me on the floor, I was on the floor, and then he took the bottom part of my clothing off and then he had oral sex with me and then he raped me.

***

Q.  Now, Ms. Thomas, when -- you said that you resisted Mr. Smith from this assault; is that correct?

A.  Yes.

Q.  What did you do to resist him?

A.  I hit him.

Q.  Okay.  Did you scratch him?

A.  I probably did.  I don't know.  I can't remember.

Q.  Did he hit you in any kind of way?

A.  Yes.

Q.  Where did he hit you?

A.  He gave me a black eye.  He hit me in my face.

Q.  Did you have any kind of markings on you --

A.  Yeah.

Q.  -- as a result of this assault?

A.  I still have the cut on my left arm -- my left hand.

***

Q.  Now, Ms. Thomas, I'm going to ask you this question, I don't mean to embarrass, I know it's a sensitive matter, but I'm going to ask you this question anyway.  When you said that he raped you, when Mr. Smith raped you, do you mean that he had sexual intercourse with you?

A.  Yes.

Q.  And you mean sexual intercourse, do you mean that he placed his penis in your vagina?

A.  Yes.

***

Q.  And an ambulance ... arrived?

A.  Right.

Q.  Were you taken to the hospital?

A.  Right.

7

*Respondents' Exhibit 1 - Court Doc. No. 17-3* at 25-31 (Trial Transcript at 26-32). Witnesses who observed the victim immediately after this assault testified that she "was ... crying and very hysterical.... [H]er face was swollen, around her eye was swollen, and she had a black eye and some scratches on her hand." *Id.* at 55-56 (Trail Transcript at 56-57). The physician who examined the victim upon her arrival at the hospital testified that when he "walked in the room ... she was in the fetal position and just really traumatized.... She just -- she couldn't talk hardly. She was very traumatized. I walked in and she was in the fetal position ... it's something that people do when they've just had something really bad happen to them, and you almost -- basically, it's your regression type of thing because they don't know how to react hardly.... [I]t was obvious that something really bad had happened to her.... [I noted] [a] bruising contusion on the left side of the head around the eye, near the eye, and then she had a fingernail broken, and then I believe her right posterior hand had a bruise on it...." *Respondents' Exhibit 1 - Court Doc. No. 17-3* at 95-96 (Trial Transcript at 96-97). The attending physician further stated that based on Ms. Thomas' demeanor and injuries, it was his professional opinion that she had been subjected to forcible sexual intercourse. *Id.* at 98 (Trial Transcript at 99).

Smith testified in his own defense and provided his version of the events occurring on October 25, 1996. Smith was rational and coherent at all times, including his opening and closing statements to the jury; indeed, Smith participated in his defense in a reasonable manner making logical arguments to the jury supporting his defense of consensual sexual

8

intercourse.  In his statements to the jury, Smith clearly demonstrated his understanding of the charges against him and the nature of the proceedings in which he was involved.  He likewise demonstrated his competence during his trial testimony.  His actions before the trial court "appear[] rational in every way; he knew where he was; he knew why he was in court; he stated his contentions plainly; the contentions were not absurd; and he responded directly to questions" posed by his attorney and the prosecutor.  *Smith v. Newsome*, 876 F.2d 1461, 1465-1466 (11th Cir. 1989).  Smith's trial testimony consisted of coherent statements and precise details regarding the alleged offense.

> A.  I went to Annette Thomas' house and knocked on the door.  She let me in.  I went in and we started talking.  She closed the door, and like I said, we started talking for a while and I started touching her, and she pulled me in the bedroom and we had sexual intercourse.  Before we had sexual intercourse,  [I performed oral sex on her].

> ***

> A.  After we finished oral sex and we had sexual intercourse, I was telling her, you know, about that -- since I had been off my job, that I had spent a lot of time with my wife and that me and my wife had patched everything up and that we were going to get back together, so I wasn't going to see [Annette] anymore, I wasn't going to be messing around on my wife no more, because [Annette and I] had made some plans to go to Washington, D.C.  I was going to leave my wife and [Annette and I] were going to move to Washington, D.C. and all that.

> ***

> A.  And she got mad and she slapped me, and I hit her.  When I hit her, she jumped up and saying I'm going to get you, just like that, so I just put my clothes on and left and that was it....

*Respondents' Exhibit 1 - Court Doc. No. 17-4* at 3-4 (Trial Transcript at 105-106). Smith also recounted his childhood friendship with Ms. Thomas, chronicled the details of an alleged on-going sexual relationship with her and presented testimony of specific actions occurring throughout this relationship. During cross-examination, Smith acknowledged he hit the victim after she slapped him. *Id.* at 19 (Trial Transcript at 121). After hearing all of the evidence in the case, the jury found Smith guilty of first degree rape.

Smith, represented by counsel, filed a direct appeal of his rape conviction in which he raised the following claims for relief: (1) The trial court erred in denying petitioner's motion to suppress his statement and allowing the case to proceed to trial without conducting a hearing on said motion; (2) The trial court erroneously denied petitioner's motion for continuance of trial; and (3) The trial court improperly disregarded petitioner's motion to restrict use of the word "rape" and allowed the case to proceed to trial without a hearing on this motion. *Respondents' Exhibit 2 - Court Doc. No. 17-5 -- Smith's Brief on Direct Appeal* at 8-11.

On January 28, 2000, the Alabama Court of Criminal Appeals affirmed Smith's rape conviction in a memorandum opinion. *Respondents' Exhibit 4 - Court Doc. No. 17-7 -- Memorandum Opinion on Direct Appeal*. The appellate court subsequently denied Smith's application for rehearing and the Alabama Supreme Court denied his petition for writ of certiorari on May 12, 2000.

On July 10, 2001, Smith, while represented by counsel, filed a state post-conviction

petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Russell County, Alabama in which he argued that the Constitution of the United States or the Constitution of the State of Alabama requires a new trial, sentencing proceeding or other relief because:  (1) The conviction infringed upon his First Amendment right to freedom of religion as the Bible does not permit conviction upon the testimony of merely one person; (2) Pre-trial, trial and appellate counsel provided ineffective assistance; and (3) The conviction was obtained by use of an unconstitutional arrest warrant.[3]    On August 22, 2001, the Circuit Court of Russell County entered an order summarily denying Smith relief on the majority of his claims.  Specifically, the court determined that all of Smith's claims, with the exception of his claims that appellate counsel provided ineffective assistance when he failed to file a motion for new trial on the basis of ineffective assistance of trial counsel and failed to file a motion for additional time to appeal, were procedurally barred from review as "[t]hese claims could have [been], but were not, raised at trial or on appeal...."  *Respondents' Exhibit 6 - Court Doc. No. 17-9* at 23.  The court scheduled an evidentiary hearing on the preserved claims of ineffective assistance of appellate counsel regarding appellate counsel's failure to file a motion for new trial on the basis of ineffective assistance of trial counsel thereby not preserving this issue for appeal and his failure to file a motion for additional time to study the trial

---

[3]Joel L. Collins verified and filed this state post-conviction petition for Smith.  *Respondents' Exhibit 6 (Smith's First Rule 32 Petition) - Court Doc. No. 17-9* at 15.

transcript.  The Rule 32 hearing transpired on October 10, 2001.

The testimony elicited at this post-conviction hearing demonstrated that on two separate occasions prior to trial the court advised Smith of his right to counsel and Smith knowingly and voluntarily declined the right.  Nevertheless, during the second pre-trial hearing on the matter regarding representation by counsel, the trial court appointed "Greg Graham ... to assist defendant in presenting his case." *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 42.  During the Rule 32 hearing, trial counsel testified that although he attempted to represent Smith and advised him of the perils surrounding self-representation, Smith at the initial consultation "indicated pretty much that he wanted to handle the case himself....  [At the second meeting,] [w]e talked about the case.  We didn't talk about it a whole lot because Melvin informed me that ... he had been praying to God or meditating to God for two days and that it was in God's hands, and that there wasn't a whole lot we could -- basically, from what I understood from him, there wasn't a whole lot we could do preparation wise and that he planned on basically handling the case most of the way.... [H]e just basically told me that the nature of their relationship was ... they were dating and that ... it was consensual sex.  [Upon counsel informing Smith of the evidence within the State's possession,] he was kind of indifferent." *Respondents' Exhibit 6 - Court Doc. No. 17-9* at 47-49 (Rule 32 Transcript at 5-7).  Appellate counsel likewise testified that Smith's "main concern was that he wasn't guilty, that this was a consensual matter and he just was displeased and dissatisfied with the verdict; that this was a consensual matter and he

couldn't understand how the jury couldn't see that..." *Id.* at 63 (Rule 32 Transcript at 20). In discussing possible issues for appeal, Smith "kept bringing up issues that, hey, he was not guilty, that he didn't think that he should have been found guilty of this offense ... -- in my opinion, from reviewing the record, there was evidence presented by the State that a rape occurred, and so I think there was sufficient evidence ... for a jury, a reasonable jury, to come back with a guilty verdict.   So ... I didn't raise [an issue challenging the sufficiency of the evidence on appeal]." *Id.* at 66 (Rule 32 Transcript at 23).  At some point, Smith advised appellate counsel of "his mental history ... [indicating] he had been previously diagnosed with a mental illness." *Id.* at 69 (Rule 32 Transcript at 26). However, appellate counsel stated that in "[s]peaking with [Smith] ... in person, he was very coherent...." *Id.* at 72 (Rule 32 Transcript at 29).  Appellate counsel conceded he based the appeal on representations made by his client and Smith's "main defense was to me that I'm not guilty and the jury shouldn't have returned a guilty verdict...." *Id.* at 74 (Rule 32 Transcript at 31).  Counsel likewise admitted that under all of the facts available to him he did not believe an argument regarding Smith's mental capacity would warrant relief. *Id.* at 75-76 (Rule 32 Transcript at 32-33).  Although counsel intimated if he had been Smith's trial counsel ***and*** possessed the facts provided to him by Smith he "probably would have" filed a motion addressing mental capacity but acknowledged likely denial of such a motion "because Melvin seemed to be very well aware and remembered what happened because he said it was all consensual." *Id.* at 76 (Rule 32 Transcript at 33).

13

At this hearing, the trial court likewise noted "an order in the court [record dated April 29, 1997] that says the Defendant was before the Court to determine if he had retained an attorney, wished a court-appointed attorney, or [sought to] appear pro se. Defendant stated that he wised to represent himself....  The Court advised him of his right to be represented by counsel, and the Defendant knowingly and voluntarily refused the appointment of an attorney...." *Respondents' Exhibit 6 - Court Doc. No. 17-9* at 97 (Rule 32 Transcript at 53).  The trial court likewise noted counsel had been appointed on February 16, 1999 to represent Smith and that such action occurred despite Smith seeking to represent himself. *Id.* at 99-100 (Rule 32 Transcript at 55-56).  The court also opined that Smith did "in fact, wait until the day of the trial to tell Mr. Graham that I've decided I'm going to let you handle [this case]....  [M]y recollection is from the day that the case was tried and was called for trial, as we called your case and we started with the proceeding of it, Mr. Graham came and approached the bench and said that you had now changed your mind and you wanted him to handle the case[.]"  *Id.* at 100-101 (Rule 32 Transcript at 56-57).  When Smith sought to interject evidence with regard to "his mental ability or capability[,]" the  court determined that this "issue is not before the Court" as Smith failed to raise it in his petition.  *Id.* at 77 (Rule 32 Transcript at 34).

Smith testified before the court during the Rule 32 hearing.  He again presented rational arguments and recounted facts relevant to his case.  On February 14, 2002, the trial court entered an order denying Smith's allegations of ineffective assistance of appellate

counsel. This order reads, in pertinent part, as follows:

> On August 22, 2001[,] this Court previously dismissed all of the
> Petitioner's claim[s] except his claim, which alleged ineffective assistance
> of appellate counsel. Petitioner claimed that [appellate counsel] failed to file
> a motion for new trial on the basis of ineffective assistance of trial counsel
> and failed to file a motion for additional time to better prepare an appellate
> argument.
>
> The Court finds from the evidence that the Petitioner, Melvin Smith,
> knowingly and voluntarily waived assistance of counsel. He appeared before
> [circuit judge] Wayne Johnson on April 29, 1997 and after being advised of
> his right to be represented by counsel, he voluntarily refused the appointment
> of counsel. On February [16], 1999, Petitioner appeared in the Circuit Court
> of Russell County and again voluntarily waived his right to be represented
> by counsel. The Court appointed the Hon. Greg Graham to advise the
> Defendant during trial should the Defendant decide to seek legal advice. Mr.
> Graham did participate in the trial and assisted the Defendant, Melvin Smith,
> but the failure to investigate the Defendant's case or interview witnesses is
> due directly to the Petitioner's insistence on representing himself.
>
> [Appellate counsel] cannot be held as rendering ineffective legal
> assistance on appeal. A failure to raise the issue of ineffective assistance of
> counsel is due directly to the Defendant's insistence that he not be
> represented by counsel. It is therefore ORDERED that the petition for relief
> is hereby dismissed.

*Respondents' Exhibit 6 - Court Doc. No. 17-9* at 26-27.

Smith proceeded *pro se* on appeal from the denial of his Rule 32 petition. In this

appeal, Smith made the following arguments: (1) "[T]he Rule 32 hearing failed to properly

address the mental condition of Smith at the time he was allowed to represent himself at

trial[;]" (2) The information/complaint did not comport with state law; (3) The indictment

is void of legal or factual specificity; (4) The indictment fails to charge an offense; (5) The

State failed to conduct a competency hearing in violation of the Americans with

15

Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and (6) "[T]he State ... abused its discretion allowing the prosecution to make an end-run around the jurisdictional prerequisite of" a formal accusation by indictment, information or complaint as required by state law. *Respondents' Exhibit 7 - Court Doc. No. 17-10* at 7-8.  In support of these claims, Smith further argued that:  (1) His "conviction and sentence should be reversed or set aside because the entire chain of arrest, indictment, trial, appellate proceedings, and Rule 32 hearing ... is subject to scrutiny to determine" whether his detention is legal; (2) He "was denied effective assistance of counsel by appellate counsel's failure to raise any arguable issues ... and failure [to] raise[] presumption of prejudice though it was clear that [petitioner] ... had hardly any assistance, much less effective assistance of appointed counsel during trial...."; (3) Although "known in advance of trial that ... [petitioner] was on medication for mental defect and disabilities," trial counsel did not raise a defense based on mental disease or defect; (4) While proceeding "*pro se*, with only prison inmate assistance ... [petitioner] discover[ed] the material or essential facts constituting the offense in question, and incompetency to defend, and/or his capacity to appreciate his position and make a rational choice with respect to representing himself at trial...."; and (5) Petitioner "suffered from a serious mental disease or defect at the time of the crime ... [which] must have prevented him from appreciating the nature and quality or wrongfulness of his acts."

*Id*. at 11-15.[4]

On September 20, 2002, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's decision to deny post-conviction relief. *Respondents' Exhibit 9 - Court Doc. No. 17-12.* The portion of this opinion relevant to the instant case reads as follows:

I.

***

The appellant argues that "the complaint, writ of arrest, warrant, or other information were not made in the manner prescribed by law, nor supported by oath." ... However, this claim is precluded because he could have raised it at trial and on appeal, but did not. See Rule 32.2(a)(3) and (5), Ala. R. Crim. P.

II.

The appellant also argues that his appellate counsel rendered ineffective assistance. Specifically, he contends that his appellate counsel did not raise ineffective-assistance-of-trial-counsel claims on direct appeal. The record from the appellant's direct appeal indicates that he was sentenced on April 30, 1999, and that newly retained counsel represented him at sentencing.... However, the record on appeal was not completed until October 27, 2000.

> "[I]n any cases in which the defendant is convicted after the date this opinion is released, an ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b),

---

[4]During the pendency of this appeal, Smith on June 13, 2002 filed a second Rule 32 petition in which he raised claims substantially similar to those presented in the appeal from denial of his first Rule 32 petition. The trial court summarily dismissed the petition as procedurally barred. *Respondents' Exhibit No. 21-3.* However, the Alabama Court of Criminal Appeals "set aside" this order and transferred the case "to the trial court with directions that all further action ... be suspended until this Court issues the certificate of judgment [in the appeal of the initial Rule 32 petition]." *Respondents' Exhibit 18 - Court Doc. No. 21-4.* The evidentiary materials filed in this case establish that no ruling has been issued by the Circuit Court of Russell County on the June 13, 2002 petition. The petitioner argues that such pendency does not prevent this court from addressing his claims for federal habeas corpus relief as the claims pending herein have been exhausted for purposes of federal review either because they have been raised and addressed in other state collateral actions or because no state remedy no exists within which to raise such claims. This court agrees with the petitioner.

Ala. R. Crim. P., expires, in order for that claim to be properly preserved for review upon direct appeal.

"...

"When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala. R. Crim. P., the proper method for presenting that claim for appellate review is to file a Rule 32, A. R. Crim. P., petition for post-conviction relief."

Ex parte Ingram, 675 So.2d 863, 865-66 (Ala. 1996). In this case, appellate counsel did not have access to the record on appeal in time to raise ineffective-assistance-of-trial-counsel claims within 30 days after the appellant was sentenced. Therefore, appellate counsel did not render ineffective assistance in this regard.

III.

Finally, the appellant appears to argue that he was not competent to defend himself and did not have "the capacity to appreciate his position and make a rational choice with respect to representing himself at trial"...; that his trial counsel rendered ineffective assistance because he did not present an insanity defense or an extreme emotional disturbance defense; and that his appellate counsel rendered ineffective assistance because he did not raise a claim about his mental status. [The court noted that additional issues listed by Smith but not supported by any arguments were not properly before the court.] However, he did not present these claims in his original petition. Also, although his attorney elicited some testimony about his mental status during the [Rule 32] evidentiary hearing, the circuit court specifically stated that claims regarding his mental status were not properly before that court because he had not raised them in his original petition. Therefore, these claims are not properly before this court. See Morrison v. State, 551 So.2d 435 (Ala.Crim.App. 1989).

For the above-stated reasons, we affirm the circuit court's judgment.

*Respondents' Exhibit 9* at 1-3 (citations to briefs and footnotes omitted).[5] The Alabama

Court of Criminal Appeals overruled Smith's application for rehearing on October 11,

---

[5]Although not cited by Smith in his brief, the claim regarding competence to defend himself/waive representation relates to rights established by *Faretta v. California*, 422 U.S. 806 (1975).

2002.  Smith did not file a petition for writ of certiorari and the certificate of judgment

therefore issued on October 29, 2002.  *Respondents' Exhibit 10 - Court Doc. No. 17-3*.[6]

In January of 2003, Smith filed a motion for leave to proceed *in forma pauperis* in

an attempt to file yet another Rule 32 petition.  On March 12, 2003, the trial court

summarily denied Smith's *in forma pauperis* motion, *Respondents' Exhibit 20 - Court Doc.

No. 25-2* at 1, and, therefore, the court did not file this post-conviction petition.

On December 31, 2003, Smith submitted another Rule 32 petition to the Circuit

Court of Russell County.  On February 4, 2004, the trial court filed this petition upon

Smith submitting payment of the filing fee.  In this petition, Smith argued:  (1) He was

denied due process and equal protection because appellate counsel did not receive a

complete trial transcript; (2) The trial court failed to conduct a colloquy in accordance with

*Faretta v. California*, 422 U.S. 806 (1975) explaining to petitioner his rights regarding

representation and the dangers of self-representation or hybrid representation because had

the appropriate colloquy occurred it would have been clear that petitioner did not have the

mental capacity to represent himself;[7] (3) The trial court erred when it failed to charge the

---

[6]Where further action is not undertaken upon denial of the application for rehearing, the certificate of judgment issues eighteen (18) days after entry of the order denying the application.  Rule 41(a), *Alabama Rules of Appellate Procedure*.

[7]In this same petition, however, Smith maintains that "the record clearly shows ... Melvin Smith DID NOT REPRESENT HIMSELF AT TRIAL, HE WAS Represented by ATTORNEY GREG GRAHAM...." *Respondents' Exhibit 11 - Court Doc. No. 17-4* at 20 (emphasis in original).  As previously noted, the record indicates that the court appointed counsel on February 16, 1999 to assist Smith in the trial of his case. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 42.  Although in his meetings with trial counsel Smith advised he sought to handle the case himself and ignored counsel's advice to the contrary based on alleged innocence to the charge, i.e., the sexual act was consensual, counsel filed pre-trial motions, reviewed discovery materials,

jury on the lesser included offense of sexual misconduct; (4) Trial counsel provided ineffective assistance when counsel failed to (i) investigate the case, (ii) subpoena witnesses, (iii) present an insanity defense, i.e., not guilty by reason of mental disease or defect, based on petitioner's mental disorders, (iv) challenge the composition of the petit jury, and (v) object to the district attorney's prejudicial statements during closing argument; and (5) Appellate counsel was ineffective because he failed to secure a complete trial transcript. *Respondents' Exhibit 11 - Court Doc. No. 17-14* at 19-33.  On April 5, 2004, the trial court issued an order summarily dismissing this post-conviction petition. *Respondents' Exhibit 11 - Court Doc. No. 17-14* at 50.  Specifically, the court deemed the petition procedurally barred from review.  *Id.*  ("Petitioner has previously filed a Rule 32 petition that has been adjudicated on its merits.  Subsequent petitions are barred by statute."); *see* Rule 32.2(b), *Alabama Rules of Criminal Procedure* (relief not appropriate on second or successive petition which raises same claims as previous petition or raises new grounds for relief unless petitioner shows good cause why new grounds were not raised and that failure to address such grounds would result in a fundamental miscarriage of justice).

---

submitted a witness list, conducted the voir dire of potential jurors and selected the jury.  Moreover, prior to presentation of the case to the jury, Smith directed counsel to proceed on his behalf and counsel did so. Specifically, the trial transcript establishes that counsel examined/cross-examined all witnesses, argued the defense furnished by Smith, raised objections, asserted a motion for directed verdict and presented a closing argument. Throughout the Rule 32 hearing, Smith testified that after the court appointed counsel to assist him he never advised counsel he sought to represent himself and, instead, advised counsel to undertake representation. Both the court and trial counsel dispute these assertions.

Smith appealed the denial of this Rule 32 petition in which he raised the following claims:  (1) The trial court erred in not requiring the district attorney to file a response to the Rule 32 petition; (2) Petitioner was denied a complete trial transcript; (3) "[I]f [it] is true" that petitioner represented himself at trial, the trial court failed to explain the danger of self-representation or hybrid representation.  Specifically, the record fails to show that a hearing was conducted which complied with *Faretta* and, "[h]ad a minimal amount of safeguards been taken ..., it would have been clear ... to the Trial Court that Smith DID NOT HAVE the Mental Capacity to make such a serious ... choice to represent himself.";  (4) The trial court erred in failing to provide a jury instruction on the lesser included offense of sexual misconduct; (5) Petitioner is entitled to relief on his claims of ineffective assistance of counsel; and (6) An evidentiary hearing is required on petitioner's claims of ineffective assistance of counsel.  On August 20, 2004, the Alabama Court of Criminal Appeals issued a memorandum opinion affirming the trial court's decision to deny post-conviction relief.  *Respondents' Exhibit 14 - Court Doc. No. 17-7.*  This memorandum opinion, in pertinent part, reads as follows:

> On February 4, 2004, Smith filed this ... Rule 32, Ala. R. Crim. P., petition.  Without requiring a response from the State, the circuit court summarily denied the petition on April 5, 2004.  This appeal followed.
>
> In his petition, Smith claimed 1) that he was denied due process and equal protection because his appellate counsel was not provided a complete copy of the transcript ...; 2) that the trial court failed to conduct a colloquy with hin in accordance with <u>Faretta v. California</u>, 422 U.S. 806 (1975), to determine that he understood the dangers of self-representation; 3) that the trial court erred by failing to charge the jury with the lesser-included offense

of sexual misconduct; 4) that trial counsel rendered ineffective assistance by failing to investigate, by failing to present witnesses, by failing to present an insanity defense, by failing to object to the composition of the jury, by failing to object to comments made during closing arguments, and by failing to request a complete trial transcript; and 5) that appellate counsel rendered ineffective assistance. On appeal, Smith reiterates his claims, complains that the circuit court did not require a response from the State, and claims that the circuit court erred by denying his petition without conducting an evidentiary hearing.

> "[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001). "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition." Reed v. State, 748 So.2d 231, 233 (Ala. Crim. App. 1999).

Rule 32.7(d), Ala. R. Crim. P., provides for the summary disposition of a Rule 32 petition only

> "[i]f the court determines that the petition is not sufficiently specific [in violation of Rule 32.6(b)], or is precluded [under Rule 32.2, Ala. R. Crim. P.], or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by further proceedings...."

Claims 1, 3, 4, and 5 were precluded by the period of limitations in Rule 32.2(c), Ala. R. Crim. P. Claim 2 was precluded because Smith has raised, and we have addressed, this claim in a prior Rule 32 [finding the claim procedurally defaulted]. See Smith v. State, (No. CR-01-1261) 868 So.2d 485 (Ala.Crim.App. 2002) (table). Because Smith's claims were precluded, summary disposition was appropriate and no evidentiary hearing was necessary. Rule 32.7(d). Additionally, a response from the State was not required. Burton v. State, 728 So.2d 1142 (Ala. Crim. App. 1997) ("Where a simple reading of a petition for postconviction relief shows that, assuming the allegations of the petition to be true, it is obviously without merit or is precluded, the trial court may summarily dismiss the petition without requiring a response from the state.")

> For the reasons stated above, the judgment of the circuit court is affirmed.

*Respondents' Exhibit 14 - Court Doc. No. 17-7* at 1-3 (footnotes omitted). Smith filed an

application for rehearing which the appellate court overruled on September 20, 2004. The

Alabama Supreme Court denied Smith's petition for writ of certiorari and the Alabama

Court of Criminal Appeals issued the certificate of judgment on December 13, 2004.

On May 15, 2005, Smith filed this 28 U.S.C. § 2254 petition in which he raises the

following claims for federal habeas relief:

> 1. Petitioner was denied a full and complete transcript containing voir dire examinations and closing arguments which prejudiced his direct appeal.
>
> 2. Petitioner presented a substantive due process claim regarding his competency to stand trial which is not subject to state procedural bars. Petitioner was "incompetent to stand trial" due to his suffering from schizophrenia and paranoid personality disorder for which he was diagnosed in 1997 and there is "no procedural bar" to federal review of his mental competency. *Petitioner's March 1, 2006 Response - Court Doc. No. 47* at 1.
>
> 3. Petitioner did not knowingly waive his right to representation by counsel insomuch as the trial court denied him those rights established under *Faretta v. California*, 422 U.S. 806 (1975) because it failed to conduct a hearing and make appropriate findings of fact to determine his ability to represent himself at trial.
>
> 4. The trial court erred in summarily denying petitioner's third Rule 32 petition. Specifically, the court denied the petition absent a response from the district attorney and without holding an evidentiary hearing in violation of state procedural rules.
>
> 5. Petitioner is actually innocent of the crime for which he

was convicted as the sexual intercourse with the victim was consensual. "It was [petitioner's] statement to the Police, and his testimony at Trial that, he and [the victim] had had a long term relationship, (an extra Marital Affair), and on the Day in question, they engaged in sexual intercourse ... and it was consentual (sic)." *Petitioner's Brief in Support of Petition for Habeas Corpus Relief - Court Doc. No. 2 at 18.*

6. Trial counsel provided ineffective assistance because he failed to (i) properly investigate the case, (ii) subpoena a potential witness, (iii) present an insanity defense, (iv) object to the composition of the petit jury, and (v) object to the comments of the district attorney during closing arguments referencing petitioner as a rapist and a liar.

7. Appellate counsel provided ineffective assistance when he failed to (i) secure a complete transcript, and (ii) raise issues with greater viability on appeal arising from objections made by trial counsel.[8]

8. The prosecution suppressed DNA evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[9]

9. Detectives improperly interrogated petitioner without the presence of counsel which resulted in an incriminating,

---

[8]Smith identifies these objections as occurring on pages 4, 46, 73 and 103 of the trial transcript. The court carefully reviewed the transcript pages referenced by Smith and found no objections on or within several pages of pages 4 and 46. The objection made by counsel at page 73 challenged a question regarding the manner in which an inmate could gain access to a three-way telephone call while in the county jail. The trial court sustained this objection and instructed the jury to disregard both the question posed by the prosecutor and the response provided by the witness. The "objection" on page 103 appears to reference counsel's motion for entry of a directed verdict which the trial court denied in light of the evidence presented by the State.

[9]The forensic reports on which the petitioner relies to support this claim do not contain any ***exculpatory*** evidence. Results of the only forensic examination performed demonstrated that "[t]he quantity of DNA from the fingernail scrapings was not sufficient for analyses." *Petitioner's Exhibit 3A to the September 15, 2006 Response - Court Doc. No. 62-2* at 4. Moreover, to the extent Smith presents these evidentiary materials in an effort to challenge the fact of sexual intercourse, these materials are wholly irrelevant as Smith testified that he engaged in sexual intercourse with the victim on the date in question. *Respondents' Exhibit 1 - Court Doc. No. 17-4* at 3-4 (Trial Transcript at 105-106).

falsified statement introduced at trial by the prosecution.[10]

10.  The trial court erred in compelling petitioner to represent himself at arraignment on March 18, 1997.

11.  During the April 29, 1997 arraignment, the trial court compelled petitioner to represent himself in violation of his Sixth Amendment right to counsel.

Beginning with their supplemental answer filed on February 6, 2006, the respondents argue the claims pending before this court entitle Smith to no relief.[11] Specifically, the respondents contend that Smith's claims for federal habeas relief are procedurally barred from review because Smith failed to present these claims to the state courts in accordance with the State's procedural rules either at trial, on direct appeal or in post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732-1733 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if

---

[10]This claim is refuted by the record as prior to his statement to police Smith voluntarily and knowingly executed a waiver of his rights. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 98. During his statement, Smith acknowledged "[t]here have been no threats or promises made to me and no pressure or coercion used against me. I am giving this statement of my own free will." *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 92. At the conclusion of the statement Smith stated he "made the statement because it is the right thing to do." *Id*. at 94.

[11]In this supplemental answer, the respondents maintain that Smith's original six claims for federal habeas relief appear at paragraphs 5.1) through 5.6) of their initial answer filed on August 15, 2005 (Court Doc. No. 12). However, a review of the initial answer reveals that Smith's original claims for habeas relief are actually specified in paragraphs 8.1) through 8.6) of such answer. *Respondents' August 15, 2005 Answer - Court Doc. No. 12* at 5. This discrepancy in no way adversely impacts the respondents' arguments addressing these claims.

review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule."); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990). The respondents further argue that Smith has failed to meet the requisite burden of proof on his actual innocence claim as he has presented no new, reliable evidence not available to him at the time of trial demonstrating his factual innocence, and, instead relies on the same evidence and arguments presented in his defense at trial. The respondents likewise maintain that the record contains no evidence which supports Smith's claims of mental incompetency; rather, they assert Smith merely presents evidence that he suffered from various mental health issues prior to the time of the offense and date of his trial. *Respondents' September 15, 2005 Supplemental Answer - Court Doc. No. 16* at 6.

Upon review of the § 2254 petition, the answers of the respondents, Smith's responses to the answers, the record in this case and the opinions issued by the state courts, the court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section*

*2254 Cases in United States District Courts*, and concludes that the petition is due to be
denied.

### III.  DISCUSSION

#### A.  Actual Innocence - Independent Claim

Smith argues he is entitled to federal habeas relief because he is actually innocent
of first degree rape.  Smith bases this assertion on the defense he employed at trial, i.e.,
sexual intercourse with the victim was consensual.  The law is well settled "that '[c]laims
of actual innocence based on newly discovered evidence have never been held to state a
ground for federal habeas relief absent an independent constitutional violation occurring
in the underlying state criminal proceeding.'  *Herrera v. Collins,* 506 U.S. 390, 400, 113
S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  It is not our role to make an independent
determination of a petitioner's guilt or innocence based on evidence [presented at trial or]
that has emerged since the trial.  'This rule is grounded in the principle that federal habeas
courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not
to correct errors of fact.'  *Id*."  *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002).
Thus, Smith is entitled to no relief from this court on his substantive claim of actual
innocence.

#### B.  Competency to Stand Trial

Smith alleges a violation of his right to substantive due process "regarding his
competency to stand trial."  *Petitioner's Brief in Support of Petition for Habeas Corpus*

*Relief - Court Doc. No. 2* at 14. In support of this claim, Smith argues he was incompetent to stand trial due to his suffering from paranoid schizophrenia. Smith maintains that despite the state courts finding his substantive competency claim procedurally barred the claim is properly before this court as it is not subject to procedural defaults. This court must agree with Smith. *Medina v. Singletary*, 59 F.3d 1095, 1111 (11th Cir.), *cert. denied* 517 U.S. 1247, 116 S.Ct. 2505 (1996) (Although the petitioner did not raise, on direct appeal or in his initial Rule 32 petition, "his substantive competency claim that he was tried while incompetent ... [this] substantive claim ... is not subject to procedural default and must be considered on the merits."); *Glass v. State*, 912 So.2d 285, 288 (Ala.Cr.App. 2004) ("To the extent [the petitioner] raises a substantive due-process claim - that he was convicted while mentally incompetent to stand trial - the petition is not subject to procedural bars."). Nevertheless, upon thorough review of the record in this case, the court concludes that Smith "has not presented clear and convincing evidence creating a real, substantial, and legitimate doubt as to his competence to stand trial, that he is not entitled to an evidentiary hearing, and that his substantive competency claim is without merit." *Medina*, 59 F.3d at 1111.

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. *James v. Singletary*, 957 F.2d 1562, 1569-70 (11th Cir.1992) (citing *Pate v. Robinson,* 383 U.S. 375, 384-86, 86 S.Ct. 836, 841-42, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). The test for determining competence to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree

of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402, 80 S.Ct. at 789.

A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. *Id.* at 1571.... [H]owever, "a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Id.* A petitioner who presents "clear and convincing evidence" creating a "real, substantial and legitimate doubt" as to his competence to stand trial is entitled to a hearing on his substantive incompetency claim. *Id.* at 1573 (quoting *Fallada,* 819 F.2d at 1568 n. 1). To show entitlement to a postconviction evidentiary hearing on a substantive competency claim, "the standard of proof is high [and] the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary,* 981 F.2d 481, 484 (11th Cir.1992) (quotations omitted), *cert. denied,* 510 U.S. 839, 114 S.Ct. 121, 126 L.Ed.2d 86 (1993). A presumption of correctness attaches to a state court's finding of competence and a federal habeas court must determine that the finding is not "fairly supported by the record" before it may overturn the state court's decision. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983); *Card,* 981 F.2d at 484 n. 5 (citing *Demosthenes v. Baal,* 495 U.S. 731, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990))....

                                   ***

"[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Id.* at 487-88 (quoting *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir.), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985)). Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. *McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir.1976). The fact that a defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial. *Fallada,* 819 F.2d at 1569.

*Medina*, 59 F.3d at 1106-1107; *Vogt v. United States*, 88 F.3d 587, 591 (8th Cir. 1996)

(same).

The aim of requiring that a "criminal defendant be competent ... [is] to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402, 113 S.Ct. 2680, 2688 (1993). The competency standard for waiving the right to counsel is the same as the competency standard for standing trial. *Godinez*, 509 U.S. at 397, 113 S.Ct. at 2685. "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ***ability*** to understand the proceedings.... The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually ***does*** understand the significance and consequences of a particular decision and whether the decision is uncoerced...." *Godinez*, 509 U.S. at 401 n.12 (citations omitted). "[A] court is [not] required to make a competency determination in every case in which a defendant seeks ... to waive his right to counsel. As in any criminal case, a competency determination is necessary only when a court has reason to doubt the defendant's competence." *Godinez*, 509 U.S. at 401 n.13 (citations omitted). "A trial court's failure to inquire into competency, *sua sponte*, where there is reason to doubt a defendant's competency, violates due process because it deprives the defendant of his right to a fair trial. *Drope [v. Missouri]*, 420 U.S. [162,] 172, 95 S.Ct. 896 [(1975)]; *Pate*, 383 U.S. at 385-86, 86 S.Ct. 836. But barring indicia of incompetence, due process does not require that a competency hearing be held. *Godinez*, 509 U.S. at 402 n.13, 113 S.Ct. 2680." *Taylor v. Horn*, 504 F.3d 416, 433 (3rd Cir. 2007).

30

In a proceeding before the Circuit Court of Russell County on April 29, 1997 to determine whether Smith "had retained an attorney, wished a court appointed attorney, or [sought to] appear pro se[,]" Smith advised the court "he wished to represent himself." *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 25. Based on this representation, the court advised Smith of his right to representation by counsel "and defendant ***voluntarily and knowingly*** refused the appointment of an attorney." *Id*. (emphasis added). Thus, the trial court, after advising Smith of his rights, determined that Smith made an intelligent and competent waiver of his right to counsel. The record likewise demonstrates that Smith, while representing himself, filed appropriate and relevant motions, one of which sought a psychological evaluation of the victim. Smith, however, did not seek a psychological evaluation of himself nor did he make any mention of purported mental incompetence to the trial court at any time during proceedings related to his trial. The record further indicates that in his meetings with trial counsel Smith never mentioned his 1997 diagnoses of schizophrenia and paranoid personality disorder. Additionally, when discussing his case with trial counsel, Smith explained the facts of his case in detail and set forth a defense for the charged offense. Consequently, trial counsel did not seek a hearing on competency nor did counsel give any indication to the trial court that he doubted Smith's competence to stand trial.

In presenting his opening statement, Smith acted in accordance with the instructions

of the court and provided a lucid and relevant argument to the jury. As indicated herein, Smith testified on his own behalf at trial. He admitted his presence at the victim's home on the day of the charged offense but denied any forcible compulsion with respect to his sexual intercourse with the victim. Smith testified coherently and rationally throughout the trial. He presented facts relevant to his actions on the day of the offense, advised of his childhood friendship with the victim and set forth facts in support of his claim that he and the victim had an on-going sexual relationship prior to the alleged rape. Smith also behaved appropriately in all proceedings before the trial court. Thus, nothing before the trial court indicated incompetency.

The record also demonstrates that Smith, acting *pro se*, filed several post-conviction actions in the state courts challenging his rape conviction. He is likewise proceeding before this court without assistance of counsel. These pleadings are detailed and establish Smith's high degree of a rational and factual understanding of the proceedings related to his conviction.

Smith bases his incompetence claim on the 1997 diagnoses of schizophrenia and paranoid personality and the prescription of medications to treat these mental health issues. As noted in *Medina*, a case involving a petitioner diagnosed as suffering from paranoid schizophrenia and/or other depression related psychosis, "'[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate

a present inability to assist counsel or understand the charges.' [*Card*, 981 F.2d] at 487-88 (quoting *United States ex rel. Foster v. DeRobertis,* 741 F.2d 1007, 1012 (7th Cir.), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 972, 83 L.Ed.2d 975 (1985)).  Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.  *McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir. 1976).  The fact that a defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial.  *Fallada*, 819 F.2d at 1569."  59 F.3d at 1107; *Battle v. United States*, 419 F.3d 1292, 1299 n.9 (11th Cir. 2005) (Defendant's courtroom outbursts, odd behavior and history of mental illness do not mandate a finding of incompetency.  Moreover, "mental illness, as a matter of law, does not preclude a finding of competency to stand trial.").

In light of the foregoing and upon extensive review of the record, the court concludes that the evidence submitted by Smith does not positively, unequivocally and clearly generate a legitimate doubt as to either Smith's competence at the time of the offense or his competence to stand trial.  Thus, Smith has failed to create a real, substantive and legitimate doubt regarding his competence and his substantive competency claim therefore entitles him to no relief as it is without merit.

### C.  Denial of Rule 32 Evidentiary Hearing and Lack of Answer to Petition

Smith asserts the trial court failed to order an evidentiary hearing on his third Rule 32 petition and failed to require a response to such petition prior to issuing an order

denying his request for relief. The failure of a state court to conduct an evidentiary hearing or require an answer addressing a state post-conviction petition does not implicate the Constitution as states have no obligation to provide this avenue of relief, and when they do, nothing in the Constitution requires that an evidentiary hearing be held or a response be filed by the State. *See Murray v. Giarratano*, 492 U.S. 1, 6-8, 109 S.Ct. 2765, 2768-2769 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 1994 (1987); *Golston v. Attorney General of the State of Alabama*, 947 F.2d 908, 911 (11th Cir. 1991).

To the extent Smith bases this claim on alleged violations of state law, he is likewise entitled to no relief because a state court's interpretation of its own laws and rules provides no basis for federal habeas relief. *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988). A federal court has no authority to re-examine state court determinations on questions of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991). Consequently, Smith is due no relief with respect to his claim that the trial court erred in summarily dismissing his third Rule 32 petition without conducting an evidentiary hearing and absent a response from the State.[12]

---

[12]The Circuit Court of Russell County deemed the claims raised in this Rule 32 petition procedurally barred from review and summarily dismissed the petition. *Respondents' Exhibit 11 - Court Doc. No. 17-14* at 50. On appeal from this decision, the Alabama Court of Criminal Appeals expressly held that the trial court properly dismissed the Rule 32 petition without conducting an evidentiary hearing or requiring a response from the State. *Respondents Exhibit 14 - Court Doc. No. 17-7* at 3 ("Because Smith's claims were precluded, summary disposition was appropriate and no evidentiary hearing was necessary. Rule 32.7(d). Additionally, a response from the State was not required. Burton v. State, 728 So.2d 1142 (Ala. Crim. App. 1997)."). Thus, even if these claims warranted federal review, such review would be severely limited by the directives of 28 U.S.C. § 2254(d)(1) and (2). *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000). Under these sections, habeas relief is appropriate only when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-

34

### D.  Procedurally Defaulted Claims

The remaining claims presented by Smith in his petition for habeas corpus relief are procedurally defaulted as Smith failed to present these claims to the state courts in accordance with the State's applicable procedural rules.  *O'Sullivan v. Boerckel*, *supra*.; *Henderson*, 353 F.3d 880, 891 (11th Cir. 2003); *Pruitt v. Jones*, 348 F.3d at 1358-1359. Upon thorough review of the answers filed by the respondents and the state court records submitted by the parties, the court gleans the relevant procedural defaults as follows:

(a) The claims regarding ineffective assistance of trial counsel with respect to

---

406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price v. Vincent*, 538 U.S. 634, 640, 123 S.Ct. 1848, 1853 (2003). Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law.  *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  A federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision.  *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an **unreasonable** application of federal law is different from an **incorrect** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original).  "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.  Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  A state court's determinations of fact are "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court admonishes that *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...." 538 U.S. at 636, 123 S.Ct. at 1851.

In light of the foregoing and assuming Smith's claims regarding the denial of an evidentiary hearing on and response to his third Rule 32 petition allow for federal review, these claims do not entitle Smith to relief as the state courts properly adjudicated the claims on the merits. *Williams*, 529 U.S. at 404-405, 120 S.Ct. at 1518-1523.  Specifically, the summary dismissal of the petition as affirmed by the state appellate court was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts.

counsel's failure to challenge the composition of the jury and object during closing argument and petitioner's allegations of ineffective assistance of appellate counsel are procedurally defaulted because Smith failed to raise these claims in a timely manner in the state courts and the Alabama Court of Criminal Appeals deemed such claims barred from review in petitioner's third state post-conviction petition because these claims "were precluded by the period of limitations in Rule 32.2(c), Ala. R. Crim. P." *Respondents' Exhibit 14 - Court Doc. No. 17-7* at 3. *Atkins*, 965 F.2d at 955 (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").

> By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

(b) The claims alleging denial of a complete trial transcript and ineffective assistance of trial counsel related to counsel's alleged failure to properly investigate, subpoena a witness and present an insanity defense are procedurally defaulted as Smith failed to properly pursue these claims in his initial Rule 32 proceedings. Specifically,

Smith failed to present these claims to the state courts in accordance with applicable state procedural rules at each stage of such Rule 32 proceedings, including the failure to file a petition for writ of certiorari with the Alabama Supreme Court upon denial of his appeal by the Alabama Court of Criminal Appeals. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Smith v. Jones*, 256 F.3d 1135, 1140-1146 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert. denied*, 531 U.S. 1017 (2000); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990).   Additionally, the last state court to address these issues deemed them procedurally barred from review based on Smith's failure to properly present them to the state courts prior to expiration of "the period of limitations" set forth in Rule 32. *Respondents' Exhibit 14 - Court Doc. No. 17-7* at 3.

(c) To the extent the claim of ineffective assistance of appellate counsel regarding a transcript is construed as the same claim raised in Smith's initial Rule 32 petition filed with the trial court, i.e., appellate counsel failed to file a motion for additional time to allow a more thorough review of the transcript, it is likewise defaulted for Smith's failure to properly present and fully exhaust this claim in the initial 32 proceedings, including Smith's failure to raise this claim in his brief on appeal and his failure to seek relief by petition for writ of certiorari in the Alabama Supreme Court. *O'Sullivan v. Boerckel*, *supra*. If this claim is considered a claim distinguishable from the one presented in the

2001 Rule 32 petition, it is procedurally barred from federal review as the last state court to address the issue found the claim "precluded" by the applicable period of limitations. *Respondents' Exhibit 14 - Court Doc. No. 17-7* at 3.

(d) The claims arising under *Faretta* regarding wavier of the right to counsel and lack of a hearing on such waiver are procedurally defaulted because Smith failed to raise these claims in his 2001 Rule 32 petition filed with the Circuit Court of Russell County, *see Respondents' Exhibit 6 - Court Doc. No. 17-9* at 16-19, and the Alabama Court of Criminal Appeals held these claims precluded from review for such failure. *Respondents' Exhibit 9 - Court Doc. No. 17-12* at 3 (claims not presented in original Rule 32 petition filed in the trial court, including claims challenging petitioner's competency to defend himself, are "not properly before this court" due to such failure). Morever, as previously noted, Smith failed to seek review of the appellate court's decision in the Alabama Supreme Court which likewise constitutes a procedural default of these claims. Additionally, when Smith raised these claims in his third Rule 32 petition, the Alabama Court of Criminal Appeals deemed the *Faretta* issue successive and refused to address its merits.[13] Specifically, the appellate court determined that this claim "was precluded" from review because the court had previously addressed the waiver of counsel on appeal of Smith's initial Rule 32 petition and, at that time, deemed the claim procedurally defaulted.

_____

[13]On appeal from the denial of his third Rule 32 petition, Smith argued "that the trial court failed to conduct a colloquy with him in accordance with *Faretta* ... to determine that he understood the dangers of self-representation..." *Respondents' Exhibit 14 - Court Doc. No. 17-7* at 2.

*Respondents' Exhibit 14 - Court Doc. 17-7* at 3; *see Respondents' November 28, 2007 Answer - Court Doc. No. 76* at 7 (The Alabama Court of Criminal Appeals correctly recognized this claim as procedurally defaulted in its opinion affirming the denial of Smith's initial Rule 32 petition.  "Furthermore, because Smith could have raised his *Faretta* claim in his 2001 Rule 32 petition [filed with the trial court], but did not, the Alabama Court of Criminal Appeal's 2004 decision was also [a] correct [determination of procedural default].  Smith's 2004 *Faretta* claim was, in fact, successive -- it should have been raised in his 2001 petition [filed with the trial court]....").

(e)  The claims challenging petitioner's arraignments, his allegation of the suppression of evidence in violation of *Brady* and the assertion of interrogation without assistance of counsel are procedurally defaulted because Smith did not present these claims to the trial court at the appropriate times during proceedings related to his trial and failed to raise these claims in other actions available in the state courts, including direct appeal and post-conviction proceedings.

This court may reach the merits of Smith's procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)]....  Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without

a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*,

477 U.S. at 495-96, 106 S.Ct. at 2678. A 'fundamental miscarriage of justice' occurs in

an extraordinary case, where a constitutional violation has resulted in the conviction of

someone who is actually innocent. *Id*." *Henderson*, 353 F.3d at 892.

### 1. Cause and Prejudice.

> "To establish 'cause' for procedural default, a petitioner must
> demonstrate that some objective factor external to the defense impeded the
> effort to raise the claim properly in the state court." *Wright v. Hopper,* 169
> F.3d 695, 703 (11th Cir.1999). To establish "prejudice," a petitioner must
> show that there is at least a reasonable probability that the result of the
> proceeding would have been different. *Id.*; *Crawford v. Head,* 311 F.3d
> 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892. In an attempt to meet this burden, Smith complains that he

received ineffective assistance of counsel at trial and on direct appeal. Smith further

argues that he did not have effective assistance of counsel to aid in the preparation of his

first Rule 32 petition and, while acting *pro se* on appeal of such petition and in proceedings

on his subsequent Rule 32 petitions, he lacked adequate legal training to properly proceed

before the state courts. Smith also argues that his reliance on advice of inmate law clerks

and his mental health issues constitute cause for his defaults.

As previously determined, Smith is procedurally defaulted on his claims of

ineffective assistance of trial and appellate counsel as he failed to properly pursue these

claims in the state courts in available state proceedings. Ineffective assistance of counsel

will excuse a procedural default only when the ineffective assistance claim itself has been

independently and properly raised in the state courts. *Murray*, 477 U.S. at 489 ("a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim). Thus, such claims cannot constitute cause necessary to excuse Smith's procedural defaults. Moreover, the court finds that none of the allegations of ineffective assistance of trial and appellate counsel in any way justify Smith's failure to properly present his claims in his Rule 32 petitions.

Smith next alleges a lack of post-conviction counsel and/or denial of effective assistance of collateral counsel as cause for his failure to properly proceed in the state collateral actions. These claims, however, likewise entitle Smith to no relief. The law is well settled that there is no federal constitutional right to counsel in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 556-557 (1987); *Coleman v. Thompson* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566 (1991); *Arthur v. Allen*, 452 F.3d 1234, 1249 (11th Cir. 2006), *modified on reh'g*, 459 F.3d 1310 (11th Cir. 2006); *Henderson*, 353 F.3d at 892 (11th Cir. 2003); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993); *Presnell v. Zant,* 959 F.2d 1524, 1532 n. 6 (11th Cir. 1992). Consequently, neither the lack of representation nor ineffective assistance during state collateral proceedings establishes "cause" for a procedural default. *Henderson*, 353 F.3d at 892 ("'[A] petitioner cannot

41

claim constitutionally ineffective assistance of counsel in such proceedings.' Therefore, any ineffectiveness of [post-conviction counsel] could not be considered cause for the purposes of excusing the procedural default that occurred in this case at the state collateral post-conviction level."). "Since [the petitioner] had no sixth amendment right to counsel, he bears the burden of his failure to act in compliance with [the state's procedural rules]." *McCoy v. Newsome*, 953 F.2d 1252, 1259 (11th Cir. 1992).

With respect to Smith's reliance on the erroneous advice of inmate law clerks and his lack of legal knowledge as cause, these claims also provide no basis for relief from applicable procedural bars. A petitioner's reliance on the assistance and erroneous advice of an inmate clerk fails to establish extraordinary circumstances necessary to excuse a procedural default. *Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir.), *cert. denied*, 498 U.S. 834 (1990) (poor advice from inmate law clerks during collateral proceedings will not establish petitioner's claim of cause for a procedural default as there is no right to legal counsel in such proceedings); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001) ("The fact that an inmate law clerk was assisting in drafting [pleadings] does not relieve [petitioner] from the personal responsibility of complying with the law.").

Smith's reliance on his *pro se* status and concomitant lack of legal knowledge as cause likewise provide no basis for relief from the applicable procedural bars as neither an inmate's lack of legal knowledge, his failure to understand legal principles nor the inability

to recognize potential claims for relief at an earlier juncture constitute an extraordinary circumstance sufficient to warrant such relief. *Harmon v. Barton*, 894 F.2d 1268 (11th Cir. 1990); *Smith v. Newsome*, 876 F.2d 1461 (11th Cir. 1989). Moreover, ignorance of the law fails to establish cause for a procedural default. *Spencer v. Kemp*, 781 F.2d 1458, 1462 (11th Cir. 1986); *Wakefield v. Railroad Retirement Board*, 131 F.3d 967, 969 (11th Cir. 1997) (ignorance of the law is not a factor which warrants relief from procedural bars); *Marsh*, 223 F.3d at 1220 ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.' *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)."); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (equitable relief from procedural bar not justified by fact that petitioner did not understand the law); *Barksdale v. Lane*, 957 F.2d 379, 385-386 (7th Cir. 1992) (petitioner's *pro se* status does not constitute adequate grounds for cause).

To the extent the petition can be construed to assert that Smith's mental health issues constitute cause for his defaults, Smith is entitled to no relief as he has failed to establish a causal connection between his alleged mental health issues and his ability to file appropriate collateral actions in the state courts.[14] *Lawrence v. Florida*, 421 F.3d 1221,

---

[14]As previously noted, Smith attaches a 1997 mental health evaluation prepared by a psychiatrist associated with the Department of Veterans' Affairs which demonstrates diagnoses of emotional impairment, schizophrenia and paranoid personality disorder. *Petitioner's Exhibit A - Court Doc. No. 2-2* at 11. The treatment plan devised at that time recommended outpatient treatment of Smith's mental health issues. *Id*. Smith also submits prescriptions furnished to him in September of 1999 for medications utilized in the treatment of schizophrenia. *Id*. at 10. However, these documents do not in any way indicate that Smith suffered from mental incompetence or is now mentally incompetent.

1226 (11th Cir. 2005). Smith performed rationally in all proceedings before the state courts. He understood the charge lodged against him, filed appropriate pre-trial motions, presented a defense to the charge in discussions with counsel, understood the nature of all state court proceedings, provided rational opening/closing statements to the jury, testified to relevant facts at trial, set forth lucid and relevant testimony at the Rule 32 hearing in support of his claims for relief, filed several post-conviction actions with the trial court challenging his conviction and appealed the adverse decisions to the Alabama Court of Criminal Appeals. In these state court proceedings, Smith presented numerous challenges to his rape conviction, including those claims pending before this court. Moreover, the trial court deemed Smith competent to waive his right to counsel and made a specific finding that Smith "voluntarily and knowingly" refused appointment of counsel. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 25.

In sum, it is clear from the record in this case that during the periods relevant to the procedural defaults at issue, Smith had the ability to prosecute his state actions. Additionally, Smith's conduct of the instant federal litigation mitigates against his argument that his alleged mental illness caused his several procedural defaults. There is nothing before the court which indicates Smith's schizophrenia affected his capability to participate in his defense or hindered his ability to comply with state procedural requirements in his state post-conviction actions. Specifically, the evidence presented by

44

Smith does not establish that his condition rendered him unable to properly exhaust his state court remedies during the relevant time periods. The court therefore concludes that Smith's 1997 diagnosis of paranoid schizophrenia fails to establish cause for his procedural defaults. *Smith v. Newsome*, 876 F.2d at 1466 (where petitioner understood nature and consequences of state proceedings and acted throughout in a rational manner, "general mental condition is not legal cause for his default."); *Farabee v. Johnson*, 129 Fed. Appx. 799, 804 (4th 2005) (petitioner presented no evidence demonstrating "his mental illness interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation" and, therefore, failed to establish "that any mental illness actually caused his several defaults."); *Harris v. McAdory*, 334 F.3d 665, 669-670 (7th Cir. 2003) (neither borderline mental retardation nor frontal lobe brain dysfunction sufficient to establish cause); *Ervin v. Delo*, 194 F.3d 908, 916 (8th Cir. 1999) (petitioner's "alleged depression could not amount to cause excusing [petitioner's] procedural default" where the "alleged depression did not hinder his ability to file a pro se postconviction motion."); *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) (absent "conclusive showing that mental illness interfered with a petitioner's ability to appreciate his ... position and make rational decisions regarding his ... case at the time during which he ... should have pursued post-conviction relief[,]" mental illness does not constitute cause to excuse procedural default); *Stanley v. Lockhart*, 941 F.2d 707, 709-710 (8th Cir. 1991) (possibility pro se adult

petitioner might not have been able to effectively participate in his defense given diagnosis of childhood schizophrenia insufficient to show incompetence at time of procedural default); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (petitioner's below-average intelligence insufficient to establish cause); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's diagnosis as a "borderline mental defective" fails to establish cause for excusing a procedural default).    There is no "objective factor external to the defense that prevented [Smith] from raising the claim[s] and which cannot be fairly attributable to his own conduct." *Murray*, 477 U.S. at 488.  In light of the fact that Smith raised the claims in pleadings while proceeding *pro se* in both the state courts and this court, it is clear that such claims are not issues which are "intrinsically beyond [a] *pro se* petitioner's ability to present." *Harmon*, 894 F.2d at 1275.  Based on the foregoing, the court concludes that Smith has failed to demonstrate cause for his failure to present his federal habeas claims to the state courts in compliance with applicable procedural rules. Moreover, Smith has presented nothing which establishes the existence of actual prejudice emanating from infringement of federal law.  Nevertheless, this court may still reach the merits of Smith's procedurally defaulted claims in order to prevent a fundamental miscarriage of justice

   **2. <u>Fundamental Miscarriage of Justice</u>**.  Throughout his pleadings in this court, Smith argues he is actually innocent of rape.  The basis for this claim is Smith's assertion

that the victim consented to sexual intercourse with him.  Although an actual innocence

claim "can itself be defaulted is not to say that the procedural default may not *itself* be

excused if the petitioner can satisfy the cause-and-prejudice standard [or fundamental

miscarriage of justice exception] with respect to that claim."  *Edwards v. Carpenter*, 529

U.S. 446, 453, 120 S.Ct. 1587, 1592 (2000) (emphasis in original).  The miscarriage of

justice standard is directly linked to actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 321

(1995).  Actual innocence is not an independent claim; rather, it is the "gateway" through

which a petitioner  must pass before a court may consider constitutional claims which are

defaulted.  *Id.* at 315.  This exception applies where a petitioner establishes that "a

constitutional violation has probably resulted in the conviction of one who is actually

innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*.  "To

establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely

than not that no reasonable juror would have convicted him.'  *Schlup v. Delo*, 513 U.S.

298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley  v.  United States*,

523 U.S. 614, 623 (1998).  "[T]he *Schlup* standard is demanding and permits review only

in the "extraordinary" case."  *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077

(2006).  Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court

counsels against federal review of defaulted claims."  547 U.S. at 537, 126 S.Ct. at 2077.

"It is important to note in this regard that 'actual innocence' means factual innocence, not

mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-

2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." 513 U.S. at 324.

The instant claim of innocence is based on the same defense and evidence presented by Smith at trial. The jury rejected such argument and found Smith guilty of first degree rape. Smith has failed to make the requisite showing of actual innocence as he has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists which could satisfy the stringent standard set forth in *Schlup*. Smith's procedurally defaulted claims are therefore foreclosed from federal habeas review.

Moreover, the court notes that had Smith properly preserved his claims relative to *Faretta* such claims would entitle Smith to no relief. The record establishes that on February 11, 1997, the trial court appointed counsel to represent Smith. On March 18, 1997, the court arraigned Smith. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 21. At this time, Smith apparently advised the court of his desire to retain an attorney. *Id*. The

court therefore ordered that Smith "be in court on April 29, 1997 ... to report if he has retained an attorney." *Id.* Smith appeared in court pursuant to the directives of the court's order. At this time, the court sought "to determine if [Smith] had retained an attorney, wished a court appointed attorney, or [sought to] appear pro se. [Smith] stated that he wished to represent himself in these proceedings." *Respondents' Exhibit 1 - Court Doc. No. 17-2 at 25.* The court determined that Smith "voluntarily and knowingly" waived his right to counsel. *Id.*; *Godinez*, 509 U.S. at 399-400, 113 S.Ct. at 2687 (citations and footnotes omitted) (emphasis in original) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to ***waive the right***, not the competence to represent himself.... [W]hile '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts'... a criminal defendant's ability to represent himself has no bearing upon his competence to chose self-representation."). The record demonstrates that the facts and circumstances before the trial court did not provide any reason to doubt Smith's competence. Consequently, a determination as to Smith's competence to stand trial was not required. *Godinez*, 509 U.S. at 401, 113 S.Ct. at 2688 n.13; *Drope*, 420 U.S. at 180-181, 95 S.Ct. at 908 (competency determination necessary only when a court has reason to doubt the defendant's competence). Thus, it is clear from the foregoing that Smith knowingly and voluntarily waived his right to counsel in a proceeding before the trial court. His claim to the contrary is without merit.

49

Additionally, on February 16, 1999, the trial court appointed counsel to assist Smith in his criminal case. *Respondents' Exhibit 1 - Court Doc. No. 17-2* at 42. In pre-trial meetings with trial counsel, Smith advised counsel of facts surrounding the charge against him and presented his defense to the charge, i.e., the victim consented to the sexual intercourse. Thus, Smith displayed a unique understanding of the charge against him. He also exhibited an understanding of the nature and objective of the state criminal proceedings. Trial counsel testified Smith did not mention to him any alleged mental deficiency nor did counsel perceive any such deficiency during his meetings with Smith. Although Smith advised counsel he sought to represent himself, counsel filed pre-trial motions, received discovery from the State, reviewed the discovery, discussed the discovery with Smith and submitted a witness list based on individuals identified by Smith. Furthermore, as the trial court "called [Smith's] case and ... started with the proceeding of it, [trial counsel] ... approached the bench and said that [Smith] had now changed [his] mind and ... wanted [counsel] to handle the case[.]" *Respondents' Exhibit 6 - Court Doc. No. 17-9* at 101 (Trial Transcript at 57). Thus, the record establishes that upon such notification to counsel, counsel thereafter undertook representation of Smith at trial. In sum, other than Smith providing the opening statement and a short closing statement which occurred in addition to the closing argument made by counsel, counsel filed pre-trial motions, received and analyzed discovery materials, submitted a witness list, selected the jury, examined/cross-examined all witnesses, interjected objections, requested a directed

verdict at the close of the State's case and presented a closing argument to the jury.  In light of the foregoing, the court concludes that the trial court did not deprive Smith of the assistance of counsel in violation of his constitutional rights.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Melvin Smith be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before April 16, 2008,** the parties may file objections to the Recommendation.    Objections   must   specifically   identify   the   findings   in   the Recommendation  to  which  the  party  is  objecting.    Frivolous,  conclusive  or  general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the

former Fifth Circuit handed down prior to September 30, 1981.)

Done this 3rd day of April, 2008.

_____
/s/   Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE